UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STEPHEN J. RATCLIFFE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-00234-JAW |
| | ) |
| BRP U.S., INC., et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON DEFENDANT BRP'S MOTION IN LIMINE TO EXCLUDE THE OPINIONS OF DAVID LENOROVITZ**

The court declines to bar the expert opinions of a human factors engineer and ergonomist regarding the alleged inadequacy of the warning provided for a utility terrain vehicle; however, based on a concession by the plaintiff, the court will not allow the presentation of certain ancillary opinions that the plaintiff affirmed he does not intend to seek to introduce into evidence.

**I.    BACKGROUND**

With trial looming, on October 4, 2024, BRP U.S., Inc. (BRP) filed a motion in limine to exclude the opinions of David R. Lenorovitz, Ph.D., an expert designated by Stephen J. Ratcliffe, the plaintiff. *Def. BRP's Mot.* in Lim. *No. 3 and Supporting Br. to Exclude the Ops. of David Lenorovitz* (ECF No. 170) (*Def.'s Mot.*).[1] On October 15, 2024, Mr. Ratcliffe filed his opposition to the exclusion of Dr. Lenorovitz as an expert

---

[1] For the reasons the Court described in its order on the Plaintiff's motion to strike, the Court has endeavored to resolve BRP's Rule 702 motion in the brief interval before trial, now scheduled to begin on November 12, 2023. The Court has done its level best, but counsel should understand that BRP's decision to file its Rule 702 motion as a motion in limine in the run-up to trial has necessarily hampered the Court's decision-making.

witness. *Pl. Stephen J. Ratcliffe's Obj. to Def. BRP's Mot. in Lim. No. 3 and Supporting Br. to Exclude the Ops. of David Lenorovitz* (ECF No. 193) (*Pl.'s Opp'n*).

## II. OVERVIEW

Mr. Ratcliffe has brought a lawsuit against BRP, the manufacturer, and Tidd's Sport Shop, Inc. (Tidd's), the dealer, of a 2019 Can-Am Maverick X3, a utility terrain vehicle (UTV), asserting negligence and strict liability claims arising out of an incident in which Mr. Ratcliffe's Maverick X3 rolled onto its side and crushed his arm. The plaintiff is pursuing design defect and failure-to-warn theories of recovery. During discovery, by report dated September 9, 2022, Mr. Ratcliffe designated Dr. Lenorovitz, a human factors and warnings expert, as a Plaintiff expert. *Def.'s Mot.*, Attach. 1, *Ratcliffe Human Factors Eng'g Analysis Report* (ECF No. 170-1) (*Lenorovitz Report*). BRP deposed Dr. Lenorovitz on March 22, 2023. *Id.*, Attach. 2, *Zoom Dep. of David R. Lenorovitz, Ph.D., CPE* (ECF No. 170-2) (*Lenorovitz Dep.*). Mr. Ratcliffe listed Dr. Lenorovitz as a witness in his pretrial memorandum. *Pl. Stephen J. Ratcliffe's Pretrial Mem.* at 7 (ECF No. 154).

In his September 9, 2022 report, Dr. Lenorovitz summarized his conclusions in eleven bullet points at the end of the report. *Lenorovitz Report* at 44-45. Dr. Lenorovitz wrote:

> ● There were differences in the product, sales, and marketing information provided to Mr. Ratcliffe by the vehicle manufacturer and its distributor.
>
> ● These differences resulted in Mr. Ratcliffe not receiving sufficiently accurate or reliable information, and therefor[e] he:

- Was led to believe the vehicle was more stable and less prone to a hazardous rollover than it really was.

- Was led to believe that Can-Am did not offer window nets designed for safety purposes, but instead Can-Am only offered window nets intended "to keep dust and debris out . . . like a little screen door." And, he was told that Tidd's did not have those window nets in stock any[]way.

- Was led to believe that the side-by-side vehicle design safely afforded two-person operation, but was not made aware of trade-offs or adjustments that might be needed when operating in single-operator mode.

● There was conflicting information or misperceptions fostered by differing safety and product usage information that had been promulgated by different organizations within the parent manufacturing company, namely:

- Engineering

- Sales

- Marketing

● Some Safety and Warnings information was misleading in that it failed to clearly convey aspects of directions and instructions that could practically be performed or accomplished by normal people behaving in a normally predictable and expected manner (e.g., telling people where to "Put" or "Keep" their hands, but ignoring the natural tendency for those unconstrained hands to freely "fly" around - - likely toward danger zones - - during predictable and foreseeable roll-over crashes).

● Within company-provided instructions, there were contradictions as to how to accomplish certain necessary actions (e.g., when, where and how "firmly" to grip the steering wheel).

● The manufacturer did not sufficiently explore and incorporate technically and economically feasible solutions to design out hazardous conditions, or provide adequate means to guard, shield or protect users from those hazards.

- Specify and install types of (4 pt.) seat belts commensurate with users performing the intended types and extent of vehicular

3

activities and tasks commensurate with traveling at fast speeds across rugged off-road terrain.

○ Industry standard and historically demonstrated safety solutions were overlooked, rejected, or considered "out of scope", including:

- NASCAR type safety mesh window netting
- Wrist safety restraining straps

● Failing to provide the customer with unambiguous, non-confusing instructions and warnings - - or instructions/warnings that could not practically be followed - - constitutes a design defect.

● Failing to adequately inform the customer of foreseeable hazards, and failing to provide said customer with technically and economically feasible means of avoiding those foreseeable hazards constitute design defects.

● These various defects and deficiencies were "built-in" to the vehicle's design and were present at the time of the product's manufacture, design, marketing, and sale - - thereby rendering the product defective and unreasonably dangerous.

● The UTV was sold to Mr. Ratcliffe in a defective and unreasonably dangerous condition.

● Mr. Ratcliffe's manner of using the vehicle was entirely foreseeable.

*Id.*

## III. THE POSITIONS OF THE PARTIES

### A. BRP's Motion to Exclude the Opinions of Dr. Lenorovitz

BRP seeks to exclude Dr. Lenorovitz's expert opinions on the ground that they violate the constraints of Federal Rule of Evidence 702 and the caselaw implementing *Daubert*[2] and *Kumho*[3], as well as the prohibition on cumulative evidence under

---

[2] *Daubert v. Merrell Down Pharms.*, 509 U.S. 579 (1993).
[3] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

4

Federal Rule of Evidence 403. *Def.'s Mot.* at 1-10. Of Dr. Lenorovitz's eleven opinions, BRP focuses its challenge specifically on his conclusions "(i) that the BRP-provided warnings were inadequate, insufficient, or inconsistent, and (ii) that the Subject Vehicle was defectively designed." *Id.* at 10.

BRP argues that "Lenorovitz's opinions . . . are neither the product of a reliable methodology nor based on sufficient facts or data." *Id.* at 1. BRP criticizes Dr. Lenorovitz's opinions on these issues by maintaining that "[h]is core opinions are *ipse dixit*—he essentially reads the warnings and claims they are inadequate, solely relying on the testimony of Plaintiff and ignoring all contrary evidence." *Id.* BRP stresses that Dr. Lenorovitz's opinions "are not based on any testing, and he has no experience with the Subject Vehicle or other similar vehicles." *Id.* BRP says that Dr. Lenorovitz's "opinions on 'reactive' arm movement and alternative design are cumulative of Plaintiff's other experts." *Id.*

BRP objects to what it characterizes as Dr. Lenorovitz's "ancillary opinions." *Id.* at 3. Specifically, BRP describes these opinions as "(i) criticizing the lack of clarity on if and how the vehicle-handling could be affected by occupancy load placement; and (ii) claiming that the Subject Vehicle's 3-point seat belts are insufficient." *Id.* (citing Lenorovitz Report at 42-43).

BRP contrasts these with what it describes as Dr. Lenorovitz's "core opinions," which include:

(i)  the warning to keep your hands inside the vehicle was ineffective to prevent a supposed reactive arm movement to brace oneself during a rollover;

5

      (ii)    the instruction to firmly grip the steering wheel conflicts with the instruction to "brace for impact;" and

      (iii)    the warnings in the Operator's Guide and on-product warnings to "**never** do jumps, slides/skids (drifts), or doughnut type 'tricks' or 'maneuvers'" conflicts with BRP's action of "engag[ing] the services of professional drivers and celebrity brand ambassadors that graphically perform. . . such maneuvers in widely accessible on-line video clips and advertising promotions[.]"

*Id.* at 6 n.1 (internal citations omitted) (emphasis in original). BRP contends that these core opinions "are neither the product of a reliable methodology nor based on sufficient facts or data. He essentially offers *ipse dixit* opinions—he reads the warnings and simply concludes that they are not adequate according to his self-created standard." *Id.* at 6. BRP argues that Dr. Lenorovitz "conducts no case-specific testing, has no meaningful experience with side-by-sides, and ignores any evidence that does not support his narrative." *Id.*

      **B.**    **Stephen J. Ratcliffe's Opposition**

Mr. Ratcliffe disagrees. *Pl.'s Opp'n* at 1-10. First, Mr. Ratcliffe observes that BRP has not objected to Dr. Lenorovitz's qualifications as a human factors expert. *Id.* at 4.

Next, quoting *Mizrahi v. Yamaha Motor Corp., U.S.A.*, No. 17-24484-CIV-SCOLA/TORRES, 2019 U.S. Dist. LEXIS 125294, at *29-31 (S.D. Fl. July 19, 2019), another challenge brought against Dr. Lenorovitz's opinions for failure to conduct testing, Mr. Ratcliffe says that the failure to conduct testing is not fatal to the opinions of a warnings expert. *Pl.'s Opp'n* at 4-5. In fact, Mr. Ratcliffe notes that BRP's human factors expert, Steven Hall, also did not conduct any tests. *Id.* at 5-6.

6

Mr. Ratcliffe discounts BRP's argument that Dr. Lenorovitz's expert opinion should be barred because he has never operated a UTV, again relying on the district court in *Mizrahi*, which rejected a similar argument. *Id.* at 7 (quoting *Mizrahi*, 2019 U.S. Dist. LEXIS 124294, at *33-34).

Regarding BRP's criticism that Dr. Lenorovitz offered no alternative warnings, Mr. Ratcliffe turns again to *Mizrahi*, which described the argument as "flawed" and indicated "[t]here is no requirement that an expert produce an alternative warning for his testimony to be admissible." *Id.* (quoting *Mizrahi*, 2019 U.S. Dist. LEXIS 124294, at *32-33).

Mr. Ratcliffe is unimpressed with BRP's contention that Dr. Lenorovitz was selective in the evidence that he relied upon. *Id.* at 8-9. Mr. Ratcliffe says that Dr. Lenorovitz acted within his discretion in discounting outlier testimony and contends that BRP failed to explore the foundation for Dr. Lenorovitz's opinions on these points during his deposition. *Id.* at 9.

Finally, Mr. Ratcliffe assures BRP that he does not intend to introduce Dr. Lenorovitz's ancillary opinions on the Maverick X3's handling or seatbelts at trial. *Id.* at 9-10.

## IV. LEGAL STANDARDS

The admissibility of expert testimony is a question of law governed by Federal Rule of Evidence 702 and by the United States Supreme Court in *Daubert* and its progeny. Rule 702 provides:

7

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

The First Circuit has "long entrusted federal trial judges to be 'gate-keeper[s],' empowered by Rule 702 and *Daubert* to 'ensure that an expert's testimony "both rests on a reliable foundation and is relevant to the task at hand."'" *United States v. Vargas*, 471 F.3d 255, 261 (1st Cir. 2006) (quoting *Daubert*, 509 U.S. at 597). "[T]he overarching concern is on the 'evidentiary relevance and reliability' of the proposed testimony," with speculative expert testimony often satisfying neither criterion. *Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co.*, 295 F.3d 68, 81 (1st Cir. 2002) (quoting *Daubert*, 509 U.S. at 595); *see also Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 22 (2d Cir. 1996) ("Admission of expert testimony based on speculative assumptions is an abuse of discretion").

In general, "[e]xpert testimony is admissible if 'scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue' and if the proposed witness is qualified as an expert by some specialized 'knowledge, skill, experience, training, or education.'" *Liberty Mut. Ins.*

*Co. v. Broan-NuTone LLC*, No. 21-cv-11986-DLC, 2024 U.S. Dist. LEXIS 76408, at *6 (D. Mass. Apr. 26, 2024) (quoting *Daubert*, 509 U.S. at 588).

Both Mr. Ratcliffe and BRP have referred to the 2023 amendments to Federal Rule of Evidence 702.[4] The advisory committee on evidence rules explained the purposes of the amendment: "[f]irst, the rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." FED. R. EVID. 702 advisory committee's note to 2023 amendment. The committee cited Federal Rule of Evidence 104(a) to explain "[t]his is the preponderance of the evidence standard that applies to most of the admissibility requirements set forth in the evidence rules." *Id.* (citing *Bourjaily v. United States*, 483 U.S. 171, 175 (1987)). The committee continued to say "Rule 702(d) has also been amended to emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." *Id.* The committee concluded that "[n]othing in the amendment imposes any new, specific procedures. Rather, the amendment is

---

[4] In 2023, Federal Rule of Evidence 702 was amended as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise <u>if the proponent demonstrates to the court that it is more likely than not that</u>:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the ~~expert has reliably applied~~ <u>expert's opinion reflects a reliable application of</u> the principles and methods to the facts of the case.

FED. R. EVID. 702, 2023 amends.

9

simply intended to clarify that Rule 104(a)'s requirement applies to expert opinions under Rule 702." *Id.*

## V.   DISCUSSION

First, although BRP criticizes Dr. Lenorovitz's opinions in this case, it has not questioned his expert qualifications as a human factors and warnings expert. Rightly so. Dr. Lenorovitz is well-qualified as a human factors and warnings expert. *See Lenorovitz Report* at 1-3; *Mizrahi*, 2019 U.S. Dist. LEXIS 125294, at *28-35 (accepting Dr. Lenorovitz's testimony as a human factors and warnings expert).

Next, BRP incorporates into its motion the catchphrases for expert disqualification. *Def.'s Mot.* at 1-10 ("*ipse dixit* opinions," "no presumption of admissibility", "neither the product of a reliable methodology nor based on sufficient facts or data," "copy-and-paste opinions," "no evidence that Lenorovitz conducted any physical testing for this case," "methodology is flawed"). Underlying each of these assertions, however, is the fundamental critique that Dr. Lenorovitz's testimony is unreliable because "[h]is opinions are not based on testing or experience." *Id.* at 8. In other words, his expert opinions "are tethered to the facts only by his say so." *Id.*

BRP complains that Dr. Lenorovitz did no testing. It is true that in *Daubert*, the Supreme Court listed testing among the factors a district court should weigh in determining whether expert testimony is reliable:

> (1) whether the scientific theory or technique can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) whether it has a known rate of error; (4) whether there are standards controlling its application or operation; and (5) whether it is generally accepted in the relevant scientific community.

*Id.*, 509 U.S. at 593-94. But the absence of testing does not necessarily require exclusion. *See Haley v. Exec. Off. of HHS*, No. 23-11691-RGS, 2024 U.S. Dist. LEXIS 76414, at *3 n.1 (D. Mass. Apr. 26, 2024) ("[A]n expert is not required to rely only on his own primary research in forming an opinion"); *Costa v. FCA US LLC*, No. 20-cv-11810-ADB, 2022 U.S. Dist. LEXIS 239194, at *9 (D. Mass. Sept. 30, 2022).

In *Costa*, addressing the admissibility of an ergonomics expert's opinion, the district court wrote that "[t]his type of ergonomics analysis is well-established." *Id.* In ruling the ergonomics expert's testimony admissible, the district court observed that the expert's "expertise in this area is unquestioned" and that the expert "reviewed the relevant literature and applied his knowledge to the facts in the case to form his conclusions." *Id.* at *10. Other courts have admitted ergonomics expert testimony on the same basis. *See, e.g.*, *Hewitt v. Metro-N. Commuter R.R.*, 244 F. Supp. 3d 379, 388 (S.D.N.Y. 2017) ("[T]he evidence before the Court suggests that the science of ergonomics is sufficiently well-established so as to justify admitting expert testimony on the topic, even when the expert has not personally observed the allegedly unsafe job environment"); *Rowley v. Union Pac. R.R. Co.*, No. 11-cv-46, 2016 U.S. Dist. LEXIS 153391, at *7-8 (E.D. Wis. Nov. 3, 2016); *Michaels v. Mr. Heater, Inc.*, 411 F. Supp. 3d 992, 999-1000 (W.D. Wis. 2006).

Here, in his report, Dr. Lenorovitz details the data and information he reviewed, including the transcripts of multiple depositions, his inspection of the actual Can-Am Maverick X3 in this case, his reference to American National Standards Institute (ANSI) standards, thirteen published articles, the documents

11

and materials about the Can-Am Maverick X3 that were supplied to Mr. Ratcliffe, including the 2019 Operator's Guide, his analysis of the "hazard control hierarchy" in this case, the sufficiency of the warnings, and his conclusions about deficiencies. *Lenorovitz Report* at 1-49. From the Court's perspective, Dr. Lenorovitz has satisfied his obligation to demonstrate that his expert opinions rest "on a reliable foundation" and are "relevant to the task at hand." *Daubert*, 509 U.S. at 597.

In summary, the Court rejects BRP's *Daubert/Kumho* challenge to the expert testimony of Dr. Lenorovitz as the Plaintiff's ergonomics, human factors, and warnings expert. The Court concludes that Dr. Lenorovitz's proposed testimony meets the requisite "threshold of reliability," and therefore it "should be presented to a jury and 'tested by the adversary process—[by] competing expert testimony and active cross examination.'" *United States v. Santana-Vasquez*, 2022 U.S. Dist. LEXIS 199196, at *5 (D. Me. Nov. 2, 2022) (quoting *Vargas*, 471. F.3d at 265); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"). In doing so, the Court has considered the 2023 amendments to Rule of Evidence 702 and makes this determination in accordance with the requirements of Rule 104(a).

## VI.  CONCLUSION

The Court GRANTS in part and DISMISSES in part without prejudice Defendant BRP's Motion in Limine No. 3 and Supporting Brief to Exclude the Opinions of David Lenorovitz (ECF No. 170). The Court GRANTS Defendant BRP's

motion to the extent that it seeks to exclude so much of Dr. Lenorovitz's opinion testimony that constitutes ancillary opinions. The Court otherwise DISMISSES BRP's motion in limine without prejudice.

SO ORDERED.

                                    <u>/s/ John A. Woodcock, Jr.</u>
                                    JOHN A. WOODCOCK, JR.
                                    UNITED STATES DISTRICT JUDGE

Dated this 5th day of November, 2024