UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STEPHEN J. RATCLIFFE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) )  No. 1:20-cv-00234-JAW |
| BRP U.S., INC., et al., | ) ) ) |
| Defendants. | ) |

**ORDER ON DEFENDANT BRP'S MOTION IN LIMINE TO EXCLUDE THE OPINIONS OF ROBERT J. NOBILINI**

The court declines to bar the expert opinions of a mechanical and biomechanical engineer regarding the instinctive reaction of operators of side-by-side vehicles to extend an arm in a rollover to brace before contacting the ground, that the warnings were insufficient to prevent this reaction, and that the safety features of the vehicle were inadequate to prevent or minimize this risk.

**I.  BACKGROUND**

With trial looming, on October 4, 2024, BRP U.S., Inc. (BRP) filed a motion in limine to exclude the engineering opinions of Robert J. Nobilini, Ph.D., an expert designated by Stephen J. Ratcliffe, the plaintiff. *Def. BRP's Mot. in Lim. No. 2 and Supporting Br. to Exclude the Ops. of Robert J. Nobilini* (ECF No. 169) (*Def.'s Mot.*).[1] On October 15, 2024, Mr. Ratcliffe opposed the exclusion of Dr. Nobilini's testimony.

---

[1]  For the reasons the Court described in its order on the Plaintiff's motion to strike, the Court has endeavored to resolve BRP's Rule 702 motion in the brief interval before trial, now scheduled to begin on November 12, 2023.  The Court has done its level best, but counsel should understand that BRP's decision to file its Rule 702 motion as a motion in limine in the runup to trial has necessarily constrained the Court's decision-making.

*Pl. Stephen J. Ratcliffe's Obj. to Def. BRP's Mot.* in Lim. *No. 2 and Supporting Br. to Exclude the Ops. of Robert J. Nobilini* (ECF No. 191) (*Pl.'s Opp'n*).

## II.  OVERVIEW

Mr. Ratcliffe has brought a lawsuit against BRP, the manufacturer, and Tidd's Sport Shop, Inc. (Tidd's), the dealer, of a 2019 Can-Am Maverick X3, a utility terrain vehicle (UTV), asserting negligence and strict liability claims arising out of an incident in which Mr. Ratcliffe's UTV rolled onto its side and crushed his arm.  The Plaintiff is pursuing design defect and failure-to-warn theories of recovery.  During discovery, by report dated September 8, 2022, Mr. Ratcliffe designated Dr. Nobilini, a professional engineer, as a Plaintiff expert.  *Def.'s Mot.*, Attach. 1, *Report of Exam.* (ECF No. 169-1) (*Nobilini Report*).  BRP deposed Dr. Nobilini on October 7, 2022. *Pl.'s Opp'n*, Attach. 4, *Dep. of Robert J. Nobilini, Ph.D.* (ECF No. 191-4) (*Nobilini Dep.*).  Mr. Ratcliffe listed Dr. Nobilini as a witness in his pretrial memorandum.  *Pl. Stephen J. Ratcliffe's Pretrial Mem.* at 7 (ECF No. 154).

In his September 8, 2022 report, Dr. Nobilini summarized his conclusions in thirteen bullet points at the end of the report, writing:

- BRP was aware that a rollover was a foreseeable hazard of the subject vehicle.

- Extending one's arm in the direction that they are falling is a natural protective response.

- It was foreseeable that occupants would instinctively extend their arm outside the roll cage during a lateral rollover.

- BRP knew that occupants would instinctively extend their arms outside of the roll cage during a lateral rollover.

- The movement of Mr. Ratcliffe's left arm in the direction that he was falling (i.e. towards the ground and outside of the roll cage) was consistent with an instinctive natural protective response.

- The warnings on the subject Can-Am Maverick X3 were not an effective measure to prevent the natural response to extend one's arm as they fell towards the ground during a lateral rollover.

- Mr. Ratcliffe's injuries were consistent with his left forearm being crushed between the driver's side rail of the ROPS[2] and the ground during the subject rollover event.

- The lack of dust and scratches in the middle of the left lateral rail of the roll cage was consistent with Mr. Ratcliffe's left arm pinned between this portion of the roll cage and the ground.

- BRP knew or should have known that if an occupant's arm moved outside the roll cage during a lateral rollover, their arm could be crushed by the roll cage or the frame of the vehicle.

- The opening between the top of the door and the lateral rail of the roll cage allowed for an occupant's arm to move outside the roll cage and into harm's way.

- The lack of an adequate restraint system to prevent an occupant's arm from moving outside the roll cage during a lateral rollover made the subject vehicle unreasonably dangerous for its intended use.

- The subject Can-Am Maverick X3 vehicle was designed and sold in a defective condition and unreasonably dangerous to users including Mr. Ratcliffe.

- The defective design of the subject vehicle was a substantial contributing factor to Mr. Ratcliff's injuries.

*Nobilini Report* at 18-19.

---

[2] ROPS refers to rollover protection structure.  *See Rollover protection structure*, WIKIPEDIA (last accessed Nov. 3, 2024), https://en.wikipedia.org/wiki/Rollover_protection_structure.

3

## III. THE POSITIONS OF THE PARTIES

### A. BRP's Motion to Exclude the Opinions of Dr. Nobilini

BRP seeks to exclude Dr. Nobilini's expert opinions on the ground that they violate the constraints of Federal Rule of Evidence 702 and the caselaw implementing *Daubert*[3] and *Kumho*[4]. *Def.'s Mot.* at 1-10. Of Dr. Nobilini's thirteen discrete opinions, BRP specifically focuses on his conclusions that "(i) humans—like Plaintiff—have a natural protective response to extend one's hand/arm during a UTV rollover; (ii) BRP's warnings were inadequate or ineffective to prevent the natural protective response; and (iii) the lack of an adequate restraint system to prevent the occupant's arm from leaving the roll cage during a rollover made the Subject Vehicle unreasonably dangerous for its intended use." *Id.* at 10.

BRP avers that "at its core, all of Nobilini's opinions flow from one untested and demonstrably false premise—that belted and restrained vehicle occupants instinctively reach out in rollovers." *Id.* at 5. BRP points out that Dr. Nobilini has "never done a scientific study of this question" and asserts that his opinion "runs counter to published literature directly on point." *Id.* (citing *id.*, Attach. 5, Newberry, W., Carhart, M., Larson, R., Bridges, A. et al., *Biomechanics of Occupant Responses during Recreational Off-Highway Vehicle (ROV) Riding and 90-degree Tip-overs*, SAE INT. J. PASSENG. CARS – MECH. SYST. 5(1) (2012) (ECF No. 169-5) (*Newberry Study*). BRP rejects Dr. Nobilini's analogy to the response in a trip-and-fall and describes the analogy as a "classic apples to oranges comparison." *Id.*

---

[3] *Daubert v. Merrell Down Pharms.*, 509 U.S. 579 (1993).
[4] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).

4

Turning first to Dr. Nobilini's opinion about the "natural protective response" in a rollover, BRP notes that Dr. Nobilini reaches this conclusion based on five research studies and his own personal experience but emphasizes that none of these cited studies involved "the kinematics of a belted occupant in a UTV rollover." *Id.* at 6. Instead, all involve "falls from a *standing position* after a loss of balance." *Id.* (emphasis in original). Further, BRP observes that Dr. Nobilini failed to perform tests to validate his opinion, which it views as fatal to his expert opinion under Rule 702. *Id.*

Next, BRP objects to Dr. Nobilini's opinions about the inadequacy of BRP's warnings, claiming his testimony is cumulative of the opinion of David Lenorovitz, Ph.D., a human factors engineer who Mr. Ratcliffe has also listed as an expert. *Id.* (citing *id*, Attach. 4., *Ratcliffe Human Factors Eng'g Analysis Report* (ECF No. 169-4) (*Lenorovitz Report*)). Citing portions of Dr. Lenorovitz's report, BRP urges the Court to exclude Dr. Nobilini's opinion as "redundant." *Id.* at 7-8.

Third, BRP asks the Court to exclude Dr. Nobilini's opinion that the Maverick X3's warnings are inadequate because the opinion is not "the product of a reliable methodology." *Id.* at 8. BRP says that his warnings opinion is premised upon his "unreliable and untested assumption of the 'natural protective response,'" and therefore should be excluded. *Id.* at 8. Next, BRP argues that Dr. Nobilini failed to conduct, review, or cite "any consumer surveys or user studies," nor any "quantitative data or peer reviewed research on whether . . . side-by-side occupants follow instructions," and as such his opinions are "grounded on nothing." *Id.* Indeed, BRP

5

writes that "all Nobilini does is read the warnings and conclude they are inadequate," an opinion based on his own "say so." *Id.*

Fourth, BRP argues that Dr. Nobilini's opinion about the inadequacy of the vehicle's restraint system should be excluded because, again, this opinion is premised on his erroneous "natural protective response" theory. *Id.* at 9. BRP says that even if his natural protective response theory is accepted as admissible, Dr. Nobilini's opinion about the adequacy of the restraint system must be excluded because he did not conduct any testing to evaluate the reliability of his opinion on the adequacy of the UTV's restraint system. *Id.*

Finally, BRP urges the Court to exclude Dr. Nobilini's opinions as contradictory to his opinions in another case involving a competitor's UTV, the Polaris RZR, in which Dr. Nobilini opined the vehicle's "half net" restraint was defective and unreasonably dangerous. *Id.* at 10.

### B. Stephen J. Ratcliffe's Opposition

Mr. Ratcliffe disagrees. *Pl.'s Opp'n* at 1-11. In response, Mr. Ratcliffe points out that the customer warnings BRP includes with the Maverick X3 are replete with cautions to users to keep their arms inside, hold onto the steering wheel, and brace themselves during a rollover. *Pl.'s Opp'n* at 4-5. Mr. Ratcliffe then concentrates on the proposed testimony of Steven Hall, a BRP expert, and William Newberry, another BRP expert. *Pl.'s Opp'n* at 5-8; *see Final Pretrial Mem. of BRP US Inc.* at 11 (ECF No. 155). Each BRP expert, he asserts, relies on the same methodology that forms the basis of Dr. Nobilini's opinions, including a review of academic literature on the

6

biomechanics of falls. *Pl.'s Opp'n* at 5-8. After describing the information and studies upon which Dr. Nobilini relied in expressing his opinions, Mr. Ratcliffe points out that, in the Newberry study relied upon by Defendant's experts, "[v]olunteers for the Yamaha-funded study knew in advance that the vehicle would be doing a 17-second quasistatic 90-degree rollover, so these were not natural responses to unplanned real-world rollovers." *Id.* at 8-9 (citing *Newberry Study* at 89, 108). As regards the allegedly cumulative nature of Dr. Nobilini's proposed testimony, Mr. Ratcliffe acknowledges his obligation not to present cumulative testimony but argues a ruling precluding evidence at this stage would be premature and urges the Court to reserve ruling until trial. *Id.* at 9. Mr. Ratcliffe justifies Dr. Nobilini's opinion testimony about the inadequacy of BRP's warnings, averring that Dr. Nobilini's report cites academic literature, his review of videos of UTV rollovers, and safety videos from BRP's competitors in the UTV manufacturing business. *Id.* at 10-11 (citing *Nobilini Report* at 15). Finally, Mr. Ratcliffe contests BRP's challenge to Dr. Nobilini's opinions about the inadequacy of the Maverick X3's side rollover protection, noting that BRP's critique merely recycles its objection to Dr. Nobilini's natural protective response opinions. *Id.* at 11.

## IV.    LEGAL STANDARDS

The admissibility of expert testimony is a question of law governed by Federal Rule of Evidence 702 and by the United States Supreme Court in *Daubert* and its progeny. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or otherwise specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

The First Circuit has "long entrusted federal trial judges to be 'gate-keeper[s],' empowered by Rule 702 and *Daubert* to 'ensure that an expert's testimony "both rests on a reliable foundation and is relevant to the task at hand."'" *United States v. Vargas*, 471 F.3d 255, 261 (1st Cir. 2006) (quoting *Daubert*, 509 U.S. at 597). "[T]he overarching concern is on the 'evidentiary relevance and reliability' of the proposed testimony," with speculative expert testimony often satisfying neither criterion. *Seahorse Marine Supplies, Inc. v. P.R. Sun Oil Co.*, 295 F.3d 68, 81 (1st Cir. 2002) (quoting *Daubert*, 509 U.S. at 595); *see also Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 22 (2d Cir. 1996) ("Admission of expert testimony based on speculative assumptions is an abuse of discretion").

In general, "[e]xpert testimony is admissible if 'scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue' and if the proposed witness is qualified as an expert by some specialized 'knowledge, skill, experience, training, or education.'" *Liberty Mut. Ins.*

8

*Co. v. Broan-NuTone LLC*, No. 21-cv-11986-DLC, 2024 U.S. Dist. LEXIS 76408, at *5-6 (D. Mass. Apr. 26, 2024) (quoting *Daubert*, 509 U.S. at 588).

Mr. Ratcliffe and BRP have both referred to the 2023 amendments to Federal Rule of Evidence 702.[5]  The advisory committee on evidence rules explained the purpose of the amendment: "[f]irst, the rule has been amended to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule."  FED. R. EVID. 702 advisory committee's note to 2023 amendment.  The committee cited Federal Rule of Evidence 104(a) to explain "[t]his is the preponderance of the evidence standard that applies to most of the admissibility requirements set forth in the evidence rules." *Id.* (*citing Bourjaily v. United States*, 483 U.S. 171 (1987)). *Id.* "Rule 702(d) has also been amended to emphasize that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." *Id.*  The committee concluded that "[n]othing in the amendment imposes any new, specific procedures.  Rather, the amendment is simply intended to

---

5  In 2023, Federal Rule of Evidence 702 was amended as follows:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise <u>if the proponent demonstrates to the court that it is more likely than not that</u>:
>
> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> **(b)** the testimony is based on sufficient facts or data;
> **(c)** the testimony is the product of reliable principles and methods; and
> **(d)** the ~~expert has reliably applied~~ <u>expert's opinion reflects a reliable application of</u> the principles and methods to the facts of the case.

FED. R. EVID. 702, 2023 amends.

9

clarify that Rule 104(a)'s requirement applies to expert opinions under Rule 702." *Id.*

## V.   DISCUSSION

First, although BRP criticizes Dr. Nobilini's opinions in this case, it has wisely not questioned his expert qualifications as a professional engineer. Dr. Nobilini is well-qualified as a mechanical engineer with a concentration in biomechanics. *See Nobilini Report* at 33-36.

BRP's motion includes many catchphrases for expert disqualification. *Def.'s Mot.* at 1-9 ("unreliable and unscientific opinion testimony," "no presumption of admissibility," "untested and demonstrably false," "inapplicable research studies and misleading, irrelevant and anecdotal videos, rather than testing or literature"). However, when analyzed, the crux of its argument against Dr. Nobilini's testimony is that it is unreliable because he failed to test his opinions about alternative designs. *Id.* at 6 ("One of the benchmarks for evaluating the reliability of expert testimony is whether the theory or technique can be and has been tested").

In reviewing the foundation for Dr. Nobilini's opinion, the Court finds BRP correct in its assertion that Dr. Nobilini does not refer to any studies that corroborate his view that a person would naturally extend an arm to break a fall specifically during a UTV rollover. Nevertheless, the Court does not view Dr. Nobilini's proposed testimony as his own *ipse dixit*. Instead, Dr. Nobilini based his biomechanical opinion on three studies of the biomechanics of what people typically do when they are falling from a standing position. *See Nobilini Report* at 15 (citing articles at footnotes 2-5).

10

Further, Dr. Nobilini viewed twenty-six YouTube videos in which the occupants put their arms out in all-terrain vehicle rollovers and a safety video by Polaris Industries, a BRP competitor, in which the Polaris representative confirmed that "[s]ometimes the natural response is to put your hand out, like you're falling." *Id.* Dr. Nobilini also reviewed after-market products, including arm and wrist restraints, designed to restrain users of such vehicles from extending their arms outside the roll cage in the event of a rollover. *Id.* at 15-17. Dr. Nobilini further included as the basis for his opinion a BRP-produced YouTube video concerning the Can-Am Off-Road Commander, a different UTV model manufactured by BRP, in which the presenter described the advantage of that vehicle's safety nets and noted that the "reason for the safety net" is "so you don't stick any arms out in case of an accident." *Id.* at 17. Dr. Nobilini's report also referenced BRP documents which describe the advantages of the optional safety net for the UTV in which BRP acknowledged that the "net can hold passenger body parts during roll over." *Id.*

> Finally, Dr. Nobilini considered Mr. Ratcliffe's personal testimony:
>
> When - - when your body is falling, right, it's almost an involuntary reaction for you to want to brace yourself, right?  And you know, someone could instruct me a thousand times over, and I think knowing my body and my reflexes, I would instinctually want to brace myself from falling when I feel my body falling.

*Pl.'s Opp'n*, Attach. 2, *Dep. of Stephen J. Ratcliffe* at 46:2-8 (ECF No. 191-2). Mr. Ratcliffe further testified that "I just know I felt my body falling and my arm went out." *Id.* at 46:22-23.

Based on the limited information before it, the Court concludes that the Plaintiff has demonstrated a sufficient foundation for Dr. Nobilini's opinions. Dr.

11

Nobilini has presented a reliable basis for his conclusions that Mr. Ratcliffe's rollover accident was analogous to a fall, and, according to academic studies of the biomechanical response to falling, that a person's natural response is to extend his or her arm to break a fall. Further, based on cumulative evidence, Dr. Nobilini articulates a reasonable basis for his opinions that the UTV industry generally was aware of the risk presented by this natural human response, that BRP specifically was aware of this risk, and that the UTV industry had developed safety features to mitigate this risk.

In sum, the Court rejects BRP's Rule 702 and *Daubert/Kumho* challenge to the expert testimony of Dr. Robert J. Nobilini as the Plaintiff's biomechanical engineering expert. The Court has concluded that Dr. Nobilini's proposed testimony meets the requisite "threshold of reliability," and therefore it "should be presented to a jury and 'tested by the adversary process—[by] competing expert testimony and active cross examination.'" *United States v. Santana-Vasquez*, 2022 U.S. Dist. LEXIS 199196, at *5 (D. Me. Nov. 2, 2022) (quoting *Vargas*, 471. F.3d at 265); *see also Daubert*, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence"). In doing so, the Court has considered the 2023 amendments to Rule of Evidence 702 and makes this determination in accordance with the requirements of Rule 104(a).

## VI. CONCLUSION

The Court DISMISSES without prejudice Defendant BRP's Motion in Limine No. 2 and Supporting Brief to Exclude the Opinions of Robert J. Nobilini (ECF No. 169).

SO ORDERED.

    /s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 5th day of November, 2024