UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STEPHEN J. RATCLIFFE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-00234-JAW |
| | ) |
| BRP U.S., INC., et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON DEFENDANT BRP'S MOTION IN LIMINE TO PRECLUDE SOCIAL MEDIA VIDEOS**

A defendant in a product liability case involving a vehicle rollover moves to preclude the introduction of videos published by the company on its social media showing stunt riding of its products. The plaintiff objects, arguing the videos are relevant to and probative of the reasonably foreseeable uses of the vehicle. Concluding the videos are relevant, probative, and the risk of unfair prejudice is low, the court agrees with the plaintiff and dismisses the defendant's motion.

**I.   BACKGROUND**

On July 30, 2019, a utility terrain vehicle driven by Stephen J. Ratcliffe overturned, causing significant injuries. *Compl.* ¶ 15 (ECF No. 1). On July 2, 2020, Mr. Ratcliffe brought product liability claims against both BRP U.S., Inc. (BRP), the manufacturer; and Tidd's Sport Shop, Inc. (Tidd's), the distributor; asserting negligence and strict liability claims against both, respectively. *Id.* ¶¶ 17-57.

With a trial date looming, on October 4, 2024, BRP filed a motion in limine to preclude introduction of or reference to eight social media marketing videos allegedly

posted by BRP. *Def. BRP's Mot.* in Lim. *No. 9 and Supporting Br. to Preclude Social Media Videos* (ECF No. 176) (*Def.'s Mot.*). On October 15, 2024, Mr. Ratcliffe objected to BRP's motion, arguing that the videos posted by BRP are relevant to the issue of the intended and reasonably foreseeable uses of the vehicle. *Pl. Stephen J. Ratcliffe's Obj. to Def. BRP's Mot.* in Lim. *No. 9 and Supporting Br. to Preclude Social Media Videos.* (ECF No. 203) (*Pl.'s Opp'n*).

## II.  THE PARTIES' POSITIONS

### A.  BRP's Motion to Preclude Social Media Videos

BRP claims the parties do not meaningfully dispute that Mr. Ratcliffe's operation of the 2019 Can-Am Maverick X3 vehicle violated numerous warnings provided by BRP. *Def.'s Mot.* at 1. It avers that numerous witnesses have testified that Mr. Ratcliffe was injured while attempting a "donut," a dangerous maneuver he had been warned to avoid by prominent decals posted on the vehicle itself at the time of purchase and again in the accompanying Operator's Guide. *Id.* BRP anticipates Mr. Ratcliffe's argument will refer to videos from Can-Am's Facebook and other social media sites, which show riders performing similar stunts, to argue that BRP encourages dangerous driving in conflict with its warnings. *Id.* at 2. Specifically, BRP seeks to exclude eight social media videos taken from the Cam-Am Off-Road Facebook page[1], as shown to BRP's corporate witness Marc Lacroix during his deposition. *Id.* at 3 (citing *id.*, Attach. 1, *Social Media Videos* (ECF No. 176-1)). BRP

---

[1]  In the deposition of BRP representative Marc Lacroix, he did not dispute that BRP controls the Can-Am Off-Road social media accounts. *Id.*, Attach 2, *Videotaped Webconference Dep. of Marc Lacroix* at 68:22-70:24; 72:21-75:17; 76:13-77:23; 79:23-81:5; 86:8-89:15; 93:8-93:17; 95:14-96:4; 97:11-22 (ECF No. 176-2) (*Lacroix Dep. Excerpts*).

2

insists these videos are irrelevant and inadmissible under Federal Rules of Evidence 401 and 402, submitting there is no evidence that the videos "influenced Plaintiff's decision to buy the X3 or his subsequent conduct." *Id.* at 2-3. In the event the Court finds the videos relevant, BRP alternatively moves to exclude them as unfairly prejudicial pursuant to Federal Rule of Evidence 403. *Id.* at 3.

BRP explains the purpose of the social media videos was to "generate awareness first and foremost, and, yes, interest, and to win their hearts and minds," and adds the videos were intended to be "exciting for people to watch." *Id.* at 3 (citing *Lacroix Dep. Excerpts* at 56:7-12; 55:16-23). However, BRP says, the videos "are not instructional videos" and that "[t]hey merely show what a trained, highly skilled operator can do when pushing side-by-sides to their limits." *Id.* As such, BRP avers, "[a]nyone with common sense will recognize that novices cannot operate a vehicle in the same manner as professionals. . . . [and] will know that attempting these types of maneuvers is dangerous and risky." *Id.* Drawing a comparison to other videos intended to entertain, BRP insists "no one would expect moviegoers to launch their car off a ramp after watching a James Bond car chase." *Id.*

The Defendant recites that evidence must be relevant to be admissible, and that evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence" and the "fact is one of consequence in determining the action." *Id.* at 5 (quoting FED. R. EVID. 401, 402). However, BRP notes that a court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice,

confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* at 5-6 (quoting FED. R. EVID. 403). BRP contends Mr. Ratcliffe, as the proponent of the evidence, bears the burden of proving the admissibility of the social media videos. *Id.* at 6 (citing *United States v. Bartelho*, 129 F.3d 663, 670 (1st Cir. 1997)).

BRP argues Mr. Ratcliffe has not satisfied this burden. It urges the Court to exclude the social media videos based on Plaintiff's failure to demonstrate their relevance to this litigation and because there is no evidence the videos influenced his behavior and thus have no bearing on the adequacy of the warnings included with the purchase of the Maverick X3. *Id.* In support, the Defendant cites cases in which other federal courts rejected evidence of marketing and promotional materials as irrelevant and unfairly prejudicial when not relied upon by the plaintiff or when they did not depict the same product at issue in the litigation. *Id.* at 6-7 (citing *Wolfe v. McNeil-PPC, Inc.*, No. 07-cv-348, 2012 U.S. Dist. LEXIS 2160, at *22-23 (E.D. Pa. Jan. 9, 2012); *Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1178 (4th Cir. 1997); *Haynes v. Am. Motors Corp.*, 691 F.2d 1268, 1270-71 (8th Cir. 1982)).

Here, BRP argues the social media videos did not influence Mr. Ratcliffe's riding behavior because he "denied performing donuts or any other dangerous maneuver at the time of the accident, insisting that he was performing a routine 'right-hand turn.'" *Id.* at 6 (citing *id.*, Attach. 8, *S. Ratcliffe Dep. Tr.* at 42:9-11; 99:20-23 (ECF No. 176-8)). Further, BRP points out that there is nothing in the record to indicate Mr. Ratcliffe viewed any of the specific social media videos shown to Mr.

4

Lacroix during his deposition. *Id.* at 6-7. The Defendant highlights that Plaintiff's experts admit "they have no reason to believe Plaintiff watched any of the National Donut Day videos[2] before the accident" and, further, that four of the videos in question had not even been posted at the time of the accident.[3] *Id.* at 7 (citing *id.*, Attach. 3, *Nobilini Dep. Tr.* at 7:15-18 (ECF No. 176-3); *id.*, Attach. 4, *Lenorovitz Dep. Tr.* at 70:9-22 (ECF No. 176-4)). BRP also quotes from the transcript of Mr. Ratcliffe's own deposition, asserting the passage serves as an admission that the social media videos did not influence his riding:

> A: Yeah. If I recall, I think the videos that I had seen were a little more extreme than the type of riding that I would do or I've ever experienced, right?
>
> . . . .
>
> Q: You saw that the video showing - - the videos that you saw showing this meshing in use on similar vehicles, did you mention - - I wasn't sure I heard you - - that a lot of those videos were showing people using these vehicles in an activity that you wouldn't be doing? Did you say that? Did I hear that right?
>
> A: They were - - they were - - I don't know if they were professionals or just, you know, amateur videos, but they were doing some things that I myself wouldn't be able to do, right?

*Id.* (citing *S. Ratcliffe Dep. Tr.* at 145:24-146:4, 150:18-151:3).

Even if Mr. Ratcliffe did see the social media videos, BRP emphasizes that "not *all* of the vehicles in the videos displayed in the Lacroix deposition show the same model or model year as the Subject Vehicle (or at least not the Subject Vehicle as it

---

[2] In the "National Donut Day video", two UTV's are seen in slow motion performing simultaneous donut maneuvers. *See Social Media Videos*.
[3] As BRP explains, "[t]he date of the accident was July 30, 2019. Four of the videos displayed in the Lacroix deposition were uploaded to social media afterwards, on October 15, 2019, June 5, 2020, September 21, 2020, and June 4, 2021." *Def.'s Mot.* at 5 n.3.

5

is sold)." *Id.* (emphasis in original). Specifically, it points out that "[t]he June 7, 2019 video includes many different Can-Am models," "the videos from December 5, 2018, October 15, 2019, and June 4, 2021 feature a modified X3," and "the August 13, 2017 video features an X3 Crew." *Id.* at 7 n.5. BRP argues that any marketing videos showing vehicles other than the Maverick X3 are irrelevant. *Id.* (citing *Haynes*, 691 F.2d at 1270-71).

BRP notes that the promotional videos involved professional riders performing stunts in closed courses, as is commonly done by vehicle manufacturers, which does not constitute an invitation to users to engage in similar riding. *Id.* at 8 (citing *Lacroix Dep. Excerpts* at 92:16-22). In addition, the Defendant posits that none of the videos shows riders attempting tricks on terrain similar to the gravel pit where Mr. Ratcliffe's accident occurred, a distinction that exacerbates the irrelevance of the videos. *Id.* Given all these facts, BRP insists the social media videos have no tendency to make it more or less likely that the Maverick X3's warnings were inadequate and thus should be excluded as irrelevant. *Id.*

Turning to its undue prejudice argument, BRP asserts in the alternative that, should the Court find the social media videos relevant, "the videos should still be precluded as unfairly prejudicial pursuant to Federal Rule of Evidence 403." *Id.* at 9. BRP directs the Court to caselaw in which the First Circuit found "'untoward effects' . . . to be so weighty that the evidence should be excluded," even if the evidence helps inform the disputed issues. *Id.* (citing *Galarneau v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 504 F.3d 189, 205 (1st Cir. 2007) (quoting *Faigin v. Kelly*, 184

6

F.3d 67, 80 (1st Cir. 1999)).  BRP also says that the Court holds "considerable latitude in determining whether to admit or exclude evidence." *Velazquez v. Abbott Lab'ys*, 901 F. Supp. 2d 279, 292 (D.P.R. 2012) (quoting *Santos v. Sunrise Med.*, 351 F.3d 587, 592 (1st Cir. 2003)).

Applying these standards to the case at bar, BRP argues that "[d]isplaying or referencing the videos will mislead the jury, as the jury would surely presume that (i) Plaintiff viewed the videos prior to the accident, and . . . (ii) . . . the videos influenced Plaintiff's riding behavior," despite Mr. Ratcliffe's claim that he was not performing donuts at the time of the accident, the fact that four of the eight videos were not uploaded to social media until after the accident, and the dearth of evidence that Plaintiff had viewed any of the social media videos prior to purchasing the vehicle or the accident.  *Id.*  The Defendant further warns the Court that "[d]isplay or reference to such videos will simply waste time through extensive cross-examination."  *Id.* at 10.  Rather, BRP says, "[t]he adequacy of the warnings BRP provided with the Subject Vehicle should be thoroughly analyzed and scrutinized during trial, not videos Plaintiff has not viewed."  *Id.*  Based on the risk of unfair prejudice, misleading the jury, and wasting time, BRP requests the Court enter an order "precluding the introduction of such evidence at trial."  *Id.*

### B. Stephen J. Ratcliffe's Objection to BRP's Motion to Preclude Social Media Videos

Mr. Ratcliffe objects to BRP's motion to exclude the social media videos, arguing that the content of the videos directly contradicts BRP's likely position that Mr. Ratcliffe mishandled the vehicle by providing evidence of "what BRP considers is

7

appropriate use and what it invites its users to do with the vehicles." *Pl.'s Opp'n* at 1. Further, Mr. Ratcliffe notes that, for his product liability claims, he must demonstrate that his use was reasonably foreseeable and an intended use of the product, as BRP was required to design a reasonably safe vehicle for such uses. *Id.* He insists that uses "encouraged, promoted, and marketed by BRP" in videos posted to their social media fit within the category of reasonably foreseeable and intended use. *Id.*

    Mr. Ratcliffe analogizes BRP's position to the adage "do as I say and not as I do," admitting that the warnings affixed to the Maverick X3 and in the operating manual urge its users to avoid doing donuts, but pointing out that those warnings "stand[] in direct contrast" to the social media videos. *Id.* at 2. The Plaintiff insists that "the jury is entitled to hear the evidence and deliberate on the topic of what is and is not the foreseeable intended use of these vehicles." *Id.* Mr. Ratcliffe avers the social media videos "demonstrate that BRP understood its customer base would drive the vehicles for thrill-seeking purposes," and "[i]n fact, BRP invited its customer base to use the vehicles in that manner." *Id.* Mr. Ratcliffe points to particular videos as evidence; first, directing the Court to the June 7, 2019 video, Mr. Ratcliffe notes BRP posted several vehicles doing donuts and tagged the post with the hashtag "#werebuiltforthis." *Id.* Similarly, Mr. Ratcliffe points out the June 4, 2021 video shows a vehicle performing donuts and BRP included a caption to the post stating: "Happy National Doughnut Day! . . .. We want YOU to celebrate with us. Drop your best Doughnut videos in the comments." *Id.* at 2-3 (citing Facebook post, dated June

8

4, 2021 (available https://www.facebook.com/watch/?v=897812377511575) (last accessed October 11, 2024) (June 4, 2021 Facebook Post)). In the comments to the June 4, 2021 Facebook post, BRP further engaged with the public in the comment section, telling a user to "Spin, spin, spin!" *Id.*

Mr. Ratcliffe reinforces this point by highlighting an alleged contradiction in the deposition testimony of BRP representative Marc Lacroix. The Plaintiff contends that Mr. Lacroix "tried to suggest, falsely, that the BRP marketing team included disclaimers at the bottom of the screen that 'emphasizes the fact that these are performed by professional riders in closed environments, and not to perform these.'" *Id.* at 3 (quoting *id.*, Attach. 1, *Videotaped Webconference Dep. of Marc Lacroix* at 17:19-18:4 (ECF No. 203-1) (*Lacroix Dep. Tr.*)). However, the Plaintiff avers that "[t]his self-serving statement is quickly rebutted by Mr. Lacroix's own deposition testimony, as well as the videos themselves attached to BRP's motion and the Facebook links from where those videos were obtained which contain no such disclaimer." *Id.* at 4 (internal citations omitted). Mr. Lacroix also notes that BRP's marketing team, which manages its social media accounts, "consists of 15-20 people," such that BRP's "claim that it did not market the vehicle to perform donuts would directly contradict the actions of its entire marketing team on the subject." *Id.* (citing *Lacroix Dep. Tr.* at 32:8-25.)

Mr. Ratcliffe avers "the BRP 'brand' has profited off its marketing strategy" by posting, in Mr. Lacroix's words, "content that would appeal to the followers, the fan base and to customers, not just anything that was posted online," with the stated goal

9

"to generate awareness first and foremost, and, yes, interest, and to win their hearts and minds." *Id*. (quoting *Lacroix Dep. Tr.* at 49:22-25, 56:10-12). The Plaintiff insists that "now, because those posts conflict with BRP's defense, they seek to have this Court prevent the jury from hearing and seeing the evidence"; he argues the videos are not unfairly prejudicial. *Id*. He puts forth that BRP's motion "questions the intelligence of the jury and their ability to understand and parse through this evidence as it relates to the issues before them" and expresses his faith that "the jury will be able to appreciate the videos and apply these pieces of evidence to the overall issues in this case." *Id.* at 4-5.

The Plaintiff urges the Court to leave the question of whether the social media videos bear on the intended use of the vehicles to the jury and asks the Court to deny Defendant BRP's motion to exclude the social media videos.

### III. DISCUSSION

As the Defendant correctly recited, "evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. The Federal Rules direct courts to admit relevant evidence unless the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court instruct otherwise. FED. R. EVID. 402.

Parties disagree on the evidentiary purpose of the social media videos; the Defendant argues "[t]here is no evidence that the videos influenced Plaintiff's behavior in any manner" in the context of the adequacy of the vehicle's safety

10

warnings, *Def.'s Mot.* at 6, while the Plaintiff claims the video's relevance because "plaintiff must demonstrate in this matter that [his] use was reasonably foreseeable and intended." *Pl.'s Opp'n* at 1.

First, the Court concludes that the social media videos are relevant to Mr. Ratcliffe's product liability claims for the purpose of demonstrating the foreseeable uses of the product. As stated by Rule 401, the relevance of a fact depends on the nature of the action brought—here, Mr. Ratcliffe brings product liability claims for negligent failure to warn and for design defect pursuant to 14 M.R.S. § 221. *Compl.* at 5-10 (ECF No. 1). As Maine courts confronted with 14 M.R.S. § 221 have explained:

> the relational risk-utility assessment that 14 M.R.S.[] § 221 contemplates is an examination of the utility of the design, the risks of the design and the feasibility of safer alternatives in relation to the reasonably foreseeable use of the product by the ordinary user or consumer.

*Redman v. Bic Corp.*, No. CV-86-1196, 1990 Me. Super. LEXIS 4, at *3 (Jan. 8, 1990).

Similarly, prior decisions of the District of Maine have considered the concept of a product's "foreseeable use" in the context of negligent failure to warn cases and have held a manufacturer has a duty to warn of dangers stemming from foreseeable use of a product even when the risk is identified post-sale. *See Davies v. Datapoint Corp.*, Civil No. 94-56-P-DMC, 1996 U.S. Dist. LEXIS 13272, at *11 (D. Me. Jan. 19, 1996) ("Accordingly, under Maine negligence law when a manufacturer learns, or in the exercise of reasonable care should learn, of dangers associated with the foreseeable use of its products after they are manufactured and sold, it must take reasonable steps to warn foreseeable users about those dangers").

11

In accordance with this precedent, the Court finds the company's own videos demonstrating the potential functionality of the vehicles for stunt riding relevant to the foreseeable uses of the products. BRP plainly encouraged such behavior, soliciting videos of similar stunt riding from its customers by asking them to "[d]rop your best Doughnut videos in the comments" and instructing them to "[s]pin, spin, spin!" *See Pl.'s Opp'n* at 2 (citing June 4, 2021 Facebook Post)).

BRP contends that the social media videos "are not instructional videos" and suggests "like any marketing, the videos are intended to be 'exciting for people to watch.'" *Def.'s Mot.* at 3 (citing *Lacroix. Dep. Tr.* at 56:7-12; 55:16-23). The Defendant insists "no one would expect moviegoers to launch their car off a ramp after watching a James Bond car chase." *Id.* The Court finds this comparison inapposite for purposes of exclusion. The social media videos were not action movies published by an unaffiliated Hollywood studio; the videos were published by Can-Am's Off-Road brand, on the company's official Facebook page, to specifically target "the followers, the fan base, and to customers, not just anything that was posted online." *Pl.'s Opp'n* at 4 (citing *Lacroix. Dep. Tr.* at 49:22-25). Based on the foregoing, the Court concludes the social media videos are relevant to the product's foreseeable uses and proceeds to consideration of whether the evidence should be excluded under Federal Rule of Evidence 403.

Federal Rule of Evidence 403 states:

> The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

On this issue, BRP argues that allowing the social media videos into evidence "would result in unfair prejudice to Defendant BRP (and the jury), as the videos would mislead the jury, confuse the true issue of whether BRP's warnings were adequate, and waste time." *Def.'s Mot*. at 8-9. Specifically, it warns the Court that, upon seeing the videos, "the jury would surely presume that (i) Plaintiff viewed the videos prior to the accident, and . . . (ii) . . . the videos influenced Plaintiff's riding behavior." *Id*. at 9.

The Court agrees with the Plaintiff that this underestimates "the intelligence of the jury and their ability to understand and parse through this evidence as it relates to the issues before them." *Pl.'s Opp'n* at 4. The Defendant will have opportunity to undermine the social media videos at trial by presenting its arguments that the vehicles shown are different and that no evidence indicates Mr. Ratcliffe reviewed or relied upon the videos in his purchase of the vehicle or subsequent conduct, including the specific fact that BRP did not post four of the eight videos until after the date of the underlying incident. As such, there is little risk of misleading the jury or confusing the issues.

Further, as described above, the videos posted on social media by the company and its solicitation of such conduct by its customers contain highly probative value on the issue of the uses of the product that BRP could have reasonably foreseen. The balancing test contemplated by Rule 403 requires the danger of an unfairly prejudicial effect to "substantially outweigh" the probative value of the evidence. FED. R. EVID. 403. The Court concludes the Defendant has not demonstrated this

13

balancing test comes out in its favor on the admissibility of the eight videos currently at issue.

The Defendant points out that Plaintiff has "denied performing donuts or any other dangerous maneuver at the time of the accident, insisting that he was performing a routine 'right-hand turn.'" *Def.'s Mot.* at 6 (citing *S. Ratcliffe Dep. Tr.* at 42:9-11; 99:20-23). The Plaintiff concedes this point, noting that "BRP holds the key as to the admissibility of these videos" but arguing "[t]o the extent they take the position that Mr. Ratcliffe was somehow mishandling the vehicle, these videos are directly related to what BRP considers is appropriate use and what it invites its users to do with the vehicles." *Pl's Opp'n* at 1. The Court will not insert itself into the legal strategy and positions the parties intend to take at trial but will also not preemptively deny the Plaintiff the ability to raise this response to BRP's defense, if BRP raises it. Rather, the Court will leave the issues of evidentiary weight to the jury, where it belongs.

Finally, BRP supplied eight social media videos that it seeks to bar Mr. Ratcliffe from introducing into evidence. *Def.'s Mot.* Attach. 1. The Court wonders whether all eight are necessary. Even though they are short, the greater the repetition, the greater the chance for prejudice. The Court urges Plaintiff's counsel to consider cutting back on the number of social media videos that it seeks to admit into evidence.

## IV. CONCLUSION

The Court DISMISSES without prejudice Defendant BRP's Motion *In Limine* No. 9 and Supporting Brief to Preclude Social Media Videos (ECF No. 176).

SO ORDERED.

<u>/s/ John A. Woodcock, Jr.</u>
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 8th day of November, 2024