UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STEPHEN J. RATCLIFFE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 1:20-cv-00234-JAW |
| BRP U.S., INC., et al., | ) ) ) |
| Defendants. | ) |

**ORDER ON DEFENDANT BRP'S MOTION IN LIMINE TO EXCLUDE VIDEOS OF OTHER RECREATIONAL VEHICLE ROLLOVERS**

A defendant in a product liability case moves to exclude as evidence videos of rollover incidents involving other vehicles in which the occupants extended their arms to brace themselves for impact. The plaintiff objects and asks the court to permit the evidence as one of the bases for its expert witness's opinion. The court concludes the evidence is relevant, probative, and not unfairly prejudicial, such that it may be disclosed as a basis for the expert opinion; however, if the videos are referenced at trial, by request of the defendant, the court will issue a limiting instruction pursuant to Federal Rule of Evidence 703, explaining to the jury that the videos may be used to evaluate the expert's opinion, but must not be used for substantive purposes.

**I.    BACKGROUND**

On July 30, 2019, a utility terrain vehicle (UTV) driven by Stephen J. Ratcliffe overturned, causing significant injuries. *Compl.* ¶ 15 (ECF No. 1). On July 2, 2020, Mr. Ratcliffe brought product liability claims against both BRP U.S., Inc. (BRP), the

manufacturer; and Tidd's Sport Shop, Inc. (Tidd's), the distributor; asserting negligence and strict liability claims against both, respectively. *Id.* ¶¶ 17-57.

On October 4, 2024, BRP filed a motion in limine requesting the Court exclude evidence of or reference to videos of any rollover incidents involving other vehicles. *Def. BRP's Mot.* in Lim. *No. 10 and Supporting Br. to Exclude Videos of Other Recreational Vehicle Rollovers* (ECF No. 177) (*Def.'s Mot.*). On October 15, 2024, Mr. Ratcliffe objected to BRP's motion, asking the Court to allow evidence of other rollovers as data points considered by its expert witness in forming his opinions. *Pl. Stephen J. Ratcliffe's Obj. to Def. BRP's Mot.* in Lim. *No. 10 and Supporting Br. to Exclude Videos of Other Recreational Vehicle Rollovers* (ECF No. 204) (*Pl.'s Opp'n*).

## II.   THE PARTIES' POSITIONS

### A.   BRP's Motion to Exclude Videos of Other Recreational Vehicle Rollovers

In sum, BRP moves in limine for the Court to exclude evidence of other recreational vehicle rollovers, adding in a footnote that its request extends to the exclusion of non-recreational vehicles, such as cars, based on the Plaintiff's previous production of a Jeep rollover video. *Def.'s Mot.* at 1 & n.1. Asserting Mr. Ratcliffe lacks scientific evidence to support his claims "that (i) humans instinctively extend their hand or arm to brace for impact during recreational vehicle rollovers, and that (ii) Plaintiff must have exhibited this 'natural protective response' in the accident giving rise to this case," BRP preemptively responds to the Plaintiff's anticipated introduction of other recreational rollovers to prove the purported natural response. *Id.*

BRP asserts that two of Plaintiff's expert witnesses, Dr. Robert Nobilini and Dr. Stephen Batzer, both "opine[][—]without relevant scientific support[—]that there is a 'natural protective response' for a person, like Plaintiff, to extend their hand or arm to brace for impact when they are falling, including in vehicle rollovers." *Id.* at 3 (citing *id.*, Attach. 2, *Nobilini Dep. Tr.* at 29:15-30:23 (ECF No. 177-2); *id.*, Attach. 3, *Batzer Rep.* at 13-14 (ECF No. 177-3)).  Claiming these experts base their opinions on YouTube videos rather than a scientific study, BRP reiterates its position that the videos lack substantial similarity to the Plaintiff's accident and "thus, must be excluded under the Federal Rules of Evidence." *Id.*

The Defendant recites that evidence must be relevant to be admissible, and that evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence" and the "fact is one of consequence in determining the action." *Id.* at 3 (quoting FED. R. EVID. 401, 402).  However, BRP notes that a court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* (quoting FED. R. EVID. 403).  BRP contends Mr. Ratcliffe, as the party who seeks to admit the videos, bears the burden of proving their admissibility. *Id.* (citing *United States v. Bartelho*, 129 F.3d 663, 670 (1st Cir. 1997)).

Turning to the case at bar, BRP informs the Court that Plaintiff failed to demonstrate any foundation for the videos' admissibility and asks the Court to

3

exclude the proffered evidence as "unauthentic, hearsay videos." *Id.* at 4.  BRP notes that the videos show accidents involving vehicles manufactured by competitors, primarily Polaris, and contends that BRP designed the vehicle at issue in this dispute, the Can-Am Maverick X3, to include "doors, [rollover protection structure], seatbelts, hip restraints, handholds and seats, all of which work in conjunction with the overall cockpit geometry to provide reasonable level of protection to occupants when the system is used and used correctly."  *Id.*  These safety features, BRP posits, are not present in the same combination and design in any of the vehicles shown in the other rollover videos, diminishing the videos' relevance to the instant dispute.  *Id.*

Next, BRP asserts that Plaintiff's experts cannot authenticate the proffered videos by explaining, for example, "how or why the accident [visualized therein] occurred," and points out that the First Circuit has held "evidence of prior accidents is admissible . . . only if the proponent of the evidence shows that the accidents occurred under circumstances substantially similar to those at issue in the case at bar."  *Id.* at 4-5 (quoting *Moulton v. Rival Co.*, 116 F.3d 22, 26–27 (1st Cir. 1997) (quoting *McKinnon v. Skil Corp.*, 638 F.2d 270, 277 (1st Cir. 1981))).  The Defendant directs the Court to decisions in which other district courts within the First Circuit have excluded evidence of prior incidents based on the proponent's failure to establish substantial similarity between the prior incidents and the incident in the present case.  *Id.* at 5 (citing *Bado-Santana v. Ford Motor Co.*, 482 F. Supp. 2d 197, 201 (D.P.R. 2007) (excluding evidence of other incidents and stating that "plaintiffs have not described in sufficient detail the circumstances surrounding the rollovers in the

4

prior accidents to show that the subject accident occurred under similar circumstances"); *Herbst v. L.B.O. Holding, Inc.*, 783 F. Supp. 2d 262, 270 (D.N.H. 2011) (excluding evidence of other incidents because they either "involved materially different circumstances," or "were not sufficiently described for this court to deem them substantially similar")).

Applying these precedents to the present case, BRP argues that Mr. Ratcliffe fails to establish substantial similarity between the accidents visualized in the proffered videos and his own. *Id.* It notes Dr. Nobilini made a "general observation" that the videos "demonstrate the natural tendency of [a rollover] occupant to put their arm out to protect themselves while falling towards the ground as their vehicles tipp[ed] over" but argues he did not attempt to explain any substantial similarity nor analogize the circumstances or conditions of the videos to Plaintiff's accident. *Id.* Arguing this omission is dispositive, BRP continues by drawing its own distinctions between the videos and the Plaintiff's accident, emphasizing that "none of the rollover videos display the Can-Am Maverick X3," "[o]ver 80% of the videos feature Polaris vehicles," and "[o]nly 2 of those Polaris vehicles involve a rider performing a donut . . . . [while] [i]n the rest, the accident dynamics of each are completely different with differing speeds, roll rates, and roll angles." *Id.* at 5-6 (citing *id.*, Attach. 1, *Chart of Pl.'s Expert's YouTube Videos* (ECF No. 177-1)). BRP insists that, based on these factors, the human response in this case lacks substantial similarity with the human responses shown in the rollover events in the proffered videos. *Id.* at 6.

5

BRP continues that only five of the twenty-one videos show vehicles equipped with doors like the Maverick X3, and that one of these five shows a Jeep SUV rather than a recreational vehicle.[1] BRP claims that Dr. Nobilini acknowledged in his deposition that "the purpose of the [Maverick X3's] doors were to keep limbs in the vehicle," *id.* (citing *Nobilini Dep. Tr.* at 24:16-20), and asserts that Plaintiff's experts should not have used videos of vehicles with different safety components from the Maverick X3 to compare the human response. *Id.* At bottom, BRP insists that Mr. Ratcliffe has failed to show substantial similarity between the rollovers shown in the proffered videos and his own accident and asks the Court to grant its request to exclude direct evidence or indirect reference to the videos as irrelevant pursuant to Rules 401 and 402. *Id.*

In the alternative, BRP argues that, even if the Court does deem the videos to be relevant, the Court should nevertheless exclude them as unfairly prejudicial pursuant to Federal Rule of Evidence 403, claiming "the videos are misleading [and] would confuse the jury." *Id.* It emphasizes that "the Court may use its discretion to exclude [evidence of prior accidents] if it finds the potential prejudice that could be caused outweighs its probative value." *Id.* at 7 (citing *Bado-Santana*, 364 F. Supp. 2d at 88; *see also Carballo–Rodríguez v. Clark Equipment Co.*, 147 F. Supp. 2d 66, 74 (D.P.R. 2001) (citation fixed) (citing *McKinnon*, 638 F.2d at 277)). BRP warns the Court that "[e]vidence of other accidents creates burdensome and confusing collateral issues for both courts and juries." *Id.* (citing, *inter alia*, *Kinan v. City of Brockton*,

---

[1] BRP notes that seven of the twenty-one videos "are too difficult to properly determine." *Def.'s Mot.* at 6.

6

876 F.2d 1029, 1034-35 (1st Cir. 1989)).  Plaintiff's own expert, BRP says, admits the videos could mislead the jury, in support quoting an exchange from Dr. Nobilini's deposition:

> Q: The—have you done any testing with humans to see how they respond to being inverted inside a roll cage?
>
> A: Inside a roll cage? You mean during a rollover event?
>
> Q: Yes.
>
> A: I've analyzed and I've said in my report that I looked at 26 YouTube videos in real world accidents to evaluate even response to these types of accidents.
>
> Q: Okay.
>
> A: In the 26 that exact same protective response is observed in those— in those vehicle occupants.
>
> Q: Well, you'd agree with me that those 26 YouTube videos, there could be 26 others where people react differently, correct?
>
> A: Oh, sure.
>
> Q: I mean, there are –
>
> A: There could be.

*Id.* at 8 (quoting *Nobilini Dep. Tr.* at 32:1-17).  BRP characterizes this exchange as Dr. Nobilini's concession "that the videos he produced of other rollovers are not a representative sample of the human response to a rollover event," and asserts this admission contradicts the expert's report in which he opines that humans have a natural protective response in rollover events regardless of warnings to keep their arms and hands in the vehicle.  *Id.* at 8-9 (citing *id.*, Attach. 4, *Nobilini Rep.* at 14-15 (ECF No. 177-4)).  BRP accordingly concludes the videos of the other rollover events would mislead the jury.  *Id.* at 9.

7

Further, BRP notes that its own expert witness, Steven Hall, conducted his own research of internet rollover videos and identified twenty-seven videos of side-by-side rollover accidents in which the driver's hands remained on the wheel during the rollover event. *Id.* (citing *id.*, Attach. 5, *Hall Video Collection* (ECF No. 177-5)). In twenty-two of Mr. Hall's videos, BRP points out, the vehicle in the incident has doors, thus making them more substantially similar to the Maverick X3 than the vehicles shown in the videos proffered by the Plaintiff. *Id.* BRP avers "[t]his very clearly illustrates that the videos produced by Batzer and Nobilini are not a representative sample of the human response in rollovers," such that the Plaintiff's proffered videos "will mislead the jury into believing humans respond in the same manner during each rollover event regardless of warning—by extending their arms to brace for impact." *Id.* BRP continues that the videos would confuse the issues if presented to a jury, arguing this case "is already a highly complex product liability case" and suggesting:

> It would be very prejudicial to the jury to ask them to view videos of other rollovers for the purpose of proving a "natural protective response," when they will likely be viewing the video in broader terms—looking at the type of accident, whether the vehicle has doors, whether there is window netting, whether the driver was operating the vehicle negligently, whether the terrain was rough, and whether the vehicle was similar to the Subject Vehicle.

*Id.* at 9-10.

BRP additionally argues that admitting the video evidence in this case would create a series of mini-trials on tangential issues, which it asserts "is precisely the type of sideshow Rule 403 was designed to prevent." *Id.* at 7 (collecting cases). BRP warns the Court that it "will be forced to counter with its own videos and argue that,

8

in Plaintiff's videos, the vehicles have different restraint systems, have different warnings, were being operated negligently, and the videos lack context." *Id.* at 10. BRP indicates this will lead to "many hours—and possibly days—of cross-examination on the videos alone" and "the videos would only serve the purpose of wasting time." *Id.* BRP thus requests the Court to exclude the evidence pursuant to Federal Rule of Evidence 403. *Id.*

BRP concludes the videos of other rollover accidents are inadmissible and should be precluded from being introduced as evidence or referenced at trial. *Id.*

### B. Stephen J. Ratcliffe's Objection to BRP's Motion to Exclude Videos of Other Recreational Vehicle Rollovers

Mr. Ratcliffe objects to BRP's motion to exclude videos of other rollover accidents, characterizing the motion as "another meritless attempt to preclude plaintiff's biomechanical engineering expert, Robert Nobilini, Ph.D., from offering his 'natural response' opinion and/or disclosing the materials he reviewed and relied on in forming his opinions." *Pl.'s Mot.* at 1. The Plaintiff agrees with BRP that the videos in question show "unplanned rollovers where in many instances the occupants extending their rollover-leading arm outside of the roll cage apparently to brace their fall"; however, Mr. Ratcliffe insists that he "does not seek to admit the rollover videos into evidence . . . . Instead [his expert] will discuss the videos and the jury may see them under Rule 703." *Id.* Mr. Ratcliffe avers that the videos "are data points that Dr. Nobilini considered in forming his opinions" as "part of his review of occupants' responses to unplanned rollovers." *Id.* at 1-2. He contends that the videos may be considered under Federal Rule of Evidence 703, describing it as "black letter law that

9

an expert may base his opinion on material that would not otherwise be admissible," and claiming "[t]he unplanned UTV rollover videos are the type of material an expert would discover when researching safety concerns in the UTV industry generally, and occupant rollover responses specifically." *Id.* at 2.

Responding to BRP's arguments that the videos show vehicles different from the Maverick X3 at issue in this case, Mr. Ratcliffe insists this argument "clearly goes to weight," not admissibility. *Id.* Further, he asserts BRP's "'not substantially similar' argument is entirely inapplicable because the videos would be referenced as this expert's reliance materials, not as independent evidence of other similar incidents. None of the cases cited by BRP are Rule 703 decisions." *Id.* (emphasis in original). Instead, Mr. Ratcliffe opines, these arguments should be "fodder for cross examination." *Id.* He says the same of BRP's criticism of Dr. Nobilini for not carrying out his own unplanned rollover study, pointing out that BRP also did not carry out such a study. *Id.* at 2. He further notes the legitimate ethical and safety concerns posed by such a study, arguing that "[u]nder the circumstances it is reasonable for biomechanic experts to review material that is already published, including real life responses to UTV rollovers." *Id.* at 2-3. Mr. Ratcliffe also corrects BRP's description of Dr. Nobilini's conclusion, clarifying that "Dr. Nobilini never claims that occupants cannot hold on during a rollover, only that there is evidence of a human response to extend one's arm." *Id.* at 3.

Finally, Mr. Ratcliffe responds to Defendant's argument that its human factors expert, Mr. Hall, has identified twenty-seven videos of vehicle rollovers in which the

10

occupants do not extend their arm.  *Id.*  Plaintiff contends that "Mr. Hall may base his opinions on such materials" and "[b]oth experts may be cross-examined vigorously on their reliance materials."  *Id.*  Mr. Ratcliffe asserts the videos relied on by Dr. Nobilini are not unfairly prejudicial to BRP, pointing out that "[i]t would be vastly more prejudicial were Nobilini to have relied exclusively on videos of Maverick X3 rollovers, which would give the impression that the X3 has a greater propensity for rolling over than other UTVs."  *Id.*  Further, Mr. Ratcliffe says, the risk of prejudice is reduced where the Defendant's expert "has even more videos of UTV rollovers which comport with BRP's contention that occupants do not have a natural protective response to extend their arms."  *Id.*

Based on the foregoing, Mr. Ratcliffe asks the Court to deny BRP's motion.  *Id.*

## III. DISCUSSION[2]

The Court recognizes substantial legal similarities between the present motion and Defendant's Motion in Limine No. 8 to Exclude Evidence of a YouTube Video Featuring Matt Parks (ECF No. 175); based on its analysis under the same Federal Rules of Evidence and jurisprudence governing an expert's reliance materials, the Court reaches a similar conclusion here.  *See Order on Def. BRP's Mot. In Lim. to Exclude Evidence of a YouTube Video Featuring Matt Parks* (ECF No. 262).  Thus, the Court will allow Dr. Nobilini to refer to the videos as the basis of his opinions.

---

[2]  Plaintiff's Opposition does not mention Dr. Batzer's report at all.  *See Pl.'s Opp'n* at 1-3.  While the vast majority of the Defendant's argument relate to the use of the videos by Dr. Nobilini, BRP does include several references to Dr. Batzer's expert report and the Court notes Dr. Batzer does include "video collection of unplanned UTV overturns" in his list of "Materials Received and Reviewed." Batzer Rep. at 3-4.  Thus, for the purposes of this motion, the Court will consider the videos of other vehicle rollovers as the basis for the opinions of both Dr. Nobilini and Dr. Batzer.

11

The parties disagree on the evidentiary purpose of the videos of other vehicle rollovers, and consequentially dispute which of the Federal Rules of Evidence should apply to their introduction. BRP moves to exclude the admission of the videos as direct evidence offered for its truth, *Def.'s Mot.* at 1-2, while Mr. Ratcliffe explains that he only seeks to discuss the videos as "data points that Dr. Nobilini considered in forming his opinions." *Pl.'s Opp'n* at 1. Rule 703 of the Federal Rules of Evidence states:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

FED. R. EVID. 703. Mr. Ratcliffe posits that "[t]he unplanned UTV rollover videos are the type of material an expert would discover when researching safety concerns in the UTV industry generally, and occupant rollover responses specifically." *Pl.'s Opp'n* at 2. The Court concludes this approach is logical and accepts the point that the ethical and safety implications of conducting an unplanned rollover study justify reliance on video evidence. *See Pl.'s Opp'n* at 2-3. Thus, BRP's assertions that the video evidence should be excluded because the accidents lack "substantial similarity" fails because, under Rule 702, the "[facts or data] need not be admissible for the opinion to be admitted." FED. R. EVID. 703. The Court agrees with the Plaintiff that the arguments the Defendant marshals, and the cases it cites, in support are inapposite to the issue presently before the Court in ruling on this motion in limine.

The question, then, becomes whether the Court should allow the videos of other vehicle rollovers to be disclosed to the jury. BRP argues that the videos are inadmissible as irrelevant and unfairly prejudicial. *Def.'s Mot.* at 4-10. The Plaintiff does not engage with the question of relevance or the "substantial similarity" test; rather, Plaintiff asserts that Rule 703 permits the introduction of evidence that would otherwise be inadmissible as an expert's reliance materials. *Pl.'s Opp'n* at 2. The balancing test of Rule 703 requires the Court to consider whether "their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id.*

In this case, the Court determines the risk of prejudice to be low. BRP will be given ample opportunity to levy its criticisms of Plaintiff's experts' opinions during cross-examination, including its concerns regarding the different types of vehicles, safety features, and accident circumstances. *Def.'s Mot.* at 4-5. The Court thinks it unlikely that the videos will mislead or confuse the jury, as BRP will have the opportunity to highlight these differences and Mr. Ratcliffe only seeks to disclose them to support his expert's opinion that there exists a natural human bracing response during a rollover event. *See Pl.'s Opp'n* at 3.

Indeed, as the Court will allow Dr. Nobilini to refer to the contents of the videos, it is not clear to the Court that BRP would maintain its objection to their being shown to the jury. As the Court understands BRP's position, it firmly maintains that these videos show incidents markedly unlike the Ratcliffe accident, and the Court does not know how BRP plans to cross-examine Dr. Nobilini on his rendition of what

the videos reveal without showing the videos at least to Dr. Nobilini, If BRP cross-examines Dr. Nobilini on the content of the videos without showing the videos to the jury, the Court is confused about how BRP will be able to engage in an effective cross-examination. Thus, the Court wonders whether BRP's protests against admissibility are more cry than wool.

Furthermore, Defendant will be able to introduce its own expert witness, Mr. Hall, who may present his own findings, based on his own video evidence, that no such natural response exists. *Def.'s Mot.* at 9; *Pl.'s Opp'n* at 3. Finally, BRP warns the Court of the extreme delay that "mini-trials" on each of the video accidents may impose; the Court finds this unlikely based on the Plaintiff's narrow and straightforward purpose for introducing the videos.

Contrasting the limited risk of unfair prejudice with the potential probative value, the Court finds that real life responses to UTV rollovers hold high probative value on the question of whether there is a natural human response to extend an arm to brace oneself during a rollover event. In the absence of an academic study, magnified by safety and ethical concerns of conducting one, the Court agrees with the Plaintiff that "their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *See* FED. R. EVID. 703.

Thus, the Court concludes first that Dr. Nobilini may testify to the content of the videos and how they affected his opinions. Once Dr. Nobilini testifies as to the video content, it is a short step to admit the videos themselves, and the Court is inclined to do so. However, pursuant to the Advisory Committee's Note to Rule 703,

14

upon request from BRP, the Court will inform the jury that the videos may only be considered for the purposes of evaluating the experts' opinions, not for substantive truth. *See* FED. R. EVID. 703, notes of advisory comm. on 2000 amends. ("If the otherwise inadmissible information is admitted under this balancing test, the trial judge must give a limiting instruction upon request, informing the jury that the underlying information must not be used for substantive purposes").

In sum, the Court agrees with the Plaintiff that the videos of other rollovers are relevant to whether a "natural response" to extend an arm during a rollover exists and that Plaintiff's experts were entitled to consider the videos in generating their expert opinions in this case. Further, the Court finds the evidence highly probative on this issue and, moreover, concludes that the risk of prejudice to BRP to be low in light of BRP's own experts on the subject and the opportunity to cross-examine Plaintiff's experts; thus, the Court will allow introduction of the videos at trial, but upon request from BRP, the Court will give a limiting instruction to inform the jury that the videos must not be used for substantive purposes. *See* FED. R. EVID. 703, notes of advisory comm. on 2000 amends.

## IV.  CONCLUSION

The Court DISMISSES without prejudice Defendant BRP's Motion *In Limine* No. 10 and Supporting Brief to Exclude Videos of Other Recreational Vehicle Rollovers (ECF No. 177).

SO ORDERED.

                                                                  <u>/s/ John A. Woodcock, Jr.</u>
                                                                  JOHN A. WOODCOCK, JR.
                                                                  UNITED STATES DISTRICT JUDGE

Dated this 8th day of November, 2024