UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STEPHEN J. RATCLIFFE, | ) |
|       Plaintiff, | ) ) ) |
| v. | ) No. 1:20-cv-00234-JAW |
| BRP U.S., INC., et al., | ) ) ) |
|       Defendants. | ) |

**ORDER ON DEFENDANT BRP'S MOTION IN LIMINE TO PRECLUDE THE CAN-AM COMMANDER VIDEO**

A defendant manufacturer in a product liability case moves to preclude introduction of a video describing the safety features of another model of vehicle manufactured by the same company, arguing irrelevance and unfair prejudice. The plaintiff objects, contending the video is relevant and probative of its claim. Concluding the probative value outweighs the risk of unfair prejudice, the court dismisses the motion.

**I.   BACKGROUND**

On July 30, 2019, a utility terrain vehicle (UTV) driven by Stephen J. Ratcliffe overturned, causing significant injuries. *Compl.* ¶ 15 (ECF No. 1). On July 2, 2020, Mr. Ratcliffe brought product liability claims against both BRP U.S., Inc. (BRP), the manufacturer; and Tidd's Sport Shop, Inc. (Tidd's), the distributor; asserting negligence and strict liability claims against both, respectively. *Id.* ¶¶ 17-57.

With the date of trial approaching, BRP filed a motion in limine on October 4, 2024, requesting the Court preclude evidence of a video in which BRP representatives

explain the side protection strategy of the Can-Am Commander (the Can-Am Commander video), a different model of vehicle than the Maverick X3 the Plaintiff purchased and drove at the time of his accident. *Def. BRP's Mot. in Lim. No. 11 and Supporting Br. to Preclude the Can-Am Commander Video* (ECF No. 178) (*Def.'s Mot.*). On October 15, 2024, Mr. Ratcliffe objected to BRP's motion, asking the Court to allow the Can-Am Commander video as either a witness' prior statement, a statement of a party opponent, or as part of its expert witnesses' reliance. *Pl. Stephen J. Ratcliffe's Obj. to Def. BRP's Mot. in Lim. No. 11 and Supporting Br. to Preclude the Can-Am Commander Video* (ECF No. 205) (*Pl.'s Opp'n*).

## II. THE PARTIES' POSITIONS

### A. BRP's Motion to Preclude the Can-Am Commander Video

BRP asks the Court to preclude the Can-Am Commander Video, which it attaches to its motion, asserting that, in comparison to the Maverick X3, "these off-road vehicles have differing capabilities and features designed to maximize performance in their intended applications." *Def.'s Mot.* at 1-3; *see also id.*, Attach. 1, *Can-Am Commander Video* (ECF No. 178-1). It explains "[t]he Commander is a hybrid that is best described as a dual purpose side-by-side that can be used for both utility and recreational purposes. In contrast, the Maverick X3 is a pure sport vehicle." *Id.* at 3. Due to these different purposes, BRP says, "the Commander uses a net while the Maverick is equipped with a door." *Id.* BRP reports that "[b]oth side structures comply with the [American National Standards Institute Recreational Off-Highway Vehicle Association (ANSI-ROHVA)] requirements for leg and upper extremity protection," which "requires some barrier structure that should cover a

2

defined zone." *Id.* (citing ANSI-ROHVA § 10). BRP contends the ANSI-ROHVA standard can be satisfied "through a door; a net; or any other material or fixture, so long as the defined zone is covered." *Id.*

BRP argues that "[i]n its design of the Commander, BRP elected to use a net to meet ROHVA's zone requirement," which has led to BRP witnesses referring to the Commander net as a "safety net." *Id.* at 3-4. In the Maverick X3, however, BRP claims "it is the door that provides required coverage under ROHVA." *Id.* at 4. BRP emphasizes that Plaintiff has used the references to the Commander's safety net "to make the unwarranted leap that all nets must be safety nets," despite differences in the side structure of the Commander and the Maverick X3. *Id.* BRP requests the Court preclude evidence of the Commander netting system in the form of the Can-Am Commander video or any witness testimony referring to the same as unfairly prejudicial and irrelevant. *Id.*

The Defendant explains that, in the deposition of BRP representative Allen Bernais, the witness "was repeatedly asked about [the Can-Am Commander video]," in which he and a BRP consultant compared various models of aftermarket doors that could be used to replace the standard side structure netting that a Can-Am Commander is produced with originally. *Id.* at 5 (citing *id.*, Attach. 3, *Bernais Dep. Tr.* at 9:5-10:5 (ECF No. 178-3)). As BRP acknowledges:

> In the video, Bernais refers to the nets as "safety nets," mentioning twice the nets are there for "ROHVA compliance." ([Can-Am] Commander Video at 0'55"-1'08"; 4'45"-4'49"[])[.] Further, in the footage, he claims "you need to keep all your parts inside the vehicle . . . that's again the reason for the safety net. These safety nets are required by law . . . so

3

>you don't, uh, stick any arms out in case of . . . a rollover." ([Can-Am] Commander Video at 3'40"-3'56".)

*Id.* BRP avers that, during Mr. Bernais' deposition, "on numerous occasions, Plaintiff's counsel tried to get Bernais to admit that the Commander nets were for safety purposes, *id.* (citing *Bernais. Dep. Tr.* at 13:9-12; 14:9-13; 17:7-10), and speculates that Plaintiff's "argument that all nets—including those that were accessories for the Maverick X3—should be viewed as safety nets." *Id.* at 5-6. The Defendant notes that "Bernais refused" and instead "testified that the accessory netting offered on the X3 were 'an enhancing feature to prevent debris, wind and offer protection from the elements,' marketed as a styling feature for the 'racing enthusiast.'" *Id.* at 6 (citing *Bernais Dep. Tr.* at 35:6-16; 22:19-20).

BRP submits that Plaintiff's experts have nonetheless "used the Commander video as a basis to claim that the addition of a window net[] was a feasible alternative design for the Subject Vehicle and would have prevented Plaintiff's injury," *id.* (citing *id.*, Attach. 2, *Stephen Batzer Rep.* at 2, 8, 21 (ECF No. 178-2)), and have cited Mr. Bernais' statements in the Can-Am Commander video to dispute that BRP did not develop side nets to keep an occupant's arms in the vehicle. *Id.* (citing *id.*, Attach. 4, *Nobilini Dep. Tr.* at 21:4-14 (ECF No. 178-4)). In fact, BRP asserts, when confronted with the fact that Mr. Bernais was speaking about the nets for the Commander, rather than the Maverick X3, Dr. Nobilini responded "[it is] the same principle. It's the same—the same mechanism of injury." *Id.* (citing *Nobilini Dep. Tr.* at 22:4-11).

The Defendant then recites that evidence must be relevant to be admissible, and that evidence is relevant when "it has any tendency to make a fact more or less

4

probable than it would be without the evidence" and the "fact is one of consequence in determining the action." *Id.* at 7 (quoting FED. R. EVID. 401, 402). However, BRP notes that a court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* (quoting FED. R. EVID. 403). BRP contends Mr. Ratcliffe, as the party who seeks to admit the video, bears the burden of proving their admissibility. *Id.* (citing *United States v. Bartelho*, 129 F.3d 663, 670 (1st Cir. 1997)).

Returning to the case at bar, BRP first asserts that the Can-Am Commander video is irrelevant because the "Plaintiff's experts would find the Commander's nets to be an unacceptable alternative design." *Id.* at 8 (capitalization altered). The Defendant insists that "the limited-coverage triangular window netting on the Commander is not an alternative design that Plaintiff claims would have prevented his injury" and thus the video must be precluded pursuant to Federal Rules of Evidence 401 and 402. *Id.*

BRP avers that, "[t]o prevail on a design defect action in Maine, a plaintiff must show that a 'product was defectively designed thereby exposing the user to an unreasonable risk of harm.'" *Id.* (quoting *Canning v. Broan-Nutone, LLC*, 480 F. Supp. 2d 392, 410 (D. Me. 2007) (in turn quoting *Stanley v. Schiavi Mobile Homes, Inc.*, 462 A.2d 1144, 1148 (Me. 1983)); *accord Guiggey v. Bombardier*, 615 A.2d 1169, 1171 (Me. 1992)). Establishing a design defect involves "an examination of the utility of [the product's] design, the risk of the design[,] and the feasibility of safer

alternatives." *Id.* (quoting *Stanley*, 462 A.2d at 1148) (alterations made by Defendant).

Applying these standards to the present case, BRP postulates that Mr. Ratcliffe will use Mr. Bernais' references to "safety nets" in the Can-Am Commander video to argue that "all nets—including the accessory nets for the Maverick X3—are safety nets and should be labeled as such," and as "evidence of a feasible, safer alternative design." *Id.* However, BRP opines that Plaintiff will not be able to do so because his own experts "opine[] that the [Maverick X3] was defective partly because it lacked 'full portal covering window netting'" while the Commander's limited-coverage nets only reach "roughly shoulder height." *Id.* (citing *Batzer Rep.* at 20; *Nobilini Rep.* at 17; *Bernais Dep. Tr.* at 11:22-25).

BRP further points out that Dr. Batzer and Dr. Nobilini have previously testified in other cases that "vehicles with partial side netting—similar to the Commander's netting—are defective." *Id.* (citing *id.*, Attach. 6, *Batzer Dep. Tr.* at 6:20-7:8 (ECF No. 178-6); *id.*, *Nobilini Dep. Tr.* at 28:6-19). BRP asserts that because Plaintiff's experts "would find the limited-coverage triangular netting on the Commander insufficient to meet their 'full portal' coverage standard," the Commander video "cannot be used to demonstrate a feasible alternative." *Id.* at 9. Thus, BRP claims the Can-Am Commander video has no relevance to the present case and should be precluded. *Id.*

BRP continues to argue that, should the Court find the Can-Am Commander video relevant, the Court should nonetheless preclude the video because, despite the

6

different purposes of the nets designed for the Commander and the Maverick X3, respectively, "Plaintiff will use Bernais'[] 'safety nets' comments in the video to mislead the jury into believing all Can-Am nets are 'safety nets.'" *Id.* The Defendant reminds the Court that relevant evidence may be excluded pursuant to Federal Rule of Evidence 403 and directs the Court to First Circuit caselaw interpreting that rule to permit a district court to "find its 'untoward effects'. . . to be so weighty that the evidence should be excluded." *Id.* (citing *Galarneau v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 504 F.3d 189, 205 (1st Cir. 2007) (quoting *Faigin v. Kelly*, 184 F.3d 67, 80 (1st Cir. 1999))).

In the present case, BRP calls it "obvious" that the Can-Am Commander video shows a different model of vehicle than the Maverick X3. *Id.* at 9-10 (citing *Nobilini Dep. Tr.* at 22:4-6; *Bernais. Dep. Tr.* at 64:7-9; *Batzer Rep.* at 11; *Batzer Dep. Tr.* at 19:1-2). BRP insists that different models alone would confuse the jury and thus warrants preclusion of the Can-Am Commander video under Rule 403. *Id.* at 10 (citing *Jordan v. Gen. Motors Corp.*, 624 F. Supp. 72, 77 (E.D. La. 1985); *Redman v. John D. Brush & Co.*, 111 F.3d 1174, 1178 (4th Cir. 1997)).

Further, BRP reiterates that "the Commander's nets were designed to serve a different purpose (ROHVA compliance) than the Maverick X3's nets (protect occupants from wind/debris)." *Id.* (citing *Bernais Dep. Tr.* at 13:15-19; 35:6-16). The Defendant posits that, by introducing the Can-Am Commander video, "Plaintiff wants to confuse the jury, leading them to wonder why Bernais comments in the video that the Commander's nets are for safety while BRP claims the Maverick X3's nets

7

are not." *Id.* BRP alleges this will lead the jury to mistakenly believe all Can-Am nets are safety nets, causing unfair prejudice to BRP and extensive, dilatory cross-examination on a collateral issue. *Id.* Based on its "untoward effects" of confusing the jury and wasting time, BRP urges the Court to preclude the Can-Am Commander video. *Id.* (citing *Galarneau*, 504 F.3d 189, 205).

### B.   Stephen J. Ratcliffe's Objection to BRP's Motion to Preclude the Can-Am Commander Video

Mr. Ratcliffe objects to BRP's motion. He explains that, in the Can-Am Commander video, Mr. Bernais "describes a BRP side door net for a different BRP UTV vehicle as having a safety purpose, 'so you don't, uh, stick any arms out in case of . . . a rollover.'" *Pl.'s Opp'n* at 1 (citing *Def.'s Mot.* at 5). Mr Ratcliffe offers three independent grounds for admitting the Can-Am Commander video: "as a witness' prior statement ([Federal Rules of Evidence] 613 and 801(d)(1)); a statement of party opponent (Rule 801(d)(2)); and [as] part of plaintiff's liability experts' reliance materials (Rule 703)." *Id.* He rejects BRP's argument that a different vehicle model makes the video irrelevant, asserting this argument "goes to weight of the prior statement not its admissibility." *Id.*

First addressing relevance under Federal Rule of Evidence 401, Mr. Ratcliffe argues "the video is relevant to plaintiff's claim that a window net would have prevented plaintiff from extending his arm outside the vehicle, and relevant to BRP's defense that the Maverick X3 accessory window nets have no safety purpose." *Id.* at 1-2. He continues to assert that "Rule 403 dangers are not raised by admission of the video," as "[t]here is no danger of confusion because the video makes plain that the

8

UTV under discussion, which is right next to Mr. Bernais in the video and visible in full to everyone, is the Can-Am Commander, not the Maverick X3." *Id.* at 2. Because "the two vehicles look significantly dissimilar to each other," Mr. Ratcliffe insists "no jury is going to mistake the Maverick X3 for the Commander," such that there is no danger of unfair prejudice to BRP. *Id.* Rather, the Plaintiff submits, "[a] jury will easily be able to take the Bernais video in context and weigh its probative value regarding the safety purpose, if any, of the Maverick X3 window nets" and urges the Court to let the jury contrast Mr. Bernais' statements in the Can-Am Commander video regarding the Commander side door nets with his statements regarding the Maverick X3 side window nets. *Id.*

Alternatively, Mr. Ratcliffe contends the Can-Am Commander video should be allowed to be referenced as reliance material of his experts, Dr. Batzer and Dr. Nobilini. *Id.* Pursuant to Rule 703, Plaintiff says, "the video may be referred to and disclosed to the jury – without the video coming in as evidence." *Id.* He insists the video would aid the jury's understanding of his experts' opinions "because Mr. Bernais demonstrates the safety purpose in person of door nets on a BRP UTV." *Id.* Mr. Ratcliffe emphasizes that "Rule 703 does not limit plaintiff to the <u>most</u> helpful reliance materials, it only requires that the materials be helpful to understanding an expert's opinions. *Id.* at 2-3 (citing FED. R. EVID. 703) (emphasis added by Plaintiff).

Mr. Ratcliffe also disputes BRP's contention that "[he] may try to use the Commander side door nets as evidence of a feasible alternative design," asserting that

9

"[he] has never suggested this and his experts have neither disclosed nor testified to such a[n] . . . idea." *Id.* at 3.

In sum, Mr. Ratcliffe urges the Court to deny BRP's motion to preclude the Can-Am Commander video as evidence. *Id.*

## III.   DISCUSSION

After review, the Court concludes the Can-Am Commander video is relevant, probative, and not unfairly prejudicial to BRP, and also does not constitute hearsay under the party-opponent rule, Federal Rule of Evidence 801(d)(2). Thus, the Court dismisses without prejudice the Defendant's motion to preclude the Can-Am Commander video as evidence at trial.

BRP argues the Can-Am Commander video is irrelevant to the case because it involves a different model of vehicle and contradicts the theory of safe design put forth by Plaintiff's experts in this and previous trials. *Def.'s Mot.* at 6-7. The Plaintiff responds that these arguments merely go to weight, not admissibility, and that Mr. Bernais' statements in the Can-Am Commander video are relevant to his claim that a window net would have prevented the Plaintiff from extending his arm outside the vehicle and to BRP's defense that the Maverick X3 accessory window nets have no safety purpose. *Pl.'s Opp'n* at 1-2. Mr. Ratcliffe has the better side of these arguments.

"[E]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Here, the product liability claim brought

10

by Mr. Ratcliffe turns on the question of whether the condition of the Maverick X3 vehicle was "unreasonably dangerous" as sold. *See* 14 M.R.S. § 221. As cited by BRP, this inquiry involves "an examination of the utility of [the product's] design, the risk of the design[,] and the feasibility of safer alternatives." *Stanley*, 462 A.2d at 1148.

Plaintiff concedes that it does not purport to use the Can-Am Commander video as evidence of a feasible alternative design. *Pl.'s Opp'n* at 3. However, it insists the video remains relevant to the other questions posed, including utility and risk of the product's design. *Pl.'s Opp'n* at 1-2. As a preliminary ruling, the Court agrees with Mr. Ratcliffe that, despite being a different model of vehicle, the Can-Am Commander's use of window netting as a safety feature "so you don't stick any arms out in case of . . . a rollover," *Def.'s Mot.* at 5 (quoting *Can-Am Commander Video* at 3'40"-3'56"), is relevant to the questions of the product's utility and risk. Namely, it is relevant insofar as it indicates the types of risks that BRP contemplated in its UTVs and its means of mitigating that risk. The fact that BRP used safety netting in another vehicle to comply with ANSI-ROHVA requirements makes it more probable that the nets manufactured for the Maverick X3 had a safety purpose.

In addition, the Court concludes that the probative value of this evidence is not substantially outweighed by any risk of prejudice to the Defendant. Defendant itself notes that "obviously the vehicle shown in the marketing video was a different model than the Maverick X3." *Def.'s Mot.* at 9. Defendant claims that Mr. Ratcliffe will use the Can-Am Commander video at trial to confuse the jury, cautioning that the video "will lead the jury to mistakenly believe all Can-Am nets are safety nets or should be

11

labeled as such." *Id.* at 10.  The Court thinks this underestimates the jury and the capacity of defense counsel to dispute the video at trial by explaining the different purposes of the vehicle models and nets, respectively.  Moreover, as Plaintiff correctly points out, BRP may raise its criticisms at trial to undermine the Can-Am Commander video's evidentiary weight, including its observations that the video shows a different vehicle, that the Maverick X3 uses doors to comply with the ANSI-ROHVA standard, and that the Plaintiff's position is inconsistent with the prior testimony of its expert witnesses.  *Pl.'s Opp'n* at 1.  Any prejudicial effect of the video is further mitigated by the deposition transcript of Mr. Bernais explaining the distinctions between the vehicles' and their respective nets' purposes at greater length, which the Defendant has designated for presentation at trial.  *Def.'s Mot.* at 10 (citing *Bernais Dep. Tr.* at 13:15-19; 35:6-16).

BRP further argues that allowing the Can-Am Commander video into evidence will result in "extensive cross-examination on a matter that is completely collateral to the actual issues in the litigation."  *Def.'s Mot.* at 10.  As discussed above, the Court disagrees that a BRP representative's discussion of the safety purpose of netting is entirely collateral to this case, and further does not see why an undue amount of time will be expended on this issue at trial when Defendant has already articulated its clear and concise bases for distinguishing the purpose of the Can-Am Commander side netting from the accessory nets of the Maverick X3.  *Id.* at 3-7.

At bottom, BRP's arguments have not convinced the Court that the Can-Am Commander video is irrelevant to the present case, nor that its introduction would unfairly prejudice the Defendant.

## IV.  SUMMARY

The Court declines at this time to preclude the introduction of the Can-Am Commander video as evidence at trial.  However, the Court notes that, under the law of the First Circuit, it is the obligation of counsel to clarify at trial whether a ruling on a motion in limine or other evidentiary ruling is definitive.  *Dimanche v. Mass. Bay Transp. Auth.*, 893 F.3d 1, 6 n.6 (1st Cir. 2018).  In general, "[p]retrial motions in limine in situations like this need to be renewed and pressed at trial in order to be preserved."  *Id.* (citing FED. R. EVID. 103 advisory committee's note to 2000 amendment); *see also Crowe v. Bolduc*, 334 F.3d 124, 133 (1st Cir. 2003) ("Our rule as to motions in limine is that a party must renew at trial its motion to . . . exclude evidence if there has been an earlier provisional ruling by motion in limine and a clear invitation to offer evidence at trial").

## V.  CONCLUSION

The Court DISMISSES without prejudice Defendant BRP's Motion *In Limine* No. 11 and Supporting Brief to Preclude The Can-Am Commander Video (ECF No. 178).

SO ORDERED.

          /s/ John A. Woodcock, Jr.
          JOHN A. WOODCOCK, JR.
          UNITED STATES DISTRICT JUDGE

Dated this 8th day of November, 2024