UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STEPHEN J. RATCLIFFE, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )   No. 1:20-cv-00234-JAW |
| | ) |
| BRP U.S., INC., et al., | ) |
| | ) |
|       Defendants. | ) |

**ORDER ON DEFENDANT BRP'S MOTION IN LIMINE TO EXCLUDE CERTAIN LITERATURE CITED BY ROBERT J. NOBILINI**

A defendant in a product liability lawsuit involving a vehicle rollover moves to preclude certain literature relied upon by the plaintiff's expert, arguing that the cited studies are dissimilar to the circumstances of the plaintiff's accident and thus irrelevant and unfairly prejudicial. The plaintiff objects, asserting the studies are relevant to establishing its expert's opinion that there exists a natural human response to extend an arm to brace oneself in the event of a fall. The court agrees with the plaintiff and declines to exclude the evidence.

**I.    BACKGROUND**

On July 30, 2019, a utility terrain vehicle (UTV) driven by Stephen J. Ratcliffe overturned, causing significant injuries. *Compl.* ¶ 15 (ECF No. 1). On July 2, 2020, Mr. Ratcliffe brought product liability claims against both BRP U.S., Inc. (BRP), the manufacturer; and Tidd's Sport Shop, Inc. (Tidd's), the distributor; asserting negligence and strict liability claims against both, respectively. *Id.* ¶¶ 17-57.

On October 4, 2024, BRP moved in limine for the Court to exclude certain literature cited in the report of Plaintiff's expert, Robert J. Nobilini, Ph.D. *Def. BRP's Mot.* in Lim. *No. 12 To Exclude Certain Literature Cited By Robert J. Nobilini* (ECF No. 179) (*Def.'s Mot.*). On October 15, 2024, Mr. Ratcliffe objected to BRP's motion, asking the Court to allow the disputed literature as evidence relied upon by Dr. Nobilini in forming his expert opinions. *Pl. Stephen J. Ratcliffe's Obj. to Def. BRP's Mot.* in Lim. *No. 12 and Supporting Br. to Exclude Certain Literature Cited By Robert J. Nobilini.* (ECF No. 206) (*Pl.'s Opp'n*).

## II. THE PARTIES' POSITIONS

### A. BRP's Motion to Exclude Certain Literature Cited by Dr. Nobilini

BRP requests the Court exclude any evidence of or reference to certain literature cited in Dr. Nobilini's expert report, arguing that these articles and studies are irrelevant and prejudicial because they do not analyze the kinematics of a belted occupant in a UTV rollover. *Def.'s Mot.* at 1. As pertinent to this motion, Defendant describes Dr. Nobilini's opinions as twofold:

> (i) the warnings on the Subject Vehicle were not an effective measure to prevent the natural instinctive response to extend one's arm as an occupant falls towards the ground during a lateral rollover; and (ii) the lack of an adequate restraint system to prevent an occupant's arm from moving outside the roll cage during a lateral rollover made the Subject Vehicle unreasonably dangerous for its intended use.

*Id.* at 2 (citing *Add'l Attachs.* (ECF 115), Attach. 2, *Nobilini Rep.* at 19 (ECF No. 115-2). Both of these opinions, BRP says, "are based on the underlying assumption of the 'natural protective response,' which is Nobilini's theory that there is an instinctive response for a person, like Plaintiff, to extend their hand or arm to brace for impact

2

when they are falling, including in vehicle rollovers." *Id.* (quoting *Add'l Attachs.*, Attach. 3, *Nobilini Dep. Tr.* at 29:15-30:23 (ECF 115-3)).  BRP points out that Dr. Nobilini cites "(i) studies that test falls from standing positions; (ii) a medical guide for wrist injuries; (iii) an analysis of ATV dismounts; and (iv) an article on recommended safety changes for a completely different vehicle," but his cited literature does not contain "any scientific analysis or testing of the kinematics of a belted occupant in a UTV rollover."  *Id.*  BRP thus argues that Dr. Nobilini's cited literature fails to meet the relevance requirement pursuant to Federal Rules of Evidence 401 and 402, or alternatively that its introduction would cause unfair prejudice in violation of Rule 403.  *Id.* at 2-3.

The Defendant recites that evidence must be relevant to be admissible, and that evidence is relevant when "it has any tendency to make a fact more or less probable than it would be without the evidence" and the "fact is one of consequence in determining the action."  *Id.* at 3 (quoting FED. R. EVID. 401, 402).  However, BRP notes that a court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  *Id.* (quoting FED. R. EVID. 403).  BRP contends that Mr. Ratcliffe, as the party who seeks to admit the evidence, bears the burden of proving its admissibility.  *Id.* (citing *United States v. Bartelho*, 129 F.3d 663, 670 (1st Cir. 1997)).

BRP directs the Court to *General Electric Company v. Joiner*, 522 U.S. 136 (1997), in which the Supreme Court held a trial judge may reject an expert's reliance on studies that are "dissimilar to the facts presented in this litigation." *Id.* at 3 (citing *Joiner*, 522 U.S. at 144). Citing caselaw from courts outside the First Circuit, BRP insists the relevance requirement of Rule 401 applies to the studies relied upon by an expert and that the Court has broad discretion to evaluate whether an expert's opinion aligns with the scientific literature on which he or she relied pursuant to Rule 702. *Id.* at 3-4 (citing *United States v. Khan*, 787 F.2d 28, 34 (2d Cir. 1986); *In re Accutane Products Liab.*, No. 8:04-md-2523-T-30TBN; MDL: 1626, 2009 U.S. Dist. LEXIS 77662, at *20 (M.D. Fla. Aug. 11, 2009), *aff'd*, 378 F. App'x 929 (11th Cir. 2010); *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 269 (2d Cir. 2002)). BRP also tells the Court it is required to "independently evaluate whether, under Rule 703, an expert's reliance on the materials cited in his or her report is, in and of itself, reasonable." *Id.* at 4 (citing *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 748 (3d Cir. 1994)). BRP avers that "otherwise inadmissible materials relied upon by an expert may be disclosed to the jury 'only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.'" *Id.* (quoting FED. R. EVID. 703).

Based on the foregoing, BRP argues that the literature cited by Dr. Nobilini lacks relevance because it fails to make "a fact of consequence in the litigation more or less probable than it would be without the literature." *Id.* The Defendant addresses the two opinions of Dr. Nobilini in turn. First, BRP turns to Dr. Nobilini's

4

theory that Plaintiff "exhibited a 'natural protective response' by extending his arm to brace for impact during the rollover accident." *Id.*  In his report, Dr. Nobilini writes "[r]esearch has shown that during a fall, people initially attempt to recover and prevent the fall, but after these attempts have failed, the natural reaction was to extend the arms towards the ground to arrest the fall in order to protect the body from injury." *Id.* at 4-5 (quoting *Nobilini Rep.* at 15).  BRP notes that Dr. Nobilini cites four research studies in support of his proposition but argues that none of them is relevant to the present case.  *Id.* at 5.

The first and second studies, which BRP claims should be viewed "in conjunction" based on shared experimental data and the same authorship, do not "reference[] or analyze[] the kinematics of a belted occupant in a UTV rollover, nor do they even contain the words 'rollover' or 'UTV.'" *Id.* (citing *id.*, Attach. 1, Kim, K. and J.A. Aston-Miller, *Segmental Dynamics of Forward Fall Arrests: System Identification Approach*, CLINICAL BIOMECHANICS 24(4):348-354 (2009) (ECF No. 179-1) (Kim 2009 Study); *id.*, Attach. 2, Kim, K. and J.A. Ashton-Miller, *Biomechanics of Fall Arrest Using the Upper Extremity Age Differences*, CLINICAL BIOMECHANICS 18:311-318 (2003) (ECF No. 179-2) (Kim 2003 Study)).  BRP points out that the first study involved "'self-initiated and cable-released' bimanual forward falls from a standing position 'on an elevated narrow platform,' where the subjects were to arrest their falls 'on a set of force plates.'" *Id.* (citing Kim 2003 Study at 311, 312).  BRP insists this testing fails to resemble the accident underlying the present case, which involved "the forces acting on a vehicle occupant who is belted and grasping a steering

5

wheel when it rolls laterally 90 degrees," and thus cannot be used to support Dr. Nobilini's natural protective response theory. *Id.* The Defendant extends this argument to the Kim 2009 Study, arguing that, because it relies on data from the Kim 2003 Study, it also lacks relevance to the facts of the case at bar. *Id.*

Continuing to the third and fourth studies cited by Dr. Nobilini, BRP claims these studies "also do not reference or even attempt to address the kinematics of a restrained occupant in a dynamic rollover," making them irrelevant and inadmissible. *Id.* (citing *id.*, Attach. 3, Hsiao, E.T. and S.N. Robinovitch, *Common Protective Movements Govern Unexpected Falls from Standing Height*. J. BIOMECHANICS 31:1-9 (1998) (ECF No. 179-3) (Hsiao 1998 Study); *id.*, Attach. 4, Borrelli, J., R. Creath, and M.W. Rogers, *Protective Arm Movements are Modulated With Fall Height,* J. BIOMECHANICS 99(109569) (2020) (ECF No. 179-4) (Borrelli 2020 Study)). Further, BRP criticizes the methodology and circumstances of the testing in these studies. The Hsiao 1998 study, BRP says, assessed "whether in the event of an unexpected slip, young individuals utilize common movement strategies to both prevent falls and achieve safe landings during a fall" by having subjects stand on a gymnasium mattress, which then "translate[d] abruptly by means of a spring actuated platform." *Id.* at 5-6 (citing Hsiao 1998 Study at 1-2). Because subjects were instructed to "try to prevent themselves from falling," *id.* at 6 (citing Hsiao 1998 Study at 2), BRP asserts the slips "were not truly 'unexpected'" and thus "cannot logically stand as support for how vehicle occupants respond to lateral tip-overs." *Id.*

Similarly, BRP says, the methodology of the Borrelli 2020 Study "cannot support Nobilini's theory of the natural response in a UTV rollover."  *Id.*  In that study, subjects "'lean[ed] against an inverted pendulum system,' falling forward after the pendulum was released."  *Id.* (quoting Borrelli 2020 Study at 12).  As the purpose of the study was to "determine the effect of fall height on protective arm reaction biomechanics," "fall arresting contributions of the ankle, knee, and/or hip were removed" and subjects were told to "land on their hands as softly as possible."  *Id.* (quoting Borrelli 2020 Study at 1, 3).  BRP claims this testing does not mirror the events of a UTV rollover, and thus cannot support Dr. Nobilini's natural response theory such that these studies should also be precluded as irrelevant.  *Id.*

Turning to Dr. Nobilini's second expert opinion, BRP notes Dr. Nobilini's claim that "[f]alls commonly result in wrist injuries due to the natural response to extend one's arm during a fall, which results in them landing on an outstretched hand."  *Id.* at 7 (quoting *Nobilini Rep.* at 15).  In support, Dr. Nobilini cites a study reviewing "athletic injuries to the wrist with particular focus on physical evaluation and management of the most common and challenging fractures and soft tissue injuries."  *Id.* (citing *id.*, Attach. 5, Duretti, T.F. and C.A. Goldfarb, *Sports Injuries of the Wrist*, CURR. REV. MUSCULOSKELET. MED. 6:35-40 (2013) (ECF No. 179-5) (Duretti 2013 Study)).  BRP characterizes this study instead as "a handbook for wrist injuries," and argues it "does not reference or analyze the kinematics of a belted occupant in a UTV rollover, nor does it mention any 'natural protective response.'"  *Id.*  Thus, BRP says,

7

all four of Dr. Nobilini's relied-upon studies should be precluded as irrelevant pursuant to Federal Rules of Evidence 401 and 402. *Id.*

Should the Court determine the academic literature cited by Dr. Nobilini to be relevant, BRP argues in the alternative that the Court should nonetheless exclude this literature as evidence pursuant to Federal Rule of Evidence 403 because "it would confuse the issues, mislead the jury, and result in a series of mini-trials." *Id.* First, BRP cites First Circuit caselaw granting district courts the discretion to exclude relevant evidence if it finds "its 'untoward effects' . . . to be so weighty that the evidence should be excluded." *Id.* (citing *Galarneau v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 504 F.3d 189, 205 (1st Cir. 2007) (quoting *Faigin v. Kelly*, 184 F.3d 67, 80 (1st Cir. 1999))). District courts hold "considerable latitude in determining whether to admit or exclude evidence," *id.* (citing *Velazquez v. Abbott Lab'ys*, 901 F. Supp. 2d 279, 292) (D.P.R. 2012) (in turn quoting *Santos v. Sunrise Med.*, 351 F.3d 587, 592 (1st Cir. 2003)), and BRP cites caselaw from beyond the First Circuit to insist that "Rule 403 gives a judge more power over experts than over lay witnesses," because "expert evidence is often more misleading than other evidence." *Id.* at 7-8 (citing *In re Paoli*, 35 F.3d at 747).

BRP argues that admitting into evidence Dr. Nobilini's literature in support of his opinion that a natural protective response exists would mislead the jury "into believing that falls from a standing position elicit the same human reaction as the reaction from a seated, belted-occupant in a UTV rollover." *Id.* at 8. It would further result in "mini-trials" on each study "to determine the applicability of the non-UTV

8

studies to a UTV rollover case," which BRP claims would confuse the issues and waste time. *Id.* Similarly, BRP asks the Court to preclude the study Dr. Nobilini relies on in support of his opinion that the natural protective reaction to extend an arm causes wrist injuries because "Nobilini is not a medical expert and Plaintiff's wrist injury is not at issue," thus further risking jury confusion. *Id.*

In sum, BRP asks the Court to issue an order precluding the Plaintiff from introducing the academic literature cited by Dr. Nobilini at trial. *Id.* at 8-9.

### B. Stephen J. Ratcliffe's Objection to BRP's Motion to Exclude Certain Literature Cited by Dr. Nobilini

Mr. Ratcliffe objects to BRP's motion to preclude as evidence the literature cited by Dr. Nobilini, arguing that the studies relied upon as the basis for Dr. Nobilini's expert opinions may properly be referenced and disclosed pursuant to Federal Rule of Evidence 703. *Pl.'s Opp'n* at 1.

Mr. Ratcliffe points out that BRP's deposition of Dr. Nobilini "lasted less than one (1) hour" and that "<u>BRP did not ask a single question about the literature referenced in Nobilini's report</u>." *Id.* at 2 (citing *id.*, Attach. 1, *Dep. Tr. of Robert J. Nobilini, PhD* (ECF No. 206-1)) (emphasis added by Plaintiff). The Plaintiff "submits that a comparatively long *Daubert* hearing must be held" to "properly flesh out the bases of Dr. Nobilini's opinions . . . including the literature referenced in his report," but that to date BRP "has not developed any testimonial basis for its attack on Nobilini's referenced literature." *Id.* Instead, Mr. Ratcliffe insists the arguments BRP raises in its motion "are classic fodder for BRP's cross examination of Nobilini as to the bases of his opinions." *Id.*

9

Mr. Ratcliffe also rebuts BRP's assertion that "the only literature Nobilini may rely on are narrowly tailored studies which 'address the kinematics of a restrained occupant in a dynamic rollover,'" contending that this type of research does not exist. *Id*. He explains the "Newberry study," referenced by BRP elsewhere on the record, "does not involve a dynamic rollover"; instead, the study "involved a planned 90-degree rollover on a spit." *Id*. The Newberry study, which Plaintiff points out was authored by "defense experts for the UTV industry," "'rolled' the test vehicle over so slowly that it took 17 seconds for the vehicle to roll 90 degrees." *Id*. (citing *Mot.* in *Lim. No. 2 to Exclude the Ops. of Robert Nobilini*, Attach. 1, Newberry, W., Carhart, M., Larson, R., Bridges, A. et al., *Biomechanics of Occupant Responses during Recreational Off-Highway Vehicle (ROV) Riding and 90-degree Tip-overs*, SAE INT. J. PASSENG. CARS - MECH. SYST. 5(1):89-109 (2012) (ECF 169-5) (Newberry Study) (emphasis added by Plaintiff). Mr. Ratcliffe, however, reasserts these details should properly be raised on cross-examination, not through a preclusion motion. *Id*.

Mr. Ratcliffe further contrasts BRP's criticisms of Dr. Nobilini for referencing fall studies, despite statements by its own expert, Steven Hall, to the following:

> Q. Are there any studies that talk about or try to evaluate what percentage of the population if it's rolling over will stick their hand out as a reaction versus which have the capability to hold onto the steering wheel?
>
> A. I'm not aware of a study that gets to that.
>
> Q. Okay. What's the closest study regarding that issue that you're relying upon in support of your contention that if a side-by-side rolls over, an instruction to hold the steering wheel is followable?
>
> A. Well, I'd say, you know, it's a combination of the **research that has to do with falls**, with the ability to use verbal cues to modulate

10

how people use their muscles in different sort of athletic endeavors. You know, that combination of research would suggest that it's possible to modulate what you're doing in the event of a tip over. Similarly the research about giving simple verbal advice about emergency braking, which is another thing that would be – could happen somewhat quickly in a driving situation, you know, we've seen that simple verbal instructions can actually change how people use antilock braking systems and they can use them more effectively.

[. . . .]

Q.   So let's talk first about the research regarding falls. Is there a particular peer-reviewed article that sticks out most in your mind where this research leads you to conclude that one can be told or trained to react in a certain way as far as a fall?

A.   I guess the – I don't know how to pronounce it exactly, but the H-S-I-E-H and Sosnoff article. That sort of goes directly to the notion of **the analogous behavior of moving your arms out when you're falling from a standing position**.

*Id.* at 2-3 (quoting *id.*, Attach. 2, *Dep Tr. of Steven Hall, MSE CPSM*, at 37:10-38:10; 39:15-25 (ECF No. 206-2)) (emphasis added by Plaintiff)).  Mr. Ratcliffe emphasizes that BRP's expert has not limited himself to studies "address[ing] the kinematics of a restrained occupant in a dynamic rollover," but instead, like Plaintiff's expert, has "also relie[d] on fall studies in forming his opinions." *Id.* at 3.  Claiming the narrowly-tailored literature that BRP seeks to hold his experts to does not exist, Mr. Ratcliffe insists that "both sides' experts must analogize to fall-related literature, for which any shortcomings may be explored during cross examination." *Id.*

At bottom, the Plaintiff requests the Court deny BRP's motion to exclude the academic literature cited by Dr. Nobilini. *Id.* at 4.

11

## III.   DISCUSSION

Concluding that the studies cited by Dr. Nobilini in his report are relevant to his expert opinions and not unfairly prejudicial, the Court thus will not preclude their reference to explain the bases for his expert opinions.  If the Plaintiff seeks to disclose the disputed literature to the jury, upon request by BRP, the Court will consider issuing a limiting instruction telling the jury to confine its consideration of the studies to this non-substantive purpose.

As an initial matter, the Court notes that the parties disagree on the mechanism through which Mr. Ratcliffe seeks to introduce the academic literature evidence.  This appears to be a recurring pattern in the Defendants' motions in limine and the Plaintiff's responses.  In the present motion sequence, BRP appears to contemplate the evidence's introduction as direct evidence offered for its truth and contests its admissibility pursuant to Federal Rules of Evidence 401, 402, and 403. *Def.'s Mot.* at 3, Mr. Ratcliffe, however, protests that he only seeks to introduce the literature "during [his] examination of this expert" pursuant to Rule 703.  *Pl.'s Opp'n* at 1.

Despite largely arguing against direct admission under Rules 401 and 403, BRP does assert that the Federal Rules governing relevance apply to materials relied upon by expert witnesses.  *Def.'s Mot.* at 4.  "[E]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401.  Here, Dr. Nobilini relies on the disputed academic literature to support his opinions that a

natural human response exists to extend an arm to brace oneself in the event of a fall.[1] Plaintiff's product liability claims implicate whether this natural response exists, and academic evidence indicating the existence of such a reaction, albeit under non-identical circumstances, makes this fact more probable than without the evidence. Thus, the Court finds the academic articles relevant to the inquiry and proceeds to consideration of whether they may be disclosed to the jury pursuant to Federal Rule of Evidence 703.

> Rule 703 of the Federal Rules of Evidence states:
>
> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

BRP argues against the relevance and probative value of the literature relied on by Dr. Nobilini by pointing to methodological differences with the accident underlying this case. *Def.'s Mot.* at 4-7. The Defendant further recites caselaw from other federal courts which excluded expert witness reliance materials based on factual distinctions. *Id.*

---

[1] BRP separates the literature at issue into two categories: (i) "literature cited to prove the existence of a natural protective response," and (ii) "literature cited to prove that a natural protective reaction to extend a hand or arm causes wrist injuries." *Def.'s Mot.* at 4-7 (capitalization altered). The Court finds this distinction inapposite. Dr. Nobilini makes no such distinction in his report; rather, he cites evidence of falls causing wrist injuries as additional evidence of one's "natural response to extend one's arm during a fall, which results in them landing on an outstretched hand." *Nobilini Rep.* at 15.

The First Circuit, whose decisions bind this Court, has stated that "deciding whether the data were of a type that [an expert witness] could reasonably rely upon under Federal Rule of Evidence 703 was well within the trial court's discretion." *United States v. Tavares*, 843 F.3d 1 (1st Cir. 2016) (citing *United States v. Corey*, 207 F.3d 84, 92 (1st Cir. 2000)). The Court of Appeals has also specifically affirmed decisions by district courts to admit academic studies relied upon by witnesses when "[the expert's] reference to the studies of [author] was not a summary thereof, but rather a description, based on [the expert's] own expertise" because "scholarly literature is information reasonably relied upon by [] experts." *Ramirez v. Debs-Elias*, 407 F.3d 444, 449 (1st Cir. 2005).

Here, Dr. Nobilini does not merely restate the conclusion of the academic literature he cites; he references the articles within a larger discussion, including other types of sources, of his opinion that there exists in humans a natural bracing response in the event of a fall. *Nobilini Rep.* at 14-17. Further, the Court finds it reasonable for an expert in biomechanics to consult academic literature in researching the human responses to a fall. BRP notes that the circumstances of the studies do not allow a one-to-one comparison with Mr. Ratcliffe's accident, and while Plaintiff does not dispute the differences, he claims Dr. Nobilini's cited literature constitutes the closest analog. In fact, Defendant's own expert concedes as much, answering a question about "the closest study" with "the research that has to do with falls" and "the analogous behavior of moving your arms out when you're falling from a standing position." *Pl.'s Opp'n* at 3.

Based on the foregoing, the Court concludes the literature cited by Dr. Nobilini is probative on the issue of the natural protective response and continues to consider whether its probative value exceeds the prejudicial effects of allowing its presentation at trial.

BRP cautions the Court that allowing the disclosure of Dr. Nobilini's literature at trial would confuse the issues, mislead the jury, and cause undue delay. *Def.'s Mot.* at 7-8. It claims "the jury would be misled into believing that falls from a standing position elicit the same human reaction as the reaction from a seated, belted-occupant in a UTV rollover." *Id.* at 8. While Plaintiff indeed seeks to prove this similar response, citing academic studies does not amount to unfair prejudice and the Court trusts counsel to point out and the jury to recognize the distinctions. Further, as Mr. Ratcliffe writes, the factual distinctions between the studies' methodology and the accident in this case "are classic fodder for BRP's cross examination of Nobilini as to the bases of his opinions" and BRP will have opportunity to highlight these distinctions during cross-examination. *Pl.'s Opp'n* at 2. BRP was able to distinguish all five of Dr. Nobilini's cited studies in its ten-page motion; thus, the Court does not find that admitting the reports and permitting the Defendant to cross-examine Dr. Nobilini on their applicability will cause undue delay at trial.

To conclude, the Court finds the cited literature's probative value in helping the jury evaluate the expert opinions of Dr. Nobilini substantially outweighs their prejudicial effect, and the Court declines to order their preclusion at trial. Because BRP objected to their presentation, the Court notes its preliminary ruling on the issue

does not foreclose entering a limiting instruction to ensure the jury understands the academic literature is only referenced as support for Dr. Nobilini's opinions, but not for the substantive truth of his assertions. *See* FED. R. EVID. 703, notes of advisory comm. on 2000 amends. ("If the otherwise inadmissible information is admitted under this balancing test, the trial judge must give a limiting instruction upon request, informing the jury that the underlying information must not be used for substantive purposes").

## IV. CONCLUSION

The Court DISMISSES without prejudice Defendant BRP's Motion *In Limine* No. 12 to Exclude Certain Literature Cited by Robert J. Nobilini (ECF No. 179).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 8th day of November, 2024