UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

STEPHEN J. RATCLIFFE,          )
                               )
            Plaintiff,         )
                               )
      v.                       )          No. 1:20-cv-00234-JAW
                               )
BRP U.S., INC., et al.,        )
                               )
            Defendants.        )

**ORDER ON PLAINTIFF STEPHEN J. RATCLIFFE'S MOTION IN LIMINE
TO PRECLUDE EVIDENCE OR ARGUMENT OF BRP'S COMPLIANCE
WITH THE INDUSTRY'S OWN ROHVA "STANDARDS"**

The plaintiff in a product liability lawsuit involving a vehicle rollover moves the court to preclude evidence or argument of the vehicle manufacturer's compliance with a voluntary industry safety standard, asserting irrelevance and a risk of confusing the jury that compliance with the standard conclusively demonstrates reasonable safety in the context of a product liability claim.  The defendant manufacturer disagrees, claiming legal precedent in this district has admitted such evidence as relevant, but non-dispositive, on this issue.  The court follows the jurisprudence of this district and the First Circuit by declining to preclude evidence of compliance with industry standard.

## I.   BACKGROUND

On July 30, 2019, a utility terrain vehicle (UTV) driven by Stephen J. Ratcliffe overturned, causing significant injuries.  *Compl.* ¶ 15 (ECF No. 1).  On July 2, 2020, Mr. Ratcliffe brought product liability claims against both BRP U.S., Inc. (BRP), the

manufacturer; and Tidd's Sport Shop, Inc. (Tidd's), the distributor; asserting negligence and strict liability claims against both, respectively. *Id.* ¶¶ 17-57.

On October 4, 2024, Mr. Ratcliffe filed a motion in limine requesting the Court preclude evidence or argument that BRP's design of the Can-Am Maverick X3, the model of vehicle purchased and driven by the Plaintiff at the time of the accident underlying this case, complied with the off-road industry's voluntary safety standards. *Pl. Stephen J. Ratcliffe's Mot.* in Lim. *to Preclude Evid. or Arg. of BRP's Compliance with the Industry's Own Voluntary ROHVA "Standards"* (ECF No. 182) (*Pl.'s Mot.*). On October 15, 2024, BRP opposed Mr. Ratcliffe's motion, asserting that state court consensus has found evidence of compliance with industry standards to be admissible evidence. *Def. BRP's Resp. in Opp'n to Pl.'s Mot.* in Lim. *to Exclude Evid. or Arg. of BRP's Compliance with the Industry's Own Voluntary ROHVA "Standards"* (ECF No. 194) (*BRP's Opp'n*). Also on October 15, 2024, Tidd's joined BRP's opposition to Mr. Ratcliffe's motion. *Def. Tidd's Sport Shop, Inc.'s Opp'n to Pl.'s Mots. In Lim.* (ECF No. 215) (*Tidd's Opp'n*).

## II.   THE PARTIES' POSITIONS

### A.   Stephen J. Ratcliffe's Motion to Preclude Evidence of BRP's Compliance with the Industry's Voluntary ROHVA/ANSI Standards

Mr. Ratcliffe moves in limine to preclude evidence of the Maverick X3's compliance with voluntary safety standards for side-by-side vehicles published by the Recreational Off-Highway Vehicle Association (ROHVA). *Pl.'s Mot.* at 1. The Plaintiff points out that ROHVA is "a trade group of manufacturers including BRP"

and that the ROHVA/ANSI standards[1] "are neither issued by not regulated by any government agency." *Id.*; *see also id.* at 1 n.1.  Mr. Ratcliffe avers that compliance with the ROHVA/ANSI standards is irrelevant to this case because a vehicle may be dangerous regardless of its design's compliance with the ROHVA/ANSI standards, and further that Federal Rule of Evidence 403 precludes their admission because they pose "an extremely high danger of unfair prejudice, wasting time, misleading, and confusing the jury." *Id.* at 1-2 (citing FED. R. EVID. 403).

Mr. Ratcliffe explains that "ROHVA issues voluntary standards to its stakeholders including standards for the design and warnings of ROVs (recreational off-highway vehicles)," which are published by the American National Standards Institute (ANSI).  *Id.* at 2.  The Plaintiff emphasizes that ANSI is not a government regulator and merely "promot[es] and facilitat[es] voluntary consensus standards," *id.* at 2 n.2; as such, Mr. Ratcliffe avers that "ROHVA standards are not tested or promulgated by any government safety regulator, either state, federal, or international."  *Id.* at 2 (emphasis added by Plaintiff).

Quoting the Consumer Product Safety Commission (CPSC), which it proffers "ha[s] jurisdiction over the safety of off-road vehicles," *id.* at 1 n.1, Mr. Ratcliffe informs the Court "[t]here is no mandatory CPSC standard for Recreational Off-Highway Vehicles (ROVs)."  *Id.* at 3.  However, he continues, "there is a voluntary

[1]    The Court notes that Mr. Ratcliffe alternatively refers to these standards as "ROHVA" and "ROHVA/ANSI," *Pl.'s Mot.* at 1-5, while BRP uses the terminology "ANSI-ROHVA-2016" and "ANSI-ROHVA 1-2016."  *Def.'s Opp'n* at 1-9.  The Court understands all of these various names to refer to the same set of standards jointly promulgated by ROHVA and ANSI, as explained by both parties.  *See Pl.'s Mot.* at 2; *BRP's Opp'n* at 1-2.  While unclear what nomenclature is technically correct, in the interest of consistency, the Court adopts the Plaintiff's proffered term of "ROHVA/ANSI standards" for the purposes of this motion.

3

standard for ROVs that represents industry best practices: ANSI ROHVA 1-2016
Recreational        Off-Highway        Vehicles        (ROVs).”        *Id.*        (citing
https://www.cpsc.gov/FAQ/Recreational-Off-Highway-Vehicles-
ROVs#:~:text=What%20requirements%20apply%20to%20recreat
ional,%2DHighway%20Vehicles%20(ROVs)).

  Mr. Ratcliffe asserts that black letter Maine law prohibits evidence of industry
custom in negligence cases, which he calls “very similar to product defect cases.” *Id.*
(citing *Pulsifer v. Berry*, 87 Me. 405, 410 (1895) (“Where a party is charged with
negligence, he will not be allowed to show that the act complained of was customary
among those engaged in a similar occupation or those placed in like circumstances,
and owing the same duties”)). Continuing the comparison to negligence, Mr. Ratcliffe
notes that a legal treatise has observed “[a]n entire industry, by adopting such
careless methods to save time, effort or money, cannot be permitted to set its own
uncontrolled standard.” *Id.* (quoting Prosser & Keaton, THE LAW OF TORTS, § 33 at
195 (5th ed. 1984) (alteration made by Plaintiff)).

  Mr. Ratcliffe concedes that “[f]or a products liability case, this issue has not
been decided in Maine,” but notes that other state courts have “ruled that compliance
with industry standards is inadmissible as a defense to product liability claims.” *Id.*
at 4 (citing *Sullivan v. Werner Co.*, 306 A.3d 846, 859 (Pa. 2023) (“We conclude that
evidence of compliance with industry standards is inadmissible under the risk-utility
test in strict products liability cases”). Mr. Ratcliffe argues that, like Pennsylvania,
“the [Maine] Law Court adopted the ‘danger-utility’ test.” *Id.* (citing *Stanley v.*

4

*Schiavi Mobile Homes, Inc.*, 462 A.2d 1144, 1148 (Me. 1983); *St. Germain v. Husqvarna Corp.*, 544 A.2d 1283 (Me. 1988); *Guiggey v. Bombardier*, 615 A.2d 1169, 1172 (Me. 1992)).  Mr. Ratcliffe claims that the Law Court in these cases did not distinguish between the "danger-utility" test and the standard applicable to a negligence claim.  *Id.* (citing *St. Germain*, 544 A.2d at 1286).  Describing the test as weighing the danger-in-fact of a product's particular design feature against its utility, Mr. Ratcliffe argues a product is "unreasonably dangerous," and thus defective, if a "reasonable person" would conclude that the danger-in-fact outweighs the utility of the product, regardless of whether the danger was foreseeable.  *Id.* (citing Prosser & Keaton at 699-700,[2] as cited in *St. Germain*, 544 A.2d at 1285).  Mr. Ratcliffe argues the ROHVA/ANSI standards are not helpful to the jury's application of the risk-utility test to a decide a design defect case, and thus asks the Court to preclude evidence of the standards as irrelevant pursuant to Federal Rule of Evidence 401.  *Id.*

Mr. Ratcliffe continues that, even if the Court deems the ROHVA/ANSI standards relevant, the Court should nonetheless exclude them pursuant to Rule 403.  *Id.* at 4-5.  He insists that the "jury may misunderstand ROHVA compliance to be the equivalent of meeting federal consumer safety regulations, or even just meeting the safety standards of an *independent* standards group."  *Id.* at 5 (emphasis added by Plaintiff).  The Plaintiff characterizes ROHVA compliance as "the veneer of meeting the safety standards of a government regulator or independent entity" and adds there

---

[2]      The Court notes that Mr. Ratcliffe's pincite to Prosser & Keeton directs the Court to pages 699-70.  *Pl.'s Mot.* at 4.  The Court corrected the citation to reflect that the information comes from pages 699-700.

also exists "the danger that a jury would defer to ROHVA's minimum standards because ROHVA is a nominal third-party, without anything to lose in this case." *Id*. To the contrary, Mr. Ratcliffe opines, "many ROHVA members have a lot to lose if the jury finds against BRP." *Id.*

In sum, Mr. Ratcliffe requests the Court preclude evidence or argument of ROHVA/ANSI standards pursuant to Federal Rules of Evidence 401 and 403. *Id*.

### B. BRP's Opposition to Plaintiff's Motion to Preclude Evidence of BRP's Compliance with the Industry's Voluntary ROHVA/ANSI Standards

BRP opposes Mr. Ratcliffe's motion, arguing that compliance with the ROHVA/ANSI standards is relevant, probative, and not unfairly prejudicial. Beginning by listing purportedly uncontested facts, BRP avers the Maverick X3 is an ROV, that the ROHVA/ANSI standards "provide recommendations and guidelines for ROV safety, function and performance," and that the Maverick X3 complied "in all respects" with the ROHVA/ANSI standards. *BRP's Opp'n* at 1.

BRP then offers additional context on the ROHVA/ANSI standards and their promulgation process. Describing the ROHVA/ANSI standard as "a national consensus standard," BRP explains that "ROHVA has been accredited by [ANSI] to develop equipment, safety, and performance standards for recreational off-road highway vehicles," which were first published in 2010. *Id*. at 1-2, 2 n.1 (citing https://rohva.org/ansi-standard/). BRP rejects the Plaintiff's implication that the ROHVA/ANSI standards are "self-serving standards unilaterally set by a collection of manufacturers," emphasizing that "[u]nder ANSI's due process rules, standards will only be approved for publication if the developer follows and implements an 'open'

6

standard development process." *Id.* at 2 (citing https://www.ansi.org/american-national-standards/ans-introduction/essential-requirements#:%7E:text=Due%20process%20means%20that%20any,for%20equity%20and%20fair%20play).

BRP notes the ROHVA process includes a technical advisory council to review, update, and draft the proposed standard; "[m]embers of the technical advisory panel include representatives of all member companies and proposed standards are only approved when voted upon by the entire consensus body." *Id.* Pointing out that government agencies, consumer advocacy groups and other interested organizations are represented on the consensus body, BRP emphasizes the inclusiveness of the process is further assured by publication of draft standards for public comment prior to final approval. *Id.* "Final approval and publication," BRP says, "can only occur when the majority of all interest groups—not just manufacturers—vote to approve the standard." *Id.* Based on this procedural inclusivity, BRP disputes Mr. Ratcliffe's position that the ROHVA/ANSI standards are a "minimum, industry-driven voluntary standard" and claims compliance with the standards demonstrates a vehicle "is state of the art in terms of safety, function and performance." *Id.* at 2-3.

BRP notes that Mr. Ratcliffe "relies on a solitary outlier case" to argue that compliance with industry standards is inadmissible "while conspicuously turning a blind eye to case[]law from 47 other jurisdiction[s], including Maine." *Id.* at 3. BRP concedes that the Maverick X3's compliance with the ROHVA/ANSI standards does not dispositively prove the product's reasonable safety for its intended use, but argues it "is undoubtedly probative." *Id.* Further, BRP insists the ROHVA/ANSI standards

provide "valuable background information on how and why BRP designed the [Maverick X3] the way it did." *Id.*

Expanding on its arguments regarding relevance and admissibility, BRP characterizes "[t]he issue in this case [as] whether the design [of] the [Maverick X3] was reasonably safe" and asserts compliance with the requirements of a national consensus standard—here, the ROHVA/ANSI standard—contains probative value on that question. *Id.* BRP avers that state and federal Maine courts have found industry standards relevant and admissible in both negligence and product liability cases. *Id.* at 3-4 (citing *Libby v. Griffith Design & Equip. Co.*, No. 2:88-cv-282, 1990 U.S. Dist. LEXIS 19475, at *9-10 (D. Me. June 19, 1990) (finding OSHA standards were not binding on the defendant but nevertheless "admissible evidence of a party's standard of care"); *Briggs v. Cail*, No. CV-01-178, 2003 WL 25278528, at *1 (Me. Super. Feb. 28, 2003) (denying plaintiff's motion in limine to exclude OSHA standards based on a finding that they were relevant and not unfairly prejudicial); *LaCroix v. New England Group Maremont Corp.*, 440 A.2d 347 (Me. 1982) (admitting evidence of compliance with OSHA standards); *Brown v. Crown Equip. Corp.*, 445 F. Supp. 2d 59, 69-70 (D. Me. 2006) (holding that ANSI standard relevant to lift trucks was admissible in action arising from workplace accident involving lift truck, where the parties agreed the standard applied to the subject product). BRP also directs the Court to caselaw from other states in which "evidence of compliance or noncompliance with industry standards" was deemed admissible in products liability actions; BRP avers three of the four states missing from the its citations—Utah, Vermont, and

8

Wyoming—"have not addressed the issue." *Id.* at 4-7 (internal citations omitted). BRP notes that the only state that does not permit introduction of industry standard evidence, Pennsylvania, is the one from which Mr. Ratcliffe cites in his motion. *Id.* at 7 (citing *Pl.'s Mot.* at 4 (in turn citing *Sullivan*, 306 A.3d 846)).

BRP concedes that evidence of compliance with industry standards is not dispositive on the issue of reasonable safety. *Id.* at 7 & n.4 (citing *Marchant v. Dayton Tire & Rubber Co.,* 836 F.2d 695, 699 (1st Cir. 1988) (stating that compliance with industry standards "is not dispositive, and counsel may argue that industry standards can and should be more stringent") (citation omitted) (internal quotations omitted)). BRP insists, however, that the Maverick X3's compliance with the ROHVA/ANSI standards "is clearly probative and relative not only to the design of the Subject Vehicle and BRP's design choices, but to discredit and/or impeach Plaintiff's experts." *Id.* at 7 (citing, *inter alia*, *Brown*, 445 F. Supp. 2d. at 69-70; *McKinnon v. Skil Corp.*, 638 F.2d 270, 276-77 (1st Cir. 1981) (applying Massachusetts law and stating that evidence of industry standards and the products' compliance with those standards "was properly admitted as some evidence of the defendant's due care regarding the design and manufacture of the [product]" and for "discrediting plaintiff's expert witness")). Based on the caselaw of Maine and consensus of other state courts, BRP asks the Court to admit evidence of its compliance with the ROHVA/ANSI standards. *Id.* at 8.

BRP also contests Mr. Ratcliffe's unfair prejudice argument pursuant to Federal Rule of Evidence 403, *id.* (citing *Pl.'s Mot.* at 4-5), characterizing the

Plaintiff's argument as "the jury will take compliance with [ROHVA/ANSI] to mean that the [Maverick X3] is not defective." *Id.* (citing *Pl.'s Mot.* at 5). BRP insists "[t]his does not justify preclusion," noting that "Rule 403 protects 'against unfair prejudice, not against all prejudice.'" *Id.* (quoting *Velazquez v. Abbott Lab'ys*, 901 F. Supp. 2d 279, 292 (D.P.R. 2012) (quoting *United States v. Whitney*, 524 F.3d 134, 141 (1st Cir. 2008))). BRP avers that a district court holds "considerable latitude in determining whether to admit or exclude evidence," *id.* (citing *Velazquez*, 901 F. Supp. 2d at 292 (in turn quoting *Santos v. Sunrise Med.*, 351 F.3d 587, 592 (1st Cir. 2003))), and notes the balancing test of Rule 403 favors evidence's admission. *Id.* (citing *Whitney*, 524 F.3d at 141).

Applying the Rule 403 standard to the case at bar, BRP insists "the probative value of the [Maverick X3's] compliance with [the ROHVA/ANSI standards] substantially outweighs any hypothetical jury confusion." *Id.* Even if there is danger of jury confusion, BRP says, "the Court can issue a limiting instruction to the jury that compliance with [the ROHVA/ANSI standards] is not dispositive of the issue[s] of defect or due care." *Id.* at 8-9 (citing *McKinnon*, 638 F.2d at 277 n.11 (affirming the district court's admission of industry standards evidence as relevant and noting the district court provided limiting instruction that compliance with such standards is not dispositive)).

In sum, BRP asks the Court to deny Plaintiff's motion and to permit the introduction of evidence at trial of the Maverick X3's compliance with the ROHVA/ANSI standards. *Id.* at 9.

### C.   Tidd's Sport Shop, Inc.'s Opposition to Plaintiff's Motions in Limine

Tidd's summarily joins BRP's opposition to the Plaintiff's motion to preclude evidence or argument relating to BRP's compliance with the industry's ROHVA/ANSI standards.[3] *Tidd's Opp'n* at 1.

## III.   DISCUSSION

The Court concludes that BRP's arguments and First Circuit citations are persuasive; thus, the Court will permit introduction of evidence, reference, and testimony relating to the Maverick X3's compliance with ROHVA/ANSI standards.

Federal Rule of Evidence 401 defines evidence as relevant if it: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  FED. R. EVID. 401. Relevant evidence is generally admissible, unless otherwise precluded by the United States Constitution, federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court.  FED. R. EVID. 402.

Here, the Court will not depart from the prior jurisprudence of this Court, and the First Circuit which has permitted the introduction of evidence of compliance with industry standards as relevant to and probative of "the defendant's due care regarding the design and manufacture of the [product]" and "for the purpose of discrediting plaintiff's expert witness."  *McKinnon*, 638 F.2d at 276-77; *see also*

---

[3]      The Court notes that Tidd's submission states its "opposition[] to plaintiff's motions in limine to exclude evidence or arguments of BRP's compliance with the industry's own voluntary ROVA standards." *Tidd's Opp'n* at 1.  The Court presumes that Tidd's reference to "ROVA" intends to refer to the ROHVA/ANSI standards at issue in this motion sequence.

*Brown*, 445 F. Supp 2d at 69.  The Court notes that *Brown* involved the admission of an OSHA standard and Mr. Ratcliffe emphasizes in his motion that the ROHVA/ANSI standards are from a private entity, not the government.  *Pl.'s Mot.* at 1-2, 1 n.1.  However, *McKinnon* involved standards issued by the Underwriter's Laboratory (UL), a similarly private entity that issues consensus standards. *McKinnon*, 638 F2d at 276-277; *see also UL Standards and Engagement*, http://ulse.org ("We develop and publish consensus standards that help guide the safety, performance, and sustainability of new and evolving products, technologies, and services that range from household appliances, smoke alarms, and batteries to building materials, cybersecurity, and autonomous vehicles").  The First Circuit affirmed the district court's decision to admit evidence of compliance with the UL standards, finding "[t]he standards clearly are relevant."  *McKinnon*, 638 F.2d at 276. This Court, which is both bound to follow the First Circuit and persuaded by its articulated reasons in *McKinnon*, will not depart from precedent by precluding evidence of compliance with industry standards.

Mr. Ratcliffe avers introduction of BRP's compliance with the ROHVA/ANSI standards would further violate Rule 403, which grants courts the discretion to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  FED. R. EVID. 403.  As described above, the Court has concluded that the ROHVA/ANSI standards are relevant and probative on the question of whether the

12

product poses an unreasonable danger in its foreseeable use.  The Court considers, then, whether a risk of unfair prejudice substantially outweighs this probative value.

After reviewing the parties' positions, the Court agrees with BRP that the evidence of compliance with the ROHVA/ANSI standards does not pose a substantial risk of unfair prejudice.  First, as Mr. Ratcliffe raises in his motion, he may point out that ROHVA membership consists of industry manufacturers to argue that the standards thus fail to impose adequately safety requirements.  *Pl.'s Mot.* at 1-2.  Such argument would be permissible and appropriate at cross-examination.  The First Circuit, while admitting evidence of compliance with industry standards in *McKinnon*, explicitly noted that "[t]he plaintiff, of course, could have cross-examined the defendant's expert on [the company's] compliance with the UL standards." *McKinnon*, 638 F. 2d at 276 n.10 (citing *Forbro Design Corp. v. Raytheon Co.*, 532 F.2d 758, 762 (1st Cir. 1976)).  This Court notes that the same is true here.

Additionally, compliance with industry standards is not dispositive; as BRP suggests, the Plaintiff's concern that the jury will take it as such may be mitigated through a limiting instruction if necessary.  *BRP's Opp'n* at 8-9 (citing *McKinnon*, 638 F.2d at 277 n.11) (affirming the district court's decision and noting the district court instructed the jury: "[T]o conform it to the standard is obviously desirable.  At the same time it is going to be up to you to decide whether or not the unit itself meets with having been manufactured under a procedure which we[']ll call comporting with reasonable care on the part of a manufacturer").  However, if the Plaintiff wishes the

Court to instruct the jury on this issue, it is the Plaintiff's duty to propose an appropriate instruction with an authoritative citation.

Through robust argumentation at trial and a limiting instruction, if requested, the Court is confident that the risk of the jury confusing the issue does not substantially outweigh the probative value of the evidence. Therefore, the Court will not preclude the evidence of BRP's compliance with the ROHVA/ANSI standards.

## IV.  CONCLUSION

The Court DISMISSES without prejudice Plaintiff Stephen J. Ratcliffe's Motion *In Limine* to Preclude Evidence or Argument of BRP's Compliance with the Industry's Own Voluntary ROHVA "Standards" (ECF No. 182).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 8th day of November, 2024

14