UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

STEPHEN J. RATCLIFFE,              )
                                   )
              Plaintiff,           )
                                   )
       v.                          )          No. 1:20-cv-00234-JAW
                                   )
BRP U.S., INC., et al.,            )
                                   )
              Defendants.          )

**ORDER ON PLAINTIFF STEPHEN J. RATCLIFFE'S MOTION IN LIMINE
TO PRECLUDE THE DEPOSITION TRANSCRIPT OF DANNY CONDON,
WHOSE REMOTE DEPOSITION TESTIMONY WAS AIDED BY SOMEONE
IN THE ROOM**

A plaintiff in a product liability case moves to preclude the introduction of a witness's deposition transcript because his mother was present and allegedly assisted him in the taking of his deposition. The defendants object, arguing the deposition transcript is admissible under Federal Rule of Civil Procedure 32 and that plaintiff's counsel did not take action to correct the perceived irregularity at that time. The court agrees with the defendants and dismisses the motion without prejudice.

## I.    BACKGROUND

On July 30, 2019, a utility terrain vehicle (UTV) driven by Stephen J. Ratcliffe overturned, causing significant injuries. *Compl.* ¶ 15 (ECF No. 1). On July 2, 2020, Mr. Ratcliffe brought product liability claims against both BRP U.S., Inc. (BRP), the manufacturer; and Tidd's Sport Shop, Inc. (Tidd's), the distributor; asserting negligence and strict liability claims against both, respectively. *Id.* ¶¶ 17-57.

On October 4, 2024, Mr. Ratcliffe filed a motion in limine requesting the Court preclude the presentation of the deposition transcript of Danny Condon, one of BRP's layperson witnesses, based on the presence and alleged assistance of his mother during his deposition. *Pl. Stephen J. Ratcliffe's Mot.* in Lim. *To Preclude the Dep. Tr. of Danny Condon, Whose Remote Dep. Test. Was Aided by Someone in the Room* (ECF No. 181) (*Pl.'s Mot.*).   On October 15, 2024, BRP opposed Mr. Ratcliffe's motion, claiming that Mr. Ratcliffe has not argued Mr. Condon's incompetence or cited legal authority for the preclusion of his testimony based on a third party's presence in the room. *Def. BRP's Opp'n to Pl.'s Mot.* in Lim. *To Preclude the Dep. Tr. of Danny Condon* (ECF No. 192) (*BRP's Opp'n*).   Tidd's also opposed Mr. Ratcliffe's motion on October 15, 2024, arguing that the presence of the witness's mother had no material impact on Mr. Condon's testimony and that Plaintiff's counsel proceeded with the deposition despite awareness of her presence. *Def. Tidd's Sport Shop, Inc.'s Opp'n to Pl.'s Mot. In Lim. to Preclude Dep. Tr. of Danny Condon* (ECF No. 211) (*Tidd's Opp'n*).

## II.   THE PARTIES' POSITIONS

### A.   Stephen J. Ratcliffe's Motion to Preclude the Deposition Transcript of Danny Condon

Mr. Ratcliffe moves to exclude the deposition transcript of Mr. Condon, a thirty-six-year-old eyewitness to the accident underlying this lawsuit, on the basis that "his mother was in the room with him and assisting him with his answers" during his remote deposition, which was held via Zoom. *Pl.'s Mot.* at 1. The Plaintiff emphasizes "[t]he transcript reflects that [the witness's] mother, Lisa Condon, whispered answers to him, gave him advice on how to answer questions, and Mr.

Condon admitted under oath that his mom was helping him." *Id.* Specifically, Mr.

Ratcliffe directs the Court to the following passages from the deposition transcript:

> Q.      How did your cousin get up on the top of that?  Did he go in the middle of it or did he have to go to the left or the right of it to get up top where you were?
>
> THE WITNESS:     What's he mean?
>
> MS. CONDON:      It doesn't matter, just --
>
> A.      Straight up.
>
> MR. MEGA:        Wait a minute.  Wait a minute.  I just want to make a record here.  Who is that, your mom, in the room with you, Mr. Condon?
>
> THE WITNESS:     Yup.
>
> MR. MEGA:        Okay.
>
> MS. CONDON:      I am also his legal guardian.
>
> MR. MEGA:        I see.
>
> BY MR. MEGA:
>
> Q.      So let me ask some questions about that, and I don't want to pry into your private life, sir, but if people are going to want to present testimony later on, I need to understand a few things.  Okay, Mr. Condon?
>
> A.      (Nodding head.)
>
> MS. CONDON:      You need to answer out loud.
>
> A.      Yes.
>
> BY MR. MEGA:
>
> Q.      So your mom is helping you a little bit there.
>
> A.      Yeah.
>
> . . . .

3

Q.      Okay.  Is a doughnut different than driving in a circle?

      MR. BROGAN:      Jeff, so that we know and can remember for the record ---

A.      Because the back tires spinning really fast, and the ass end's sliding around, into a doughnut. (Gesturing)

      MR. BROGAN:      Would you do me a favor and just describe what he's doing with his hands for you?

      MR. MEGA:      I can't describe -- I would prefer he explain what he's talking about rather than --

A.      I said spin tires.

BY MR. MEGA:

Q.      Yes.

A.      You spin the tires real quick, and you turn the handle really quick, and you make the thing spin very quickly, and the ass end kind of like fish tails around.

Q.      Okay.

A.      It's like doing it with an old muscle car.

Q.      Okay.

      MS. CONDON:      Into a circle, is that what you mean?

      THE WITNESS:      Yeah, into a circle.

      MR. MEGA:      Wait a minute.  Wait a minute.  This is a first for me in a deposition.  Let the record reflect that I think I just heard his mom say, "Into a circle, is that what you mean?"

BY MR MEGA:

Q:      Is that what your mom just said?

A.      Yeah.  It's a doughnut.

      MS. CONDON:      Sir, can I speak up for a minute?

      MR. MEGA:      Well, why don't we get your name, and we'll make an accurate record, and you can get on camera.  Sure.

MS. CONDON:       My name is Lisa Condon.

MR. MEGA:         Okay.

MS. CONDON:       And the only reason I mentioned, does he mean circles, sometimes he has a hard time recalling some words that he wants to say.

MR. MEGA:         Okay.

MS. CONDON:       So I was asking him, "Do you mean in a circle?" so he could clarify it for you.

MR. MEGA:         Okay.

A.    I'll put it in a[n] easy phrase.  He was drifting as into a circle.  I'll put it that way.  Easy phrasing for people.

. . . .

Q.    And in those rotations, those clockwise rotations, are you saying that the front axle stayed planted in one spot?

A.    It probably just caught on a rock.  All it takes.  Even with a small quad.

MS. CONDON:       That's not what he's asking.

MR. MEGA:         Let the record reflect that the deponent's mother said, "That's not what he's asking."

*Id.* at 1-4.  (quoting *id.*, Attach. 1, *Dep. of Danny Condon* at 20:1-24; 25:13-27:8; 28:22-29:4 (ECF No. 192-1) (*Condon Dep. Tr.*)).

Mr. Ratcliffe insists that his attorney objected, on the record, to the use of the deposition at the time that it was taken, as reflected by the following exchange:

MR. MEGA:         I want to put something on the record.

MR. BROGAN:       Let's do it right now.

MR. MEGA:         I did not notice this deposition.  The deposition started, and apparently the deponent's mother is his legal guardian, who is sitting literally right with him.  And at times I have heard her help provide answers to certain questions or try to interpret his thoughts or

5

what he means to say, and I don't know if I've captured every time. I'm doing the best I can to, if I hear that, to repeat it and make sure it's on the record, but that's not, in my opinion, how a deposition is supposed to proceed. She's not under oath. He's there. Apparently, she's his guardian, and this is going on, and I would object to the use of this deposition based on that alone.

*Id.* at 4 (quoting *Condon Dep. Tr.* at 30:3-18).

Mr. Ratcliffe asserts that "Mr. Condon's testimony was clearly tainted by Ms. Condon's above assistance or interference" by coloring his testimony "as to the movements of plaintiff's vehicle leading up to and at the time of the rollover." *Id.* at 4. As such, he asks the Court to preclude introduction of Mr. Condon's deposition testimony into evidence. *Id.*

## B. BRP's Opposition to Plaintiff's Motion to Preclude the Deposition Transcript of Danny Condon

BRP asks the Court to deny Mr. Ratcliffe's motion to exclude Mr. Condon's deposition transcript. It explains that Mr. Condon was an eyewitness to the accident underlying this case and that he "provided sworn deposition testimony under oath on April 26, 2021[,] [b]ecause Mr. Condon resides more than 100 miles from the location of this trial." *BRP's Opp'n* at 1. BRP notes that it identified relevant portions of Mr. Condon's deposition transcript for presentation at trial, *id.* (citing *BRP's Dep. Designations* (ECF No. 167)), and that Mr. Ratcliffe himself "also served designations indicating an intent to offer portions of Mr. Condon's deposition into evidence during Plaintiff's case in chief." *Id.* (citing *Pl. Stephen J. Ratcliffe's Dep. Tr. Designations* at 12 (ECF 186)). BRP calls Mr. Ratcliffe's attempt to preclude BRP from using Mr. Condon's deposition while simultaneously designating portions of his testimony for his own use "inconsistent." *Id.* at 1-2. It further asserts the deposition may be used

6

pursuant to Federal Rule of Civil Procedure 32 and that the eyewitness testimony "is plainly relevant." *Id.* at 2.

BRP notes that Mr. Ratcliffe cites a single basis for precluding Mr. Condon's deposition transcript: the presence of his mother in the room during the taking of his deposition. *Id.* It explains that "[Mr. Condon's] mother is his legal guardian" and that "[h]e suffers from bipolar disorder and lives off disability income"; while disclaiming this affects his competency to testify, BRP insists "it likely explains why his guardian was present as an observer." *Id.* at 2 n.1. BRP points out "Plaintiff does not argue that Mr. Condon is incompetent to testify," nor does he cite any legal authority in his motion "standing for the proposition that a witness's deposition transcript is rendered inadmissible if a third party is present." *Id.* at 2. BRP contends "[t]he mere presence of a third party during a deposition does not render testimony that is otherwise competent and relevant inadmissible," and asks the Court to deny Mr. Ratcliffe's motion on that basis. *Id.*

BRP first argues that Federal Rule of Civil Procedure 32 permits the use of Mr. Condon's deposition transcript. *Id.* at 2-3 (citing FED. R. CIV. P. 32(a)(4)(B) ("[a] party may use for any purpose the deposition of a witness, whether or not a party, if the court finds: . . . that the witness is more than 100 miles from the place of hearing or trial . . . .") (alterations made by Defendant). BRP indicates Mr. Condon lives in Houlton, Maine, which is more than 100 miles from the scheduled location of this trial in Bangor, Maine, *id.* at 3, and submits the Court may take judicial notice of this fact. *Id.* at 3 n.2 (citing *Hartman v. United States*, 538 F.2d 1336, 1346 (8th Cir. 1976)

7

(finding that "the district court properly took judicial notice of the fact that" the witness is more than 100 miles from the place of trial)).

BRP characterizes "[t]he real issue of whether Mr. Condon's deposition transcript can be properly admitted [as] one of competency," and points out "on this issue, Plaintiff's Motion is silent." *Id.* Citing Federal Rule of Evidence 601, BRP maintains that state rules of evidence control the matter of witness competence in a civil case when state law supplies the rule of decision and notes that, as a federal matter predicated on diversity jurisdiction, that is the case here. *Id.* (citing 28 U.S.C. 1332). BRP thus quotes Maine Rule of Evidence 601 as providing:

> (a) Every person is competent to be a witness unless these rules provide otherwise.
>
> (b) A person may not be a witness if the court finds that:
>
>> (1) The person cannot communicate about the matter so that the judge and jury can understand, either directly or through an interpreter;
>>
>> (2) The person cannot understand the duty, as a witness, to tell the truth;
>>
>> (3) The person had no reasonable ability to perceive the matter; [or]
>>
>> (4) The person has no reasonable ability to remember the matter.

*Id.* at 3-4 (quoting M.R. EVID. 601). BRP avers that Plaintiff's motion does not suggest "that Mr. Condon does not have the ability to understand right from wrong, fact from fiction, or truth from falsity" and argues the presence of his mother does not undermine Mr. Condon's competency. *Id.* at 4. BRP further emphasizes that it has not designated for presentation at trial any portion of Mr. Condon's deposition where

Mr. Ratcliffe alleges Mr. Condon's mother aided the witness's testimony. *Id.* (comparing *BRP's Dep. Designations* to *Pl.'s Mot.* and *Condon Dep. Tr.*).

BRP continues that the presence and infrequent interjections of Mr. Condon's mother should not render his deposition transcript inadmissible because her involvement only amounted to "telling him to answer questions and that he needed to 'answer out loud'" and, on one occasion, "to clarify his answer." *Id.* at 4-5 (citing *Condon Dep. Tr.* at 20:1-5; 28:22-29:4; 20:15-20; 25:3-26:9). Thus, BRP rejects Mr. Ratcliffe's characterization that Mr. Condon's mother "answer[ed] for him or influence[]d his testimony." *Id.* at 5 (citing, generally, *Condon Dep. Tr.*).

Even if the Court accepts that Mr. Condon's mother influenced his testimony, BRP says, "such conduct does not render his testimony inadmissible." *Id.* BRP analogizes to the "more egregious" circumstances in *Hartman v. United States*, in which the Eight Circuit rejected the argument that the district court had erred in denying the plaintiff's motion to suppress a witness's deposition despite the witness's history of memory problems and the fact that "prior to answering certain questions [the witness] would confer with his wife." *Id.* (citing *Hartman*, 538 F.2d at 1345). Nevertheless, the Eight Circuit held "[t]hose considerations naturally affected the credibility of [the witness] and the weight to be given to his testimony, but they do not call for the suppression of the entire deposition." *Id.* (citing *Hartman*, 538 F.2d at 1345). Contrasting *Hartman* to the case at bar, BRP notes "Mr. Condon did not confer with his mother prior to providing his answers," contending that he "testified under oath and on his own." *Id.* BRP avers "[t]hroughout the 45 pages of testimony,

9

she spoke on only a handful of occasions and in most instances, only when she was directly addressed by counsel." *Id.* (citing *Condon Dep. Tr.* at 20:5, 20:12, 20:20. 26:7-8, 26:17-18, 26:22, 26:24-27:5, 29:2, 29:21-22, 29:25, 33:6-14, 33:22-35:15, 36:20, 43:21, 45:13, 48:8-10).

In sum, BRP asks the Court to permit the introduction of Mr. Condon's deposition transcript at trial.

### C.    Tidd's Sport Shop, Inc.'s Opposition to Plaintiff's Motion To Preclude Deposition Transcript of Danny Condon

Tidd's filed a separate opposition to Mr. Ratcliffe's motion, in which it argues, first, that there is no evidence in the record that Ms. Condon's presence affected her son's testimony and, second, that Plaintiff's counsel continued the deposition despite his knowledge of Ms. Condon's presence.[1] *Tidd's Opp'n* at 1.  Asserting Mr. Condon's testimony as an eyewitness to the accident "is exceptionally relevant to this case," Tidd's requests the Court deny the Plaintiff's motion.

Tidd's begins by reciting three facts allegedly relevant to disposition of this motion: that Mr. Condon was an eyewitness to the accident underlying this lawsuit; that Mr. Condon suffers from bipolar disorder and his mother serves as his legal guardian; and that Ms. Condon attended Mr. Condon's deposition.  *Id.* at 1-2 (citing *id.*, Attach. 1, *Condon Dep. Tr.* at 6:22-24; 9:23-10:7; 20:25-21:7 (ECF No. 211-1)).

Turning to the relevant legal standards, Tidd's reminds the Court that, to be admissible at trial, evidence must be relevant and that relevant evidence "must make

---

[1]        In addition to filing its own opposition, Tidd's notes that it "also joins co-defendant BRP U.S. Inc.'s opposition to this motion." *Tidd's Opp'n* at 1 n.1.

a fact in consequence more or less probable that it would be without the evidence." *Id.* at 2 (citing Fed. R. Evid. 401, 402). However, Tidd's says, "[r]elevant evidence may be excluded if 'its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.'" *Id.* (quoting Fed. R. Evid. 403). Tidd's also directs the Court to Federal Rule of Civil Procedure 32, which it summarizes as "allow[ing] a party to introduce into evidence deposition testimony of any party that is unavailable at trial, including those who are more than 100 miles from the place of trial." *Id.*

In the present case, Tidd's points out, "[t]he plaintiff does not cite any rule of evidence or civil procedure to support his arguments that Mr. Condon's testimony should be precluded." *Id.* Tidd's further notes that Mr. Ratcliffe "has designated excerpts from Mr. Condon's testimony to be used during the plaintiff's case in chief," which it posits amounts to tacit acknowledgment that Mr. Condon lives more than 100 miles from the assigned federal courthouse and is thus unavailable to testify at trial. *Id.* Tidd's adds that the Plaintiff does not contend Federal Rule of Civil Procedure 32 prohibits the introduction of Mr. Condon's testimony, but merely that Ms. Condon's conduct should make it inadmissible. *Id.*

Tidd's also argues that the transcript of Mr. Condon's deposition reveals Ms. Condon did not materially affect her son's testimony. *Id.* It rejects Plaintiff's contention that Ms. Condon "whisper[ed] answers to Mr. Condon" or that she gave him advice on how to answer questions; rather, Tidd's points out the "help" Ms.

Condon provided was "telling Mr. Condon that he needed to answer out loud." *Id.* (citing *Condon Dep. Tr.* at 20:1-21). Tidd's avers that Plaintiff's counsel did not ask Mr. Condon whether his mother had "whispered answers" to him, but instead "provided instructions to Ms. Condon, which she followed throughout the rest of the deposition." *Id.* at 3 (citing *Condon Dep. Tr.* at 34:19-35:16). Tidd's emphasizes that Plaintiff's counsel continued the deposition after being made aware of Ms. Condon's presence; he did not "seek to exclude Ms. Condon from the deposition or suggest any other remedy to his alleged concerns." *Id.*

Tidd's insists Mr. Condon's testimony "remained the same" after instructions were given to Ms. Condon, indicating the lack of material impact of her presence on his testimony. *Id.* Therefore, Tidd's asks the Court to deny Mr. Ratcliffe's motion to preclude the introduction of Mr. Condon's deposition. *Id.*

## III.    DISCUSSION

The Court concludes the deposition testimony of Mr. Condon is admissible under Rule 32 of the Federal Rules of Civil Procedure, and thus declines to preclude its introduction at trial.

Mr. Ratcliffe urges the Court to preclude the deposition transcript as evidence at trial based on "assistance or interference" by the deponent's mother. *Pl.'s Mot.* at 4. However, as the Defendants properly point out, he cites no legal authority for this request. The Defendants make several points in opposition, including that the testimony of the eyewitness is highly relevant, that the Plaintiff himself has designated sections of the same transcript for presentation at trial, that Plaintiff

makes no arguments regarding the deponent's competence, and that Federal Rule of Civil Procedure 32 permits its introduction. *BRP's Opp'n* at 1-2; *Tidd's Opp'n* at 2-3.

The Court finds the Defendants' arguments persuasive in this dispute. While the presence and assistance of a third party at a deposition is unusual, Plaintiff's counsel became aware of her presence when the deposition began, subsequently permitted her to remain, and even solicited responses from her on several occasions. *Condon Dep. Tr.* at 20:1-24; 25:13-27:8; 28:22-29.4.

Ms. Condon's first answer occurred at page six in the deposition transcript, supplying her address when her son could not remember it:

Q.  And what's the address for your mom's house?

A.  I don't know.

   MS. CONDON:      65 Court Street.

*Id.* at 6:12-15.  Plaintiff's counsel raised no objection to this response.  Ms. Condon did not speak for the remainder of defense counsels' examination.  *Id.* at 6:17-16:8.

The next time Ms. Condon spoke was during Plaintiff's counsel's examination. In response to one of Attorney Mega's questions, Mr. Condon replied: "[w]hat's he mean?"  *Id.* at 20:1-4.  Ms. Condon said, "[i]t doesn't matter, just - - "  *Id.* at 20:5. Attorney Mega then questioned Mr. Condon about the fact his mother was in the room, but he did not request Ms. Condon to leave nor instruct her to remain silent. *Id.* at 20:15-21:7.

Ms. Condon did not speak again until it appeared that her son was having difficulty expressing himself, and she volunteered: "[i]nto a circle, is that what you

mean?" *Id.* at 26:7-8. At that point, Plaintiff's counsel asked for Ms. Condon's name, but again did not ask her to leave the room or remain silent. *Id.*

Next, when Plaintiff's counsel asked Mr. Condon about the mechanism for doing a donut in a UTV, Mr. Condon failed to respond directly to the question and Ms. Condon volunteered, "[t]hat's not what he's asking." *Id.* at 28:22-29:2. Although Plaintiff's counsel made sure that Ms. Condon's remark was on the record, he took no further action. *Id.* at 29:3-4. After a break, Attorney Mega put on the record that in his opinion, Mr. Condon's mother should not be providing answers, and he was objecting to the use of the deposition on that basis alone. *Id.* at 30:3-18.

Ms. Condon explained that, due to her son's mental health condition, she was present to assist with the deposition and that she "want[ed] him to be able to answer your questions and not shut down and not say anything." *Id.* at 34:16-18. Attorney Mega replied:

> All right. So, I'm still questioning him, but my preference is that you, because you weren't a witness, and I appreciate what you're trying to do, but we're trying to take sworn testimony. My preference is you not actively participate and you sit quietly in support.

*Id.* at 34:19-34. Ms. Condon replied, "[m]m-hmm. I can do that." *Id.* at 34:25. She asked, however, for permission to speak up if she thought her son would not be able to continue. *Id.* at 35:4-6. Attorney Mega answered affirmatively, replying "[p]lease do." *Id.* at 35:7. After a discussion of counsel, Attorney Mega again noted his objection, but he took no action. *Id.* at 32:19. In fact, Attorney Mega stated he had no objection to her "sitting there and keeping quiet during a deposition." *Id.* at 32:15-17. Ms. Condon did not intervene after that that colloquy.

From the Court's perspective, this is much to do about nothing. First, Ms. Condon's contributions to her son's deposition were minor and immaterial and do not provide a basis to exclude the deposition.

Next, Federal Rule of Civil Procedure 32 provides a mechanism for objecting to the admissibility of deposition testimony, including for an error or irregularity that occurred during the taking of the deposition. FED. R. CIV. P. 32(d)(3)(B). Under Rule 32(d)(3)(B), however, an objection based on irregularity at oral examination is waived if "it relates to the manner of taking the deposition, the form of a question or answer, the oath or affirmation, a party's conduct, or other matters that might have been corrected at that time." *Id.*

Here, at no point did Plaintiff's counsel request that Ms. Condon leave the room, which would have been an obvious cure to whatever issues had been caused by her presence. Instead, Plaintiff's counsel allowed her to stay in the room and asked her to speak up if she thought her son would not be able to continue. Later, Attorney Mega instructed Ms. Condon not to speak, and she did not. The Court concludes that Plaintiff's counsel could have sought to correct the perceived irregularity at the time the deposition was taken, but in failing to do so, the Plaintiff has waived the right to object to the testimony's introduction on this basis.

Defendants also correctly point out that Mr. Ratcliffe does not raise an argument regarding Mr. Condon's competence to testify pursuant to Maine Rule of Evidence 601 or another authority. Nor does the Plaintiff point to particular answers that it claims were substantively affected by Ms. Condon's presence or input. Without

such a basis, the Court sees no reason to preclude the deposition transcript from introduction at trial.

## IV.   CONCLUSION

The Court DISMISSES without prejudice Plaintiff Stephen J. Ratcliffe's Motion *In Limine* to Preclude the Deposition Transcript of Danny Condon, Whose Remote Deposition Testimony Was Aided by Someone in the Room (ECF No. 181).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 8th day of November, 2024