UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| STEPHEN J. RATCLIFFE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-00234-JAW |
| | ) |
| BRP U.S., INC., et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER ON PLAINTIFF STEPHEN J. RATCLIFFE'S MOTION IN LIMINE TO PRECLUDE EVIDENCE OR ARGUMENT RELATING TO HIS EARLIER OPERATION OF THE SUBJECT VEHICLE IN A DIFFERENT LOCATION ON THE DAY OF THE INCIDENT**

The plaintiff in a product liability lawsuit involving a vehicle rollover moves to preclude evidence or argument that, earlier in the day, he had performed donut maneuvers in the same vehicle. The defendants, a vehicle manufacturer and vehicle distributor, each object to the evidence's preclusion, arguing that the evidence is relevant to the vehicle's tendency to roll over and to bolster the credibility of their fact witnesses. Concluding the evidence is relevant and probative to the defendants' proffered purposes and not unfairly prejudicial to the plaintiff, the court dismisses the plaintiff's motion.

### I.   BACKGROUND

On July 30, 2019, a utility terrain vehicle (UTV) driven by Stephen J. Ratcliffe overturned, causing significant injuries. *Compl.* ¶ 15 (ECF No. 1). On July 2, 2020, Mr. Ratcliffe brought product liability claims against both BRP U.S., Inc. (BRP), the

manufacturer; and Tidd's Sport Shop, Inc. (Tidd's), the distributor; asserting negligence and strict liability claims against both, respectively. *Id.* ¶¶ 17-57.

On October 4, 2024, Mr. Ratcliffe filed a motion in limine requesting the Court preclude evidence or argument of his operation of the vehicle earlier on the day of the accident underlying the case at a different location; specifically, at a sandpit different from the gravel pit where the accident occurred. *Pl. Stephen J. Ratcliffe's Mot.* in Lim. *to Preclude Evid. or Arg. Relating to His Earlier Operation of the Subject Vehicle in a Different Location on the Day of the Incident* (ECF No. 183) (*Pl.'s Mot.*). On October 15, 2024, BRP opposed Mr. Ratcliffe's motion, asserting that the evidence is relevant and probative to the cause of Mr. Ratcliffe's accident. *Def BRP's Opp'n to Pl.'s Mot.* in Lim. *to Preclude Evid. or Arg. Relating to His Earlier Operation of the Subject Vehicle in a Different Location on the Day of the Incident* (ECF No. 195) (*BRP's Opp'n*). Also on October 15, 2025, Tidd's filed its own opposition to Mr. Ratcliffe's motion, claiming the evidence is probative on the issues of the vehicle's capabilities, what it told the plaintiff during the sales process, and the circumstances which led to the Plaintiff's accident. *Def. Tidd's Sport Shop, Inc.'s Opp'n to Pl.'s Mot. in Lim. Preclude Evid. or Arg. Relating to His Earlier Operation of the Subject Vehicle in a Different Location on the Day of the Incident* (ECF No. 212) (*Tidd's Opp'n*).

## II. THE PARTIES' POSITIONS

### A. Stephen J. Ratcliffe's Motion to Preclude Evidence of His Operation of the Subject Vehicle in a Different Location on the Day of the Incident

Mr. Ratcliffe moves to preclude introduction of evidence of his earlier operation of the Can-Am Maverick X3 that he purchased and drove at the time of the accident

underlying the case. *Pl.'s Mot.* at 1. He explains there is a factual dispute whether he was performing a "donut" maneuver at the time of the rollover event causing his injury and that BRP intends to introduce testimony and a video of Mr. Ratcliffe performing donuts with the Maverick X3 earlier in the day in a different location. *Id.* The Plaintiff distinguishes the location where the accident occurred, which he calls "the gravel pit," from the prior location, which he calls "the sandpit," based on the consistency of the soil; the gravel pit "is more gravely and less sandy than the sandpit where plaintiff was driving earlier." *Id.* at 1 n.1. Mr. Ratcliffe acknowledges that he "was clearly doing donuts in the sandpit and there is a dramatic video of the vehicle kicking up so much sand that it looks like a sandstorm or dust cloud." *Id.* at 1-2. Further, Mr. Ratcliffe concedes that "[d]onut maneuvers are prohibited according to BRP's Operator Guide for the vehicle." *Id.* at 2.

However, Mr. Ratcliffe distinguishes the facts of the prior operation of the Maverick X3 at the sandpit from his subsequent operation of the same at the gravel pit which led to his injury. First, he points out that the direction of the rotation of the vehicle in the sandpit was different from the gravel pit: "[i]n the sandpit plaintiff was doing donuts in a counterclockwise rotation only, where he as the driver was on the inside of the rotation." *Id.* He emphasizes the significance of this fact because "[i]f the vehicle had rolled over it would have rolled onto its *passenger* side." *Id.* (emphasis added by Plaintiff). Mr. Ratcliffe contrasts this with his operation of the Maverick X3 in the gravel pit at the time of his accident, where "plaintiff was turning to the right – clockwise – when the vehicle rolled onto its driver side." *Id.* Thus, Mr.

3

Ratcliffe insists "[t]he manner in which [he] was driving at a different time, at a different location, in a different direction, and on a different surface, is not relevant to his operation of the vehicle at the time of the rollover." *Id.* Mr. Ratcliffe thus urges the Court to preclude the introduction of the evidence of Mr. Ratcliffe's prior operation of the vehicle pursuant to Rule 401 of the Federal Rules of Evidence. *Id.*

Mr. Ratcliffe further avers that "[a]ny iota of probative value . . . is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury." *Id.* He claims that the Defendants will use the "sandpit donuts and dust cloud evidence" to characterize him as "a stunt driver doing risky maneuvers, throwing caution (and sand) to the wind," *id.,* but points out "there is no recording of the plaintiff in the gravel pit at the time of the rollover." *Id* at 3. He cautions the Court that, based on "testimony of him doing a donut in the gravel pit at the time of the rollover" and "the visually dramatic sandpit donuts . . . the jury may easily visualize that he was doing the same thing later in the gravel pit." *Id.*

Mr. Ratcliffe describes BRP's arguments "that donuts are a risky stunt maneuver prohibited by the operator's guide" as "fundamentally unfair"; he points out that donuts were not just foreseeable, but that "BRP even *promoted, celebrated, and encouraged* its customers" to do so in promotional social media, including its own video of Maverick X3's doing donuts and "kicking up a dust cloud" without an accompanying warning or disclaimer. *Id.* (emphasis in original). The Plaintiff insists

4

the BRP's condemnation of the Plaintiff for doing the same maneuver is unfair and should be precluded under Rule 403.

Finally, Mr. Ratcliffe asks the Court to preclude the sandpit donut evidence under Federal Rule of Evidence 404. *Id.* Rule 404(a), he says, "prohibits use of character or character trait evidence to prove that on a particular occasion the person acted in accordance therewith." *Id.* Rule 404(b)(1), he continues "prohibits use of evidence of another crime, wrong, or act to prove a person's character to show that on a particular occasion the person acted in accordance therewith." *Id.* Mr. Ratcliffe warns the Court that a jury would view the sandpit video as evidence of his reckless character and prior reckless acts, and assume that his operation of the vehicle at the time of the rollover event "was in conformity with his purportedly reckless character." *Id.* at 3-4. For these reasons, he asks the Court to exclude the evidence under Rules 404(a) and 404(b). *Id.*

### B.   BRP's Opposition to Plaintiff's Motion to Preclude Evidence of His Operation of the Subject Vehicle in a Different Location on the Day of the Incident

BRP opposes Mr. Ratcliffe's motion, averring that the evidence of his sandpit donuts earlier in the day of the accident underlying this suit is relevant and probative to the cause of his accident. *BRP's Opp'n* at 1. Noting this is a product liability case, BRP emphasizes that, in such cases "one of the key issues that a factfinder must decide is how and why the accident happened." *Id.* It explains that despite "evidence pointing to Plaintiff's negligence and recklessness as the cause of the accident," Mr. Ratcliffe "will deny doing anything wrong" and "try to convince the jury that . . . all he was doing was making a gentle, easy turn when the Maverick X3 suddenly flipped

on him." *Id.* at 1-2. BRP insists that the sandpit video, filmed by Mr. Ratcliffe's son, of "the Plaintiff doing donuts on the X3 moments before the accident" is relevant and probative because "it tends to undermine Ratcliffe's denials; it supports the testimony of other fact witnesses; and it graphically illustrates that Plaintiff's stability claims are baseless." *Id* at 2.

BRP submits that the video of Mr. Ratcliffe's prior operation of the vehicle on the day of the accident is relevant to the case for several reasons:

1. To support BRP's claim that the accident was caused by Plaintiff's recklessness and misuse of the vehicle.

2. To undermine the causation prong of Plaintiff's failure to warn claim since his conduct in the moments preceding the accident is relevant to demonstrate that Ratcliffe is a user who ignored product safety warnings and instructions.

3. To discredit Plaintiff's suggestion that this accident occurred in a gentle right turn. The Ratcliffe donut video shows the X3 being driven aggressively, yet no loss of control occurs. Looking at that video, anyone with common sense can see that this is a vehicle that will not overturn in an easy, gentle turn. To put it simply, Plaintiff's denial and alternative story as to what happened at the time of the accident makes the video and his prior riding experience clearly relevant.

*Id.* at 2-3.

BRP then proceeds to describe the video of Plaintiff's prior operation of the Maverick X3:

> Plaintiff performs fast, aggressive, counterclockwise donuts in a sandpit for at least three rotations before a giant sand cloud appears. Even after the sand cloud appears, the vehicle's engine is still audible, presumably demonstrating that Plaintiff continues the donuts for the entirety of the

6

>thirty-seven (37) second video. [C.R],[1] Plaintiff's son, can be heard in the background, excitedly telling a friend "this is dope" and declaring "that's the new Can-Am for you."

*Id.* at 3 (citing *id.*, Attach. 5, *Screenshots of the Ratcliffe Video* (ECF No. 195-5); *id.* Attach. 6, *Ratcliffe Video* (ECF No. 195-6)).

BRP emphasizes that the video was taken "mere moments before [Ratcliffe's] accident," *id.* at 5, and on the same property as the gravel pit where the accident occurred. *Id.* at 3. BRP avers that multiple eyewitnesses will testify that, soon after the sandpit video was taken, Mr. Ratcliffe lost control while attempting another donut, *id.* (citing *id.*, Attach. 1, *C. Trahan Dep. Tr.* at 12:5-8, 14-18, 13:16-23 (ECF No. 195-1); *id.*, Attach. 2, *D. Condon Dep. Tr.* at 9:14-10:10 (ECF No. 195-2)). In fact, BRP says, the only person who denies that Plaintiff was performing donuts at the time of the accident is Mr. Ratcliffe himself. *Id.* at 3-4 (citing *id.*, Attach. 7, *Pl. Dep. Tr.* 56:10-12 (ECF No. 195-7)). In sum, BRP argues the evidence of Mr. Ratcliffe's prior operation of the vehicle is relevant to: "(i) the cause of the actual accident; (ii) the credibility of Plaintiff who has presented a differing account of what caused the accident; and (iii) in undermining Plaintiff's failure-to-warn claim as it tends to show that Ratcliffe ignored use instructions and was not going to heed any alternative warning." *Id.* at 4.

The Defendant recites that evidence must be relevant to be admissible, and that evidence is relevant when "it has any tendency to make a fact more or less

---

[1] The Court, sua sponte, has chosen to refer to Mr. Racliffe's son by his initials, C.R., in this order, pursuant to Federal Rule of Civil Procedure 5.2(a)(3). *See United States v. Kravetz*, 706 F.3d 47, 61-63 (1st Cir. 2013) (discussing privacy rights of third parties).

7

probable than it would be without the evidence" and the "fact is one of consequence in determining the action." *Id.* (quoting FED. R. EVID. 401, 402). However, BRP notes that a court may exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* (quoting FED. R. EVID. 403).

BRP first responds to Mr. Ratcliffe's claims that the evidence of his prior operation of the Maverick X3 is irrelevant and being offered as impermissible character evidence. *Id.* at 4-5 (citing *Pl.'s Mot.* at 2-4). It points out that the Plaintiff neither cites caselaw in support of either proposition nor considers the video's probative value as to the cause of the rollover. *Id.* at 5. BRP states that, "[i]n Maine, proximate cause may be established entirely through circumstantial evidence." *Id.* (citing *Ricci v. Alternative Energy Inc.*, 211 F.3d 157, 162 (1st Cir. 2000)). Further, in vehicle accident cases specifically, it opines, Maine courts have admitted pre-accident conduct as evidence establishing the vehicle operator's conduct at the time of the accident. *Id.* (citing *State v. Ifill*, 349 A.2d 176, 185 (Me. 1975) (affirming the ruling by a lower court that a vehicle operator was driving recklessly at the time of an accident, considering, in part, the testimony of a lay witness who observed the reckless operation of the vehicle "three or four" miles north of the point of the accident); *State v. Hamilton*, 149 Me. 218, 219-42, 100 A.2d 234 (1953) (denying defendant's motion for a new trial and affirming a truck driver's manslaughter conviction, partially based on evidence that, before the accident, a witness observed

8

a presumably intoxicated man stumble and fall while walking out of a house before proceeding to operate the truck)). BRP avers that Mr. Ratcliffe's "performance of donuts mere moments before the accident is strong circumstantial evidence that he was engaging in the same reckless conduct at the time of the accident." *Id.* at 5-6 (citing *Ifill*, 349 A.2d at 185; *Buckman*, 893 F. Supp. at 563-64).

Further, BRP insists it seeks to offer the evidence to prove causation, not for the purpose of establishing a character trait of recklessness, and thus insists "preclusion *cannot* be granted pursuant to Rules 401 and/or 404." *Id.* at 6 (emphasis in original). Beyond causation, BRP also intends to use the evidence to "assist the jury in evaluating the credibility of fact witnesses." *Id.* BRP reiterates that "two fact witnesses testified that Plaintiff was performing donuts at the time of the accident," *id.* (citing *C. Trahan Dep. Tr.* 12:5-8, 14-18, 13:16-23; *D. Condon Dep. Tr.*, 9:14-10:10), and adds that a third fact witness, "who has since changed his account," initially told police that Mr. Ratcliffe was doing a donut at the time of the accident. *Id.* (citing *id.*, Attach. 8, *D. Ratcliffe Dep. Tr.* at 28:8-11 (ECF No. 195-8)). However, BRP points out that Mr. Ratcliffe insists he was conducting "a right-hand turn" and that witnesses saying otherwise are mistaken. *Id.* (citing *Pl.'s Dep. Tr.* at 9:20-23, 56:10-12). BRP posits that reviewing the video of Plaintiff's prior operation of the vehicle will aid the jury in evaluating the credibility of the fact witnesses' and the Plaintiff's testimony. *Id.* Moreover, BRP opines that the video evidence is relevant to Mr. Ratcliffe's failure-to-warn claim and BRP's product misuse defense, arguing that "Plaintiff cannot admit he misused the Maverick X3 in the sand pit but strategically claim he

9

was not doing doughnuts at the time of the accident to hide evidence of his misuse." *Id.* at 6-7. BRP requests the evidence "be shown to the jurors so that they can evaluate whether [Plaintiff] was misusing the vehicle during the rollover." *Id.* at 7.

Turning to Plaintiff's argument that the evidence of his prior operation of the Maverick X3 would be unfairly prejudicial, *id.* (citing *Pl.'s Mot.* at 2-3), BRP says that Plaintiff's arguments "essentially admit[] that the evidence would weaken his case" and argues that he thus misunderstands Rule 403. *Id.* BRP insists that "Rule 403 'protects against unfair prejudice, not against all prejudice,'" *id.* (quoting *Velazquez v. Abbott Lab'ys*, 901 F. Supp. 2d 279, 292 (D.P.R. 2012) (quoting *United States v. Whitney*, 524 F.3d 134, 141 (1st Cir. 2008))), and argues "[t]he fact that a piece of evidence hurts a party's chances does not mean it should automatically be excluded." *Id.* at 8 (quoting *Onujiogu v. United States*, 817 F.2d 3, 6 (1st Cir. 1987)).

Returning to the case at bar, BRP argues that "Plaintiff *cannot* hide the cause of the accident, protect his credibility as a witness, and hide his misuse of the Maverick X3 by claiming the evidence at issue in this motion is 'unfairly prejudicial.'" *Id.* (emphasis in original). BRP claims the probative value of evidence of what Mr. Ratcliffe "was doing mere moments beforehand in the sand pit . . . far outweigh[s] any risk that the jury will be confused about the two surfaces." *Id.* It also disputes Mr. Ratcliffe's claims that the alleged inconsistency between BRP's warnings and its marketing justifies exclusion of the video of him performing donuts in the sandpit. *Id.* At bottom, BRP rejects the Plaintiff's contention that the evidence of his prior

10

operation of the Maverick X3 is unfairly prejudicial and reiterates its request that the Court deny his motion. *Id.*

### C. Tidd's Opposition to Plaintiff's Motion in Limine to Preclude Evidence of His Operation of the Subject Vehicle in a Different Location on the Day of the Incident

Tidd's separately objects to the Plaintiff's motion, arguing that the evidence of Mr. Ratcliffe's prior operation of the vehicle "is highly relevant to several contested material facts in dispute in this case," "demonstrates the vehicle's capabilities on the day of the accident in similar conditions as those in effect when the accident occurred," and "is highly relevant to what the defendant did and did not tell the plaintiff about the vehicle's performance during the sales process." *Tidd's Opp'n* at 1. Tidd's adds that the Maverick X3's performance in the contested video "also makes it more probable that the plaintiff did not roll the vehicle while performing a routine right-hand turn on flat ground, as [he] claimed." *Id.*

Tidd's proceeds to recite the facts it considers relevant to the present motion:

1. Throughout this litigation, the plaintiff has contended that the defendant told the plaintiff that the vehicle in question was either "virtually impossible to rollover" or "nearly impossible to rollover."

2. Despite these repeated allegations, the defendant never told the plaintiff that the vehicle was either "virtually impossible to rollover" or "nearly impossible to rollover."

3. The specific conversation in question was recorded by the plaintiff's son, and a transcript of the that conversation is produced below.

   **Plaintiff**: I was afraid to roll it though so . . .

   **Defendant**: That's the beauty of those things that they're low to the ground, your center of gravity.

   **Plaintiff**: You can't roll that easy?

11

> **Defendant**: It would take a bunch . . . you'd really have to get really nuts with it. If you get in a Razor or a Ranger, you'll see you're sitting up quite a bit higher, that X-3 you're actually sitting right down right in it.
>
> **Plaintiff**: I like that.

4. The plaintiff has denied that he was performing a donut or even making a tight radius turn at the time of the accident.

*Id.* at 2 (citing *id.*, Attach. 1, *Pl.'s Stephen J. Ratcliffe's Answers to Interrogs. Propounded by Def. BRP* at 1 (ECF No. 212-1); *id.*, Attach. 2, *Pl.'s Dep. Tr.* at 100:18-102:2 (ECF No. 212-2) (emphasis in original)).

After reciting the standards for relevance and admissibility under Federal Rules of Evidence 401 and 402, Tidd's reminds the Court that relevant evidence may be excluded pursuant to Rule 403 if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." *Id.* (citing FED. R. EVID. 401, 402, 403).

Tidd's notes that Mr. Ratcliffe "continues to claim that the defendant was negligent by providing untrue statements about the vehicle's performance and the impossibility of rolling the vehicle." *Id.* at 2-3. "However," Tidd's says, "the videos and arguments the plaintiff seeks to exclude directly contradict these allegations . . . . [by] depicting the plaintiff performing multiple donuts without rolling the vehicle." *Id.* at 3. Tidd's insists this evidence is relevant to refuting Mr. Ratcliffe's assertions regarding Tidd's "comments made during the sales process about the vehicle's performance" and "make[s] it more probable that what the defendant told the plaintiff about the vehicle's performance was accurate." *Id.*

12

Further, Tidd's says, Mr. Ratcliffe "has repeatedly claimed that the rollover occurred while performing a turn less aggressive than the donuts captured on video." *Id.* (citing *Pl.'s Dep. Tr.* at 100:18-102:2). Tidd's argues that evidence the vehicle did not roll over when performing donuts "refutes the plaintiff's contention that he was making a 'routine' right-hand turn when the accident occurred." *Id.* (citing *Pl.'s Dep. Tr.* at 100:18-23). Rather, "[s]uch evidence makes it more probable that the accident was caused by user error rather than any defective design" and "tend[s] to diminish the plaintiff's credibility in this case." *Id.*

In sum, Tidd's asks the Court to deny Mr. Ratcliffe's motion to preclude evidence of his prior operation of the Maverick X3 on the day of his accident. *Id.*

## III.   DISCUSSION

The Court concludes that the evidence of Mr. Ratcliffe's operation of the vehicle shortly before the accident underlying this lawsuit is relevant and probative to facts of consequence in this case, including the product's tendency to roll over and the likelihood that the rollover accident was caused by a routine right-hand turn; further, the Court finds that the risk of unfair prejudice does not outweigh the evidence's probative value. Moreover, the Court concludes that the Defendants' intended use of the evidence addresses the Plaintiff's concerns regarding improper character evidence pursuant to Federal Rule of Evidence 404. Thus, the Court declines to grant Mr. Ratcliffe's motion to exclude this evidence pursuant to Federal Rules of Evidence 401, 403, or 404.

Federal Rule of Evidence 401 defines evidence as relevant if it: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. Relevant evidence is generally admissible, unless otherwise precluded by the United States Constitution, federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. FED. R. EVID. 402.

Mr. Ratcliffe urges the Court to exclude the evidence of the sandpit video as irrelevant, arguing that differences in timing, direction of the maneuver, and soil composition make it inapposite to the rollover accident in the gravel pit. *Pl.'s Mot.* at 2. BRP objects, arguing the evidence of Mr. Ratcliffe's prior donuts demonstrates the Maverick X3's capabilities without overturning, bolsters the credibility of fact witnesses who dispute the Plaintiff's version of events, and undermines Mr. Ratcliffe's contention that the Maverick X3's warnings were insufficient to prevent reasonable injury. *BRP's Opp'n* at 2-3. Tidd's further argues the evidence demonstrates the vehicle's safety in similar conditions and is relevant to what it did or did not tell the plaintiff about the Maverick X3's performance during the sales process. *Tidd's Opp'n* at 1.

The Court agrees with the Defendants. The video evidence that Mr. Ratcliffe performed donuts mere hours after the vehicle's purchase, admittedly in contravention of BRP's warnings, tends to demonstrate that additional warnings would not have prevented his injury from occurring. First Circuit precedent has established that "[a] defendant in a failure-to-warn claim can then rebut or attack

the claim by offering evidence that the Plaintiff violated use and safety instructions in such a way that it is implausible to believe that a new or different warning would have made a difference." *Id.* at 2-3 (citing, *inter alia*, *Geshke v. Crocs, Inc.*, 889 F. Supp. 2d 253, 263 (D. Mass. 2012), *aff'd*, 740 F.3d 74 (1st Cir. 2014)). The Court further finds persuasive the Defendants' arguments that the evidence tends to prove the stability of the specific vehicle purchased and driven by Mr. Ratcliffe. The Court finds this relevant to the Plaintiff's position that a product defect made the Maverick X3 prone to rollovers. Mr. Ratcliffe may well be correct about circumstantial dissimilarities and will have ample opportunity to draw the jury's attention to them at trial. However, these differences do not make the video irrelevant.

Mr. Ratcliffe also avers that the introduction of his prior operation of the Maverick X3 would violate Rule 403, which grants courts the discretion to exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. The Court thus considers whether the risk of unfair prejudice substantially outweighs the evidence's probative value.

On this issue, the Court again finds in favor of the Defendants. Mr. Ratcliffe expresses his concern that the jury will conflate the sandpit donut video with the gravel pit accident, especially taken in conjunction with eyewitness testimony regarding his purported donuts in the gravel pit. *Pl.'s Mot.* at 2-3. Indeed, the Court expects the Defendants will likely seek to draw this comparison. However, the

15

evidence of Mr. Ratcliffe's prior donuts does not present a risk of prejudice that substantially outweighs the probative value. Plaintiff's counsel will have opportunity to distinguish the videos from the accident event based on its timing, direction, and soil type arguments, as well as to cross-examine the Defendants' fact witnesses on their testimony as to the event. To the extent the jury does consider the sandpit donut videos, there is not a significant risk that the jury will confuse the issues and believe Mr. Ratcliffe brings his lawsuit for the donuts successfully performed at the sandpit.

Further, the Court's decision is consistent with prior decisions in analogous cases in the Maine state courts, as cited by BRP, which have admitted circumstantial evidence in temporal and physical proximity to an accident as relevant to proving the circumstances of the accident. *See Ifill*, 349 A.2d at 185 (Me. 1975) (affirming the lower court's decision to admit evidence that a vehicle operator had been observed driving recklessly "three or four" miles north of the scene of the accident as relevant to a question of whether the driver's conduct was "criminally negligent, or reckless, manner"); *Hamilton*, 149 Me. at 219–42, 100 A.2d 234 (affirming the district court's decision to admit evidence that the driver of a truck who caused a lethal car accident had stumbled and fallen prior to getting into the driver's seat, driving away, and causing an accident shortly thereafter). The Court notes these are not perfectly analogous to Mr. Ratcliffe's claim by focusing on the respective defendants' inebriated condition rather than the capabilities of a vehicle or tendency to comply with a product's warnings but agrees with BRP's overarching assertion that the cases

16

support the use of circumstantial evidence to prove facts of consequence in a litigation. This Court agrees that circumstantial evidence is relevant and probative in the case at bar and the Court will not preclude its presentation in the case presently at bar.

Finally, Mr. Ratcliffe warns the Court of his concern that the Defendants will use the prior sandpit video evidence in an attempt to demonstrate he possesses a reckless character trait or conducted a prior bad act, and thus imply he later acted in accordance with this reckless character at the time of the accident. *Pl.'s Mot.* at 3-4. However, as described above, the Defendants have presented permissible bases to introduce the evidence, including to rebut Mr. Ratcliffe's claims that the Maverick X3 was prone to rollovers and to establish the credibility of its witnesses. Thus, the Court will not preclude evidence or argument of Mr. Ratcliffe's prior operation of the Maverick X3 and dismisses the Plaintiff's motion without prejudice.

Should the evidence be presented for alternative reasons at trial, the Plaintiff may reassert his objection or request a limiting instruction. Under First Circuit law, it is the obligation of counsel to clarify at trial whether a ruling on a motion in limine or other evidentiary ruling is definitive. *Dimanche v. Mass. Bay Transp. Auth.*, 893 F.3d 1, 6 n.6 (1st Cir. 2018). In general, "[p]retrial motions in limine in situations like this need to be renewed and pressed at trial in order to be preserved." *Id.* (citing Fed. R. Evid. 103 advisory committee's note to 2000 amendment); *see also Crowe v. Bolduc*, 334 F.3d 124, 133 (1st Cir. 2003) ("Our rule as to motions in limine is that a party must renew at trial its motion to . . . exclude evidence if there has been an

17

earlier provisional ruling by motion in limine and a clear invitation to offer evidence at trial").

## IV. CONCLUSION

The Court DISMISSES without prejudice Plaintiff Stephen J. Ratcliffe's Motion *in Limine* to Preclude Evidence or Argument Relating to His Earlier Operation of the Subject Vehicle in a Different Location on the Day of the Incident (ECF No. 183).

SO ORDERED.

                                /s/ John A. Woodcock, Jr.
                                JOHN A. WOODCOCK, JR.
                                UNITED STATES DISTRICT JUDGE

Dated this 9th day of November, 2024