UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

STEPHEN J. RATCLIFFE,                )
                                     )
           Plaintiff,                )
                                     )
    v.                               )        No. 1:20-cv-00234-JAW
                                     )
BRP U.S. INC., et al.,               )
                                     )
           Defendants.               )

## ORDER ON PLAINTIFF'S MOTION FOR NEW TRIAL

After an eight-day jury trial ending in a defense verdict in a products liability case, a plaintiff brings a motion for new trial against the defendant-manufacturer. The court denies the plaintiff's motion, concluding that it did not err in its pretrial evidentiary rulings, the jury verdict was not inconsistent, and the evidence submitted to the jury was sufficient to support the jury verdict.

## I. BACKGROUND

### A. Procedural History

On July 30, 2019, a utility terrain vehicle (UTV) driven by Stephen J. Ratcliffe overturned, causing significant injuries. *Compl.* ¶ 15 (ECF No. 1). On July 2, 2020, Mr. Ratcliffe brought products liability claims against both BRP U.S., Inc. (BRP), the manufacturer; and Tidd's Sport Shop, Inc. (Tidd's), the distributor; asserting negligence and strict liability claims against both, respectively.[1]

---

[1]    Mr. Ratcliffe's complaint included a third defendant, ABC Corporation, a fictional placeholder entity for any additional defendants found during discovery. *Pl.'s Resp. to the Ct.'s Order to Show Cause* (ECF No. 19). On October 19, 2020, the Court dismissed all claims against ABC Corporation because "it is not apparent that this Court would have jurisdiction over Plaintiff's claims against this entity" and because the Scheduling Order provided Mr. Ratcliffe with the "opportunity to amend his

With trial approaching, both parties filed a slew of motions in limine on October 4, 2024, including Mr. Ratcliffe seeking to exclude evidence or argument relating to earlier operation of the vehicle by his then underage son, his own earlier operation of the vehicle, and the vehicle's compliance with voluntary standards published by the Recreational Off-Highway Vehicle Association (ROHVA). *See Pl. Stephen J. Ratcliffe's Mot.* in Lim. *To Preclude Evid. or Arg. Relating to His Then 14-Year-Old Son's Operation of the Subject Vehicle* (ECF No. 180) (*Pl.'s Son's Operation Mot.*); *Pl. Stephen J. Ratcliffe's Mot.* in Lim. *to Preclude Evid. or Arg. of BRP's Compliance with the Industry's Own Voluntary ROHVA "Standards"* (ECF No. 182) (*Pl.'s ROHVA Mot.*); *Pl. Stephen J. Ratcliffe's Mot.* in Lim. *to Preclude Evid. or Arg. Relating to His Earlier Operation of the Subject Vehicle in a Different Location on the Day of the Incident* (ECF No. 183) (*Pl.'s Prior Operation Mot.*).

The Court reviewed BRP's responses to these motions and Mr. Ratcliffe's subsequent replies, ultimately dismissing Mr. Ratcliffe's motions to exclude the proffered evidence but noting his entitlement to object or propose limiting instructions should such evidence be presented at trial. *See Order on Pl. Stephen J. Ratcliffe's Mot. in Lim. To Preclude Evid. or Arg. Relating to His Then 14-Year-Old Son's Operation of the Subject Vehicle* (ECF No. 272) (*Son's Operation Order*); *Order on Pl. Stephen J. Ratcliffe's Mot. in Lim. to Preclude Evid. or Arg. of BRP's Compliance with the Industry's Own Voluntary ROHVA "Standards"* (ECF No. 270)

---

Complaint and join any additional defendants identified via discovery." *Order* (ECF No. 21). Mr. Ratcliffe never sought to add any other defendants.

(*ROHVA Order*); *Order on Pl. Stephen J. Ratcliffe's Mot. in Lim. to Preclude Evid. or Arg. Relating to His Earlier Operation of the Subject Vehicle in a Different Location on the Day of the Incident* (ECF No. 274) (*Prior Operation Order*).

After stipulating to the dismissal of Tidd's on November 11, 2024, *Stipulation of Dismissal as to Tidd's Sport Shop, Inc. Only* (ECF No. 276), Mr. Ratcliffe proceeded to trial against BRP on his strict liability and negligence claims beginning on November 12, 2024. After eight days of trial, a federal jury issued a verdict in favor of BRP on the strict liability count. *Jury Verdict* (ECF No. 301). On the negligence count, the jury found that BRP had acted negligently and its negligence had caused Mr. Ratcliffe's injuries, but concluded that Mr. Ratcliffe's comparative negligence exceeded BRP's as a legal cause of his injuries and, thus, awarded the Plaintiff no damages. *Id.* The Court entered judgment effectuating this verdict on November 26, 2024. *J.* (ECF No. 306).

On December 23, 2024, Mr. Ratcliffe filed a motion for new trial, arguing the Court erred in admitting certain evidence at trial, the jury's verdict was inconsistent, and the verdict on strict liability went against the weight of the evidence. *Pl.'s Mot. for New Trial* (ECF No. 310) (*Pl.'s Mot.*). BRP opposed a new trial on January 13, 2025. *Def. BRP's Resp. in Opp'n to Pl.'s Mot. for New Trial* (ECF No. 311) (*Def.'s Opp'n*). Mr. Ratcliffe did not file a reply.

## II.   THE PARTIES' POSITIONS

### A.   Stephen J. Ratcliffe's Motion

Mr. Ratcliffe's motion for a new trial is grounded in his argument that allowing the jury verdict to stand would result in a miscarriage of justice for several distinct

3

reasons. *Pl.'s Mot.* at 1. First, Plaintiff argues the comparative negligence verdict on the negligence count "was drastically impacted by the erroneous admission of the video of plaintiff's son [C.R.[2]] operating the subject vehicle on the roadway; the video of plaintiff operating the subject vehicle in the sandpit; and the hearsay testimony of Sergeant William Janakis of the Houlton Police Department." *Id.* Mr. Ratcliffe also insists the jury verdict on strict liability is "against the clear weight of the evidence," that the Court erred by admitting evidence of the ROHVA standards,[3] and that the jury's finding of a design defect on the negligence count necessitates a similar finding on strict liability. *Id.*

### 1. Evidentiary Rulings

Elaborating on these arguments, Plaintiff asserts that, at trial, "BRP used [C.R.'s] operation of the vehicle and plaintiff's sandpit donuts as prior bad acts evidence of plaintiff's comparative negligence at the time of the rollover." *Id.* at 2-3. Mr. Ratcliffe concedes that his then fourteen-year-old son's operation of the UTV "was contrary to the operator's guide and on-board warning labels, which prohibited children under age 16 from driving, and prohibited on-road use of the vehicle," but argues BRP used this evidence to suggest to the jury that "plaintiff himself was likely

---

[2]    The Court, sua sponte, refers to Mr. Ratcliffe's son by his initials, C.R., in this order. *See* FED. R. CIV. P. 5.2(a)(3); *United States v. Kravetz*, 706 F.3d 47, 61-63 (1st Cir. 2013) (discussing privacy rights of third parties).

[3]    Mr. Ratcliffe alternatively refers to these standards as "ROHVA" and "ROHVA/ANSI," *Pl.'s Mot.* at 10-12, while BRP uses the terminology "ANSI-ROHVA" and "ANSI-ROHVA 1-2016." *Def.'s Opp'n* at 3, 10-12. The Court understands these various names to refer to the same set of standards jointly promulgated by ROHVA and American National Standards Institute (ANSI). While unclear what nomenclature is technically correct, in the interest of consistency and simplicity, the Court adopts the Plaintiff's proffered term of "ROHVA standards" for the purposes of this order.

violating the operator's guide at the time the vehicle rolled over." *Id.* at 3. Plaintiff asserts the evidence of his son's driving was irrelevant to his negligence and strict liability claims under Federal Rule of Evidence 401, unfairly prejudicial under Federal Rule of Evidence 403, and improper character trait evidence under Federal Rule of Evidence 404(a) and (b), and should have been precluded for all these reasons. *Id.* at 8. Plaintiff makes the same three arguments against video evidence BRP showed of prior donut maneuvers performed by Mr. Ratcliffe on the day of the accident. *Id.* at 3. Conceding "donut maneuvers are prohibited according to the . . . operator's guide," Plaintiff argues that the video was nonetheless irrelevant under Rule 401 because it showed "driving at a different time, in a different location, in a different direction, and on a different surface," that the video was unfairly prejudicial under Rule 403, and inadmissible as "'prior bad acts' to prove its comparative negligence defense" under Rule 404(a) and (b). *Id.* at 3, 9-10.

Mr. Ratcliffe contends testimony regarding the ROHVA standards should also have been precluded as irrelevant under Rule 401, asserting ROHVA is a trade association and its standards are voluntary, such that the jury could have found the vehicle's design unreasonably dangerous despite its compliance with the ROHVA standards. *Id.* at 10-11. Evidence of compliance with the ROHVA standard was unfairly prejudicial under Rule 403, Plaintiff says, averring evidence of industry custom has been inadmissible in the state of Maine since 1895. *Id.* at 11 (citing *Pulsifer v. Berry*, 87 Me. 405, 410 (1895)). Here, "even with the limiting instruction that was given on this subject," Mr. Ratcliffe maintains "there was a grave danger

that the jury would misunderstand ROHVA compliance to be the equivalent of meeting federal consumer safety regulations, or even just meeting the safety standards of an independent standards group." *Id.*

Plaintiff further argues that BRP supported its comparative negligence defense with video evidence of Mr. Ratcliffe holding onto the vehicle's roll cage earlier on the day of the accident, while the vehicle was being driven on public roads by C.R. and Plaintiff sat in the passenger seat. *Id.* at 3. Mr. Ratcliffe argues BRP used this video evidence, taken while he was not driving and the vehicle was stopped at an intersection, to support its claim that his arm was already outside of the vehicle, in violation of the operator's guide and warning labels, at the time of his accident. *Id.* at 3-4. Plaintiff adds that the Court permitted, over his objection, Sgt. Janakis to testify that an eyewitness to the accident, Cody Trahan, "told him that plaintiff 'put his hand on the roll bar before the ATV rolled over,' which Janakis had written in his report," despite Mr. Trahan's subsequent deposition testimony disavowing his prior statement. *Id.* at 4-5. Mr. Ratcliffe argues Sgt. Janakis testifying in his police uniform "cloak[ed] the Trahan hearsay statement in the veneer of reliability and independence" and asserts the evidence of prior bad acts resulted in a comparative negligence verdict against the Plaintiff. *Id.* at 5.

Plaintiff insists his alleged evidentiary errors are exacerbated because "[t]his was an extremely close case," making it more likely that the errors "affected the outcome of the case. *Id.* at 12 (citing *McDonough v. City of Quincy*, 452 F.3d 8, 19-20 (1st Cir. 2006)).

### 2.    Jury Verdict on Strict Liability

Turning to strict liability, Mr. Ratcliffe submits that he presented evidence that BRP failed to include a window net as original equipment with its UTV despite designing and selling such a net as an accessory, being able to produce a pair of such nets for $46, and performing validation testing to determine whether the nets "can hold passenger body parts during roll over." *Id.* at 5, 14.  Despite these steps, Plaintiff argues, BRP did not market the nets as having a safety purpose, even as BRP's own brand ambassador stated the nets would keep arms within the vehicle during a rollover.  *Id.* at 5-6.  Mr. Ratcliffe asserts the evidence demonstrates a defective product because its utility without the safety features did not outweigh the risk posed to its users.  *Id.* at 14 (citing *St. Germain v. Husqvarna Corp.*, 544 A.2d 1283, 1286 (Me. 1988)).  He adds that the jury verdict form indicates a total damages award of $277,473.73 on the strict liability count, which is inconsistent with the finding of no strict liability but consistent with the evidence supporting the design defect claim.  *Id.* at 14-15.  Plaintiff concludes that the jury's finding of no design defect on the strict liability count goes against the weight of the evidence.  *Id.* at 6, 14.

### 3.    Consistency of the Jury Verdict

Mr. Ratcliffe further highlights the jury's findings on negligence and strict liability as inconsistent and contends this inconsistency requires a new trial.  *Id.* at 12-13 (citing Fed. R. Civ. P. 49; *Kosmynka v. Polaris Indus., Inc.*, 462 F.3d 74, 82 (2d Cir. 2006) (ordering a new trial where a jury returned a verdict in favor of the plaintiff on negligence but finding no design defect or failure-to-warn)).  "Maine law," Plaintiff says, "recognizes that design defect and negligence claims overlap." *Id.* at 13 (citing

*Stanley v. Schiavi Mobile Homes, Inc.*, 462 A.2d 1144, 1148 (Me. 1983)). Plaintiff insists that the jury finding BRP acted negligently but not strictly liable "cannot be logically or legally harmonized" and thus warrants a new trial. *Id.* at 14.

In sum, Plaintiff asserts allowing the jury verdict to stand in light of any one of the alleged errors would result in a miscarriage of justice and requests a new trial. *Id.* at 15.

### B.    BRP's Opposition

BRP opposes Mr. Ratcliffe's request for a new trial, which it characterizes as "three-fold: (i) alleged erroneous evidentiary rulings; (ii) a supposed inconsistent verdict; and (iii) the jury's finding of no strict liability design defect being against the weight of the evidence." *Def.'s Opp'n* at 3.

### 1.    Evidentiary Rulings

Beginning with Plaintiff's contested evidentiary rulings, BRP notes that Mr. Ratcliffe's motion challenges four distinct pieces of evidence: "(i) the admission of GoPro footage of [C.R.] operating the Subject Vehicle; (ii) the admission of GoPro footage of Plaintiff's earlier donuts; (iii) BRP's compliance with [ROHVA standards]; and (iv) Sergeant William Janakis' testimony about his investigation of the incident." *Id.* Each, Defendant says, was properly admitted. *Id.*

BRP points out that the first three pieces of challenged evidence were the subjects of pretrial motions in limine which the Court dismissed and argues a motion for a new trial pursuant to Rule 59 is not an opportunity to relitigate rejected arguments. *Id.* at 3-4 (citing *Nat'l Metal Finishing Co., Inc. v. Barclays American/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990); *Widi v. McNeil*, No.

8

2:12-cv-188-JAW, 2014 U.S. Dist. LEXIS 19778, at *3-4 (D. Me. Feb. 18, 2014) (citation revised)).  Even if the Court were to revisit its evidentiary rulings, Defendant says, the admissions were neither erroneous nor harmful to the Plaintiff.  *Id.* at 4 (citing FED. R. CIV. P. 61; *Ahern v. Scholz*, 85 F.3d 774, 786 (1st Cir. 1996) ("A trial court's error in an evidentiary ruling only rises to the level of harmful error if a party's substantial right is affected")).

### a.    Video of Plaintiff's Son Operating the Vehicle

BRP avers the Court properly admitted the video of Plaintiff's son operating the vehicle, arguing a failure-to-warn claim requires proof that the product's warnings were inadequate and that different or additional warnings would have prevented the injury.  *Id.* (citing *Koken v. Black & Veatch Const., Inc.*, 426 F.3d 39, 49 (1st Cir. 2005)).  Thus, Defendant submits, the evidence of C.R.'s operation of the vehicle in contravention of multiple warnings is relevant evidence to whether alternative warnings would have prevented Mr. Ratcliffe's injury by demonstrating the Plaintiff's disregard for written warnings, including those he was expressly aware of.  *Id.* at 4-5.  The C.R. video is further probative, BRP suggests, of the location of Mr. Ratcliffe's hand at the time of the rollover accident because the video shows his hand holding onto the roll cage.  *Id.* at 5-6.  This evidence is thus relevant to the Plaintiff's particular injury, which BRP at trial argued was a result of the "operator prepositioning his hand on the roll cage."  *Id.* at 7.

### b.    Video of Plaintiff Performing Donuts

BRP avers the Court properly ruled in limine to admit the video of Mr. Ratcliffe performing donut maneuvers at the sandpit prior to the accident, adding that

Plaintiff did not object to the introduction of this evidence at trial and thus waived this objection. *Id.* at 8 (citing *Tr. of Proceedings Vol. IV* at 730:13-14 (ECF No. 287) (*11/19/2024 Tr.*); *United States v. Taylor*, 54 F.3d 967, 972 (1st Cir. 1995); *Brown v. Crown Equip. Co.*, 460 F. Supp. 2d 188, 197 (D. Me. 2006)). BRP acknowledges that a court may "take notice of a plain error affecting a substantial right" in the absence of a properly preserved objection, *id.* (citing FED. R. EVID. 103(e)), but argues the First Circuit's high standard for doing so has not been met in this case. *Id.* (quoting *United States v. Meserve*, 271 F.3d 314, 320-21 (1st Cir. 2001) ("[P]lain error 'entails a quadripartite showing: (1) that there was error; (2) that it was plain; (3) that the error affected substantial rights; and (4) that the error affected the fairness, integrity, or public reputation of judicial proceedings'") (in turn quoting *United States v. Eirby*, 262 F.3d 31, 36 (1st Cir. 2001))).

BRP claims it was not error to admit the evidence of Mr. Ratcliffe's prior operation of the vehicle, as Maine courts permit the use of circumstantial evidence to prove a case, including using temporally and physically proximate evidence to prove the circumstances of an accident. *Id.* at 8-9 (citing *State v. Ifill*, 349 A.2d 176, 185 (Me. 1975); *State v. Hamilton*, 149 Me. 218, 219-42, 100 A.2d 234 (1953)). BRP maintains the evidence was relevant to the case: first, it demonstrated the stability of the vehicle, second, it showed that additional warnings would not have prevented Mr. Ratcliffe's injury, and finally, it bolstered the credibility of fact witnesses who testified to observing Mr. Ratcliffe performing donut maneuvers. *Id.* at 9. BRP insists the evidence was not unfairly prejudicial, pointing out that Plaintiff's counsel

"took every opportunity to distinguish it from what occurred at the time of the accident" by presenting evidence of the different location, different direction, and different driving surface of the donuts shown on the video and the scene of Mr. Ratcliffe's injury. *Id.* at 9. BRP asserts the jury was within its rights to reject these arguments and rely on the video of prior operation as circumstantial evidence supporting eyewitness testimony that Mr. Ratcliffe was performing a donut maneuver at the time of his injury and thus as relevant to the issues of comparative negligence and causation. *Id.* at 9-10.

### c.    References to ROHVA Standards

Defendant contends the Court was correct to admit evidence related to BRP's compliance with the ROHVA standards both in its order in limine and at trial, arguing that compliance with the ROHVA standards is probative of the vehicle's design features and BRP's design choices as relevant to its standard of care, and that admitting such evidence was consistent with caselaw of this Circuit. *Id.* at 10 (citing *McKinnon v. Skil Corp.*, 638 F.2d 270, 276-77 (1st Cir. 1981); *Brown*, 445 F. Supp. 2d at 69-70; *Libby v. Griffith Design & Equip. Co.*, No. 2:88-cv-282, 1990 U.S. Dist. LEXIS 19475, at *8-12 (D. Me. June 19, 1990) (citation revised)). Further, BRP adds, evidence of its compliance with the ROHVA standards did not unfairly prejudice the Plaintiff because his counsel emphasized at opening and closing argument, and his experts plainly testified, that BRP is a member of ROHVA and that the ROHVA standards are voluntary, minimum standards. *Id.* (citing *Tr. of Proceedings Vol. I* at 28:8-17, 86:16-90:8, 90:19-24 (ECF No. 278) (*11/12/2024 Tr.*); *Tr. of Proceedings Vol. XIII* at 1516:21-1517:3 (ECF No. 302) (*11/25/2024 Tr.*). BRP continues that the

Court's final jury instructions included a limiting instruction to this effect, specifically explaining that "BRP's compliance with these standards does not preclude a finding that BRP's design of the Maverick X3 is unreasonably dangerous." *Id.* at 11. Thus, Defendant says, the jury was informed of what the ROHVA standards are and this evidence did not affect Mr. Ratcliffe's substantial rights. *Id.* at 11-12.

### d.    Sergeant Janakis's Testimony

BRP first argues Plaintiff waived his objection to Sgt. Janakis's testimony by failing to present developed argument or record citations to support his assertion that this testimony was erroneously admitted or hearsay. *Id.* at 12 (citing *United States v. Sevilla-Oyola*, 770 F.3d 1, 13 (1st Cir. 2014) ("Arguments raised in only a perfunctory and undeveloped manner are deemed waived").

Continuing, BRP argues Sgt. Janakis's testimony as to what Mr. Trahan told him immediately following Mr. Ratcliffe's accident was properly admitted as a prior inconsistent statement of a witness, as Mr. Trahan testified through deposition at trial that he did not tell Sgt. Janakis that Mr. Ratcliffe was holding onto the roll cage at the time of the accident. *Id.* (citing *Tr. of Proceedings Vol. VII* at 1238:21-1239:8 (ECF No. 299) (*11/22/2024 Tr.*)). BRP submits the Federal Rules of Evidence permit the admission of Mr. Trahan's prior conflicting statements and it was up to the jury to evaluate the witness's credibility without creating a basis for a new trial. *Id.* at 13 (citing *Velazquez v. Figueroa-Gomez*, 996 F.2d 425, 427 (1st Cir. 1993) ("conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial")).

### 2.    Consistency of the Jury Verdict

Defendant also rejects Mr. Ratcliffe's contentions that the jury verdict is inconsistent, arguing that the verdict form shows "the jury found for BRP on each of Plaintiff's claims and failed to find for Plaintiff on any theory of liability." *Id.*  BRP thus argues Plaintiff's citation of *Kosmynka*, 462 F.3d 74, is inapposite because the jury in that case found for the defendant on strict liability but for the plaintiff on negligence. *Id.* (citing 462 F.3d at 82).  Here, Defendant insists, the verdict was consistently in its favor. *Id.*

However, even if the verdict is inconsistent, Defendant argues that would not justify a new trial because "[c]onsistency in a verdict is not necessary." *Id.* at 14 (quoting *Burnett v. Ocean Props., Ltd.*, 422 F. Supp. 3d 400, 421 (D. Me. 2019), *aff'd*, 987 F.3d 57 (1st Cir. 2021) (quoting *Dunn v. United States*, 284 U.S. 390, 393 (1932)); *McIsaac v. Didriksen Fishing Corp.*, 809 F.2d 129, 133 (1st Cir. 1987)).

### 3.    Jury Verdict on Strict Liability

Finally, BRP contests Mr. Ratcliffe's claim that the jury verdict on strict liability cut against the weight of the evidence, positing the availability of nets is not dispositive on a strict liability design defect claim. *Id.*  To grant a new trial, Defendant says, the verdict "must be so manifestly and palpably against the evidence on the case as to compel the conclusion that the verdict is contrary to right and justice." *Id.* (quoting *Am. Cooler Co. v. Fay & Scott*, 20 F. Supp. 782, 783 (D. Me. 1937)).  In short, Defendant argues this high bar is not met here.  The strict liability count depends on BRP's vehicle design being reasonably safe, which Defendant

claims it proved through expert testimony and field-testing results and thus supports the jury's verdict on the strict liability count. *Id.* at 15-18.

At bottom, BRP urges the Court to conclude it did not err in admitting the contested evidence, the jury did not reach an inconsistent or erroneous verdict, and to deny Plaintiff's motion for a new trial in its entirety. *Id.*

## III.   LEGAL STANDARD

"The decision to grant a new trial is squarely within the trial court's discretion." *Velazquez*, 996 F.2d at 427. The First Circuit has qualified this discretion as "quite limited," *id.* at 428, and explained that a motion for a new trial under Federal Rule of Civil Procedure 59 requires a finding that "the verdict is so seriously mistaken, so clearly against the law or evidence, as to constitute a miscarriage of justice." *TransAmerica Premier Ins. Co. v. Ober*, 107 F.3d 925, 929 (1st Cir. 1997) (internal quotation marks omitted); *see also Sanchez v. P.R. Oil Co.*, 37 F.3d 712, 717 (1st Cir. 1994) (a district court will set aside the jury verdict only if it "is against the demonstrable weight of the credible evidence or results in a blatant miscarriage of justice"). Further, "[a] district court can independently weigh the evidence when evaluating a motion for a new trial under Rule 59 and therefore can determine that a witness or evidence lacks credibility; in other words, the court need not take the evidence in the light most favorable to the nonmoving party." *Rodríguez-Valentin v. Doctors' Ctr. Hosp. (Manati), Inc.*, 27 F.4th 14, 21 (1st Cir. 2022) (citing *Jennings v. Jones*, 587 F.3d 430, 436 (1st Cir. 2009)).

14

The First Circuit has emphasized that a "'district judge cannot displace a jury's verdict merely because he disagrees with it' or because 'a contrary verdict may have been equally . . . supportable.'" *Jennings*, 587 F.3d at 436 (quoting *Ahern*, 85 F.3d at 780). A new trial is a remedy "sparingly used, and then only where there would be a miscarriage of justice and where the evidence preponderates heavily against the verdict." *Sebastino v. Springfield Terminal Railway Co.*, 530 F. Supp. 3d 81, 86 (D. Mass. 2021) (citing *United States v. Merlino*, 592 F.3d 22, 32 (1st Cir. 2010)).

## IV.    DISCUSSION

Consistent with BRP's framing of the issues, which provides useful structure to the parties' dispute at this stage, the Court addresses (1) the contested evidentiary rulings, (2) consistency of the jury verdict, and (3) whether the verdict on strict liability goes against the weight of the evidence.

### A.    Evidentiary Rulings

#### 1.    Video of Plaintiff's Son Operating the Vehicle

Mr. Ratcliffe submits the Court erred by admitting evidence of the operation of the vehicle by his then underage son earlier on the day of the incident, arguing the evidence was irrelevant, unfairly prejudicial, and improper character evidence under Rule 404(a) and (b). *Pl.'s Mot.* at 8. BRP disagrees, contending the evidence was a relevant showing of Mr. Ratcliffe's disregard for written warnings and contained further probative value by showing the Plaintiff riding with his hand positioned on the roll cage, which he testified he would not do. *Def.'s Opp'n* at 4-7.

15

The Court considered Plaintiff's motion in limine to exclude this same evidence before trial and concluded the evidence of Mr. Ratcliffe permitting his underage and unlicensed son to drive at high speeds on public roadways, all in violation of BRP's warnings in the operator's guide and posted on the vehicle itself, was relevant and probative evidence to Defendant's argument that alternative warnings would not have prevented his injury. *Son's Operation Order* at 10 (citing *Koken*, 426 F.3d at 51 (concluding factual evidence did not support a finding that the damage would not have occurred if the alternative warning had been provided)). The Court rejected Plaintiff's assertions that the evidence was unfairly prejudicial but noted that showing the video in its twenty-five-minute entirety was likely unnecessary and cumulative and that, at trial, the Court would be inclined to permit introduction of relevant portions the video as impeachment evidence in the event Mr. Ratcliffe denied its contents. *Id.* at 10, 12.

At trial, Mr. Ratcliffe set the stage for the admission of portions of the video consistent with the Court's order on the motion in limine. During direct examination on November 18, 2025, Attorney Mega asked Mr. Ratcliffe about the position of his left hand when the UTV began to roll:

> Q.  Before it started to roll, were you holding on to that roll cage at all with that left hand?
>
> A.  Never.
>
> Q.  Where were your hands leading up right to the - - to the vehicle rolling over?
>
> A.  On the steering wheel.

*11/18/2024 Tr.* at 580:18-23.  On November 19, 2024, Attorney Trischler followed up on cross-examination and Mr. Ratcliffe reiterated his testimony that he would not have put his hand outside the UTV:

> Q. Mr. Ratcliffe, do you recall being asked yesterday whether you rode with your hand holding onto the side rail of the roll cage; do you recall that question?
>
> A. Yes.
>
> Q. And do you recall telling the jury that you would never ride with your hand on the roll cage?
>
> A. I -- if that's what I said, yes.
>
> Q. I'm asking you if that's what you said?
>
> A. It's just something I wouldn't do.
>
> Q. And that's what you said yesterday, that's something you would not do, right?
>
> A. Yes.

*11/19/2024 Tr.* at 697:1-12.

Having secured Mr. Ratcliffe's unequivocal denial that he ever placed his hand outside the Maverick X3 and having placed before the jury the issue of whether Mr. Ratcliffe would have obeyed alternative warnings, BRP sought to introduce a snippet of the video of Mr. Ratcliffe's fourteen-year-old son operating the Maverick with Mr. Ratcliffe as the passenger.  The Court permitted BRP to admit a five-minute video of his son's operation of the vehicle, of which Defendant only showed several seconds, over Plaintiff's counsel's reasserted objection:

MR. [TRISCHLER]:[4] Defendant's Exhibit 110A is a copy of the videotape of that ride, Your Honor, and I would move for its admission into evidence at this time.

THE COURT: Is there any objection?

MR. MEGA: No objection, Your Honor.

THE COURT: It's admitted.

MR. MEGA: Except I'd like to preserve our MIL, actually. It was relative to this. So I suppose in talking about it --

THE COURT: Are you objecting or are you not objecting?

MR. MEGA: I do object. For the reasons set forth in the motion in limine.

THE COURT: All right. I've already addressed it. That's overruled . . ..

. . . .

MR. TRISCHLER: And, Your Honor, the entire video is five minutes in length. And to save some time and to move things along, what I'd ask for now is just permission for . . . our tech, to play the first six seconds of that video, with the Court's permission.

*11/19/2024 Tr.* at 701:23-702:12, 702:15-19.

This portion of video shows Mr. Ratcliffe riding in the passenger seat of the vehicle with his right hand holding onto the roll cage and his left hand not holding onto the center-mounted handhold. *Id.* at 703:8-704:18. This evidence was highly relevant to BRP's argument because riding in the vehicle in such a position not only violated BRP's warnings, but also contravened Mr. Ratcliffe's earlier testimony

---

[4]    The transcript lists Mr. Mega as moving to introduce the video. The Court is doubtful this is correct. Mr. Mega had moved to exclude the video pretrial and, as can be seen, after the exhibit was moved, the Court turned to Mr. Mega to determine whether there was any objection. The Court would not have asked the attorney seeking to introduce an exhibit whether he objected to its admission. Obviously, if Mr. Mega in fact sought to admit the video, he would be in no position to object post-trial, but the Court assumes this is not the case. Rather, in the context of Attorney Trischler's cross-examination, the Court presumes it was Mr. Trischler who sought to admit this evidence.

during cross-examination that he would not ride with his hand on the roll cage. *Id.* at 697:1-12.

Later, Defendant also showed a still image from the same video, which the Court permitted, absent objection from the Plaintiff:

> MR. TRISCHLER: Your Honor, Exhibit 110A which is in evidence, as I said, is a -- is a five-minute video of the ride, and what I would propose to do, rather than play the entire thing, would be to use a still from that video that I've marked as Exhibit 110A-5, just to move things along.
>
> THE COURT: Why don't you show it to Mr. Mega.
>
> MR. MEGA: No objection.
>
> THE COURT: You may do so, there's no objection.

*Id.* at 767:8-16. BRP used this still photograph to demonstrate that Mr. Ratcliffe permitted C.R. to drive on public roads above the speed limit, in violation of BRP's warnings. *Id.* at 767:17-23 ("Q. This is a -- a still shot from Exhibit 110A. Do you see the speedometer in the cockpit just between the steering wheel there? A. I do. Q. And do you see the indication that -- of 61 miles per hour while [C.R.] is driving? A. I do, sir."). The First Circuit has affirmed that a defendant in a failure-to-warn case may rebut or attack the claim by offering evidence that the plaintiff violated warnings and instructions such that it is implausible to believe that a new or different warning would have made a difference. *See Geshke v. Crocs, Inc.*, 889 F. Supp. 2d 253, 263 (D. Mass. 2012), *aff'd*, 740 F.3d 74 (1st Cir. 2014)).

Based on the limited sections of video displayed at trial and the context of Mr. Ratcliffe's testimony, the Court concludes it did not err in admitting the evidence, which was relevant and probative on the issues of the potential efficacy of alternate

warnings, the mechanism of his hand injury, and to impeach the credibility of Mr. Ratcliffe's testimony. Further, the evidence was not unfairly prejudicial, as its presentation was limited to approximately six seconds, and it did not present cumulative evidence or confuse or mislead the jury.

Mr. Ratcliffe also asserts the evidence of his son's operation of the vehicle amounts to improper character evidence. *Pl.'s Mot.* at 8 (citing FED. R. EVID. 404(a), (b)). As explained in the Court's order on the same argument raised pretrial, BRP did not introduce the evidence to suggest Mr. Ratcliffe's reckless or careless character, but rather as support for its affirmative defense to failure-to-warn; specifically, that an alternate or additional warning would not have prevented his injury. *Son's Operation Order* at 10. Further, the evidence was relevant to impeach Mr. Ratcliffe's credibility based on his prior testimony that he would not ride the vehicle with his hand on the side rail. *11/19/2024 Tr.* at 697:1-12.

The First Circuit has explained the applicable judicial inquiry for the introduction of prior bad acts evidence:

> First, the bad-act evidence must have "special relevance," meaning that it is not admitted solely to show propensity. *United States v. Doe*, 741 F.3d 217, 229 (1st Cir. 2013). Included in that category of special relevance is evidence designed to "prov[e] motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). That list, however, "is not exhaustive." *Udemba v. Nicoli*, 237 F.3d 8, 15 (1st Cir. 2001). Second, if the evidence has some special relevance, it still must clear the strictures of Rule 403, which provides that a "court may exclude relevant evidence if its probative value is substantially outweighed by a danger of," among other concerns, "unfair prejudice." Fed. R. Evid. 403; *see Doe*, 741 F.3d at 229.

*Gonpo v. Sonam's Stonewalls & Art, LLC*, 41 F.4th 1, 5-6 (1st Cir. 2022).  The Court addressed the "special relevance" of the evidence besides propensity in its pretrial order and has explained why its probative value was not substantially outweighed by unfair prejudice.  *Son's Operation Order* at 10-12.  The Court stands by its prior analysis and concludes it did not violate Rule 404(a) or (b) by permitting BRP to admit video evidence of C.R.'s operation of the vehicle.

### 2.    Video of Plaintiff Performing Donuts

Mr. Ratcliffe argues the Court also erred in admitting video evidence of his prior operation of the vehicle on the day of the accident.  *Pl.'s Mot.* at 9.  BRP disputes this argument, submitting Plaintiff did not object to presentation of this evidence at trial, it was relevant and probative circumstantial evidence on disputed legal issues, and it did not unfairly prejudice the Plaintiff in the eyes of the jury.  *Def.'s Opp'n* at 8-9.  For similar reasons as the video of his son's operation of the vehicle, the Court concludes it did not err in admitting evidence of Mr. Ratcliffe's own prior operation of the vehicle on the day of the incident.

First, the Court notes that BRP is correct that Plaintiff did not object to this evidence at trial.  *See 11/19/2024 Tr.* at 730:13-14 ("THE COURT: Any objection to 110B?  Mr. MEGA: No objection, Your Honor").  In its pretrial order on the same arguments, the Court specifically noted that, "[s]hould the evidence be presented for alternative reasons at trial, the Plaintiff may reassert his objection or request a limiting instruction.  Under First Circuit law, it is the obligation of counsel to clarify at trial whether a ruling on a motion in limine or other evidentiary ruling is

definitive." *Prior Operation Order* at 17 (citing *Dimanche v. Mass. Bay Transp. Auth.*, 893 F.3d 1, 6 n.6 (1st Cir. 2018)). The Court therefore agrees with BRP that Plaintiff failed to preserve its objection to this evidence. *Accord Crowe v. Bolduc*, 334 F.3d 124, 133 (1st Cir. 2003) ("Our rule as to motions in limine is that a party must renew at trial its motion to . . . exclude evidence if there has been an earlier provisional ruling by motion in limine and a clear invitation to offer evidence at trial").

Even if the objection had been preserved, for the reasons set forth in its pretrial order, the Court concludes it did not err in admitting the proffered evidence of Mr. Ratcliffe's prior operation of the vehicle. *See Prior Operation Order* at 13-17. BRP presented the video as relevant and probative evidence of valid purposes, including to demonstrate that BRP's vehicle met a reasonable standard of vehicle stability and that additional warnings would not have prevented Mr. Ratcliffe's injury. Products liability claims require a showing that the product was unreasonably dangerous for its intended use; evidence of its stability during a donut maneuver is highly probative on this issue. Additionally, evidence of a failure to heed warnings is relevant and probative to an affirmative defense that alternative or additional warnings would not have prevented the injury. *See Koken*, 426 F.3d at 51; *Geshke*, 889 F. Supp. 2d at 263.

Further, despite Plaintiff's concern, raised in its motion in limine and again in the present motion, the Court concludes that the evidence did not unfairly prejudice the Plaintiff by confusing or misleading the jury. Plaintiff's counsel and Mr. Ratcliffe's own testimony at trial made abundantly clear that the video did not show the accident and that the direction and driving surfaces of the sand pit donuts were

different from that of the scene of the accident in the gravel pit. *See, e.g.*, *11/12/2024 Tr.* at 25:10-18, 25:19-20; *Tr. of Proceedings Vol. III* at 575:4-8, 578:58 (ECF No. 284) (*11/18/2024 Tr.*); *11/19/2024 Tr.* at 731:21-22, 732:5-7, 733:7-9. The Court concludes it did not err in permitting BRP to present evidence of Mr. Ratcliffe's prior operation of the vehicle to support its arguments that its vehicle was reasonably safe and that alternative warnings would not have prevented Plaintiff's injury.

Finally, as with the evidence of his son's operation of the vehicle, the Court concludes it did not violate Rule 404(a) or (b) by allowing evidence of Mr. Ratcliffe's prior operation of the vehicle because BRP proffered the evidence for valid, non-propensity purposes and it otherwise passed the standard of Rule 403. *Gonpo*, 41 F.4th at 5-6; F. R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence").

### 3. References to ROHVA Standards

Plaintiff objects to the Court's decision to admit reference to and argument of the ROHVA standards, complaining he was unfairly prejudiced by the likelihood that the jury misunderstood the standards to be government-issued or independent. *Pl.'s Mot.* at 10-11. BRP urges the Court to dismiss this argument, pointing out that admitting the evidence is consistent with First Circuit precedent and that the Court issued a limiting instruction on this exact purpose. *Def.'s Opp'n* at 10-11.

Addressing Mr. Ratcliffe's motion in limine to exclude evidence of or reference to the ROHVA standards, the Court concluded compliance with the ROHVA standards was relevant and probative on the issue of whether BRP's vehicle was designed to be reasonably safe, while noting that any risk of unfair prejudice based on their voluntary and industry-led nature could be minimized at trial by Plaintiff's counsel and a limiting instruction. *ROHVA Order* at 12-13. On review, the Court reaches the same conclusion here. First, the First Circuit affirmed the admissibility of similar voluntary consensus standards in *McKinnon*. *See McKinnon*, 638 F.2d at 276 ("The standards clearly are relevant").

Further, any risk of unfair prejudice was abundantly accounted for at trial by both Plaintiff's counsel and the Court. Plaintiff's counsel argued and his experts confirmed that the ROHVA standards are voluntary, lack legal force, and come from a trade group controlled by industry members, including BRP. *See, e.g. 11/12/2024 Tr.* at 28:8-17, 89:16-90:8, 90:19-24; *11/25/2024 Tr.* at 1516:21-1517:3. On Plaintiff's request, the Court also issued a limiting instruction to the jury specific to the ROHVA standards, explaining:

> You may consider compliance with the side-by-side industry's voluntary minimum standards, known as the Recreational Off Highway Vehicle Association, ROHVA, and the American National Standards Institute, ANSI, standards, as some evidence of whether BRP acted reasonably in its design, distribution, and sale of the Maverick X3. This evidence is relevant, but not conclusive. Neither ROHVA nor ANSI is a governmental organization, and their standards are not mandatory governmental standards. Thus, although BRP's compliance with these standards does not preclude a finding that BRP's design of the Maverick X3 is unreasonably dangerous, it is a relevant fact -- factor for you to consider in determining the reasonableness of the Maverick X3's design.

*11/25/2024 Tr.* at 1442:23-1443:11.

24

In light of the statements of Plaintiff's counsel and his witnesses' testimony, and this clear limiting instruction given at trial, the Court concludes that it properly admitted this evidence and properly instructed the jury on its limited use. Thus, the Court's decision to admit this evidence was not erroneous under Rule 403.

### 4. Sergeant Janakis's Testimony

Plaintiff also contends the Court erred in admitting the testimony of Sgt. Janakis, asserting that his statements as to what Mr. Trahan told him on the day of the accident constituted inadmissible hearsay and that his police officer uniform created an unfair impression of credibility. *Pl.'s Mot.* at 4-5. BRP disagrees, submitting Sgt. Janakis's testimony was admissible as evidence of Mr. Trahan's prior inconsistent statements. *Def.'s Opp'n* at 12-13.

While Mr. Ratcliffe did not seek to exclude Sgt. Janakis's testimony through a pretrial motion, he objected at trial on hearsay grounds and BRP defended its admissibility at sidebar, explaining: "Mr. Trahan testified in his deposition which was read to the jury that he did not tell the officer that he saw Mr. Ratcliffe grab the rail prior to the rollover event. The officer will testify that that's what he told him. It's a prior inconsistent statement. It's admissible." *11/22/2024 Tr.* at 1238:5-10. In his deposition, Plaintiff protested, Mr. Trahan stated he did not know where the line in the police report regarding Mr. Ratcliffe's hand comes from, such that he had disavowed any statements made to police to the contrary. *Id.* at 1238:11-1239:8. After consideration, the Court resolved that "there's enough ambiguity in what he said in his statement to allow the officer to testify about what he heard from [Mr.

Trahan] that day" and permitted Sgt. Janakis to testify as to what Mr. Trahan told him on the day of the accident giving rise to this lawsuit. *Id.* at 1239:9-11.

The Court does not reach a different conclusion now. Mr. Trahan's deposition, which was read at trial, indeed states, while discussing the police report:

> Q. The next sentence says, in quote, [Mr. Trahan] informed me that he put his hand on the roll bar before the ATV rolled over, end quote. That's what the sentence says in the police report. Now I want to ask you a question about that, okay?
>
> A. Okay.
>
> Q. Did you literally, with your own eyes, see him put his hand on the roll bar before the ATV rolled over?
>
> A. So being at the top, him doing the donuts, the dust cloud, no, I don't know. Officer Janakis was -- I believe he was the first one I spoke to so I don't know where that -- I don't know where that stems from, like that sentence stems from.

*Tr. of Proceedings Vol. VI* at 1094:17-1095:3 (ECF No. 296) (*11/21/2024 Tr.*).

The Court agrees with BRP that this statement by Mr. Trahan is contradicted by his prior statement to Sgt. Janakis that he had seen Mr. Ratcliffe grab the roll cage before the vehicle rolled during his accident. A prior inconsistent statement by the witness may be used to impeach his or her credibility and does not constitute hearsay. FED. R. EVID. 801(d)(1)(A). While Sgt. Janakis appeared in court dressed in his police uniform, Plaintiff did not object to this attire as prejudicial at trial and the Court is not aware of any caselaw forbidding a law enforcement officer testifying in his uniform in a civil case. Ultimately, the First Circuit has made clear that "[c]redibility is an issue to be resolved by the jury and the court must defer to the jury's findings." *United States v. Garcia*, 905 F.2d 557, 560 (1st Cir. 1990); *accord*

*Velazquez*, 996 F.2d at 427 ("conflicting testimony or a question as to the credibility of a witness are not sufficient grounds for granting a new trial"). The Court thus declines to reject the jury's conclusion on the credibility of the witnesses and will not grant a new trial on this basis.

### 5.    A Final Note on Contested Evidentiary Rulings

Finally, Plaintiff separately asserts that all evidentiary errors in this case were especially harmful because "[t]his was an extremely close case," and thus each erroneously admitted piece of evidence had a high likelihood of affecting the outcome. *Pl.'s Mot.* at 12. This was a well-tried case with both attorneys making impressive presentations, but the Court cannot conclude without speculating whether the factfinder here, the jury, considered the case to be close. Nor can the Court project itself into the jury deliberations and weigh what impact, if any, the contested evidentiary rulings had on the jury's verdict. Second, as explained above, the Court concludes on all evidentiary arguments that its rulings at trial were not erroneous. Without error, there can be no substantial injustice. The Court rejects Plaintiff's claims of evidentiary error as grounds for a new trial.

### B.    Consistency of the Jury Verdict

Turning to his second asserted ground for new trial, Mr. Ratcliffe argues "[t]he jury's finding of no strict liability design defect cannot be logically or legally harmonized with its negligence verdict" and that "[t]his irreconcilable inconsistency warrants a new trial." *Pl.'s Mot.* at 12-13. BRP contests this argument by asserting the jury's verdict in its favor was not inconsistent and that, even if it was, inconsistency does not obligate a grant of new trial. *Def.'s Opp'n* at 13-14.

The jury verdict form separates the counts of strict liability and negligence into two sections; beginning with strict liability, the jury found that BRP's vehicle did not have a design defect that made it unreasonably dangerous and that the vehicle's warnings were not inadequate regarding potential dangers in use so as to render the vehicle unreasonably dangerous. *Jury Verdict Form* at 1. On the strict liability count, the jury also concluded Mr. Ratcliffe did not act negligently under strict liability law and his negligence did not cause his injuries. *Id.* at 2. On the negligence count, the jury concluded BRP acted negligently and its negligence caused Mr. Ratcliffe's injuries. *Id.* at 3. However, it subsequently found that Mr. Ratcliffe was himself negligent and that his negligence was equal to or greater than BRP's. *Id.*

Mr. Ratcliffe alleges two flaws make the jury verdict inconsistent. First, he argues "Maine law recognizes that design defect and negligence claims overlap," such that finding BRP was not liable under strict liability and yet acted negligently is in conflict. *Pl.'s Mot.* at 13. Second, he points out the verdict form awards total net damages of $277,473.73 on the strict liability count, while awarding nothing on the negligence count. *Id.* at 15.

As a threshold matter, the Court notes that the United States Supreme Court and Court of Appeals for the First Circuit have each long recognized that inconsistent jury verdicts often occur and held that this circumstance does not constitute a conclusive basis for a new trial. *See, e.g.*, *Dunn*, 284 U.S. at 400 ("Consistency in the verdict is not necessary"); *accord McIsaac*, 809 F.2d at 133 ("We note, initially, our substantial reluctance to consider inconsistency in civil jury verdicts a basis for new

28

trials"). Thus, Mr. Ratcliffe would not be automatically entitled to a new trial on this basis even if the Court were to find the jury verdict inconsistent.

However, the Court concludes the jury's verdict on strict liability and negligence is not inconsistent. Mr. Ratcliffe cites *Hayes v. Ariens Co.*, 391 Mass. 407 [, 462 N.E.2d 273] (1984), for the proposition that a products liability defendant "may be found to have breached its warranty of merchantability without having been negligent, but the reverse is not true. A defendant cannot be found to have been negligent without having breached the warranty of merchantability." *Id.* at 410 n.3. However, this analysis of Massachusetts law by the Massachusetts Supreme Judicial Court does not reflect binding law in this District in applying the laws of the state of Maine. It is true the Maine Supreme Judicial Court has recognized that "[i]n actions based upon defects in design, negligence and strict liability theories overlap in that under both theories the plaintiff must prove that the product was defectively designed thereby exposing the user to an unreasonable risk of harm." *Stanley*, 462 A.2d at 1148. But the Law Court did not go so far as to conclude negligence and strict liability products defects claims are identical; indeed, in *Stanley*, the Law Court noted that the contested jury instructions on the negligence count included the element of knowledge or constructive knowledge, not required for strict liability. *Id.* at 1148-49.

In this case, the Court clearly explained the necessary elements for the jury to find BRP liable on negligence and strict liability, respectively. *See 11/25/2024 Tr.* at 1437:21-1438:8, 1439:13-1440:5. The Court's instructions on each count mirrored the language in Justice Donald Alexander's authoritative book on Maine jury

29

instructions, *see* Donald G. Alexander, MAINE JURY INSTRUCTION MANUAL §§ 7-35 ("Products Liability: Strict Liability. Instruction"), 7-61 ("Negligence: Elements. Instruction") (2024 ed.), which Mr. Ratcliffe does not contend was in error. Indeed, as explained later, both Mr. Ratcliffe and BRP proposed that the Court give Justice Alexander's strict liability instruction, *see Pl.'s Proposed Jury Instructions* at 1-3 (ECF No. 208) and *Def. BRP's Proposed Instructions* at 30-32 (ECF No. 210), and Mr. Ratcliffe did not object to the strict liability instruction as given at trial. *See 11/24/24 Tr.* at 176:8-220:17 (*Charge Conf.*)*; 11/25/2024 Tr.* at 1523:6-11 (*Following Instructions Being Given*). Mr. Ratcliffe would be in an awkward position to object to jury instructions he himself proposed, and he has not done so.

Though similar, the elements on strict liability and negligence are not identical. On the one hand, the negligence count requires a plaintiff prove elements relating to the defendant's conduct and exercise of care in light of its knowledge of potential risks. *See 11/25/2024 Tr.* at 1437:21-24 ("To prove negligence, a plaintiff must prove that it is more likely than not that, one, *the defendant was* negligent; and, two, *the defendant's negligence was* a legal cause of his injury and consequent damages") (Court's emphasis). Here, this count therefore focuses on BRP's corporate conduct: among other things, its advertising and marketing strategy, safety tests and trials, and product development decisions, such as the one made to sell the window net as an accessory rather than including it with the standard model. Mr. Ratcliffe presented evidence on all these arguments and more, any one of which could have

convinced the jury that BRP acted negligently by "fail[ing] to use ordinary care under the circumstances, considering all the evidence in this case." *Id.* at 1438:3-4.

The elements of strict liability, on the other hand, focus on the product, its alleged defect, and the alleged danger posed. *See id.* at 1439:13-21 ("To prove his claim of strict liability, a plaintiff must prove, one, that *the Maverick X3 at issue was* in a defective condition, unreasonably dangerous to the user; and two, that *the defect existed* at the time that BRP sold the vehicle; and three, that *the Maverick X3 reached* the user without any significant change in the condition in which it was sold; and four, that *the defect was* the cause of the plaintiff's accident; and five, that *the vehicle was* being used in a manner reasonably foreseeable by the defendant").

The two theories of products liability, defect and failure to warn, similarly focus on the product at issue, considering whether "at the time *[a vehicle] leaves* the seller's hands, *it is more dangerous* than would be expected by the purchaser who purchases it having knowledge of its characteristics that is common to such a purchaser" (product defect) and whether the *"[w]arnings of potential dangers [were]* clear, understandable, and effectively communicated to the actual vehicle user in order to be considered adequate" (failure to warn). *Id.* at 1440:1-8 (Court's emphasis). Here, BRP presented robust evidence on the Maverick X3's safety for its intended purpose through video exhibits and expert witnesses and supported the adequacy of its warning labels by entering into evidence the vehicle's safety manual and photographs of the labels affixed to its dashboard and frame.

31

These different elements underscore the conceptual distinctness between negligence and strict liability. Strict liability is not simply an extreme form of negligence for especially significant departures from the ordinary standard of care. *Cf. Winslow v. Tibbetts*, 131 Me. 318, 162 A. 785 (1932) ("Gross negligence is substantially and appreciably higher in magnitude than ordinary negligence"). Rather, to hold a defendant strictly liable, "[t]he essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care." *Higgins v. Huhtamaki, Inc.*, No. 1:21-cv-00369-NT, 2022 U.S. Dist. LEXIS 111062, at *34 (D. Me. June 23, 2022) (quoting Restatement (Second) of Torts § 520).

Based on this fundamental distinction between negligence and strict liability, the jury could have logically concluded that the Maverick X3 was not "in a defective condition, unreasonably dangerous to the user," for the purposes of strict liability, *11/25/2024 Tr.* at 1439:14-15, while at the same time concluding BRP "fail[ed] to use ordinary care under the circumstances, considering all the evidence in this case" on the negligence count. *Id.* at 1438:3-4. Thus, the jury's conclusion that BRP acted negligently is not inherently inconsistent with its finding that BRP was not liable under strict liability.

The Court further notes that it discussed this exact issue with the parties during the charge conference, after BRP raised its concern that the separate charges with respect to strict liability and negligence counts on the verdict form may risk an

inconsistent verdict.  *Id.* at 1407:8-21.  At that time, the Court acknowledged the overlap between the two theories, but explained to BRP that "they're two different theories. I've got to ask [the jury] on both."  *Id.* at 1408:12-13.  Mr. Ratcliffe did not object to the Court's stated intention to charge the jury with separate questions and seemingly raises the issue now only because the jury's verdict did not award him his desired recovery.  Caselaw in the state of Maine courts and this District has consistently held that the time for a party to object to instructions is at the charge conference.  *See, e.g.*, *Burnett.*, 422 F. Supp. 3d at 428 (holding, on a motion for new trial, that "[i]n this Circuit, '[s]ilence after instructions, including instructions on the form of the verdict to be returned by the jury, typically constitutes a waiver of any objections'") (quoting *Marcano-Rivera v. Pueblo Int'l, Inc.*, 232 F.3d 245, 253 n.4 (1st Cir. 2000); *accord Wood v. Great Atl. & Pac. Tea Co.*, 452 A.2d 974 (Me. 1982) (holding, on review of a trial court's denial of motion for new trial, that "[the defendant's] failure to seasonably object to those instructions resulted in a waiver of its right to raise any such objections on appeal")).

Finally, "[j]urors are presumed to follow the court's instructions" in arriving at their verdict.  *United States v. Freeman*, 208 F.3d 332, 244 (1st Cir. 2000).  The legal distinctions between negligence and strict liability set forth in the instructions are not only standard but are also clear.  In his closing argument, Mr. Ratcliffe's attorney expanded upon the differences between the two legal theories and explained to the jury why they should find in Mr. Ratcliffe's favor under each theory.  *11/25/2024 Tr.* at 1469:13-1471:1.  Indeed, Mr. Ratcliffe's attorney emphasized to the jury that his

three theories – design defect, failure to warn, and failure to exercise ordinary care – were "independent bases to hold them accountable here. Each one is independent of the other." *Id.* 1460:21-23. Thus, in treating strict liability and negligence differently, the jury was not only following the Court's instructions, it was acting consistently with Mr. Ratcliffe's attorney's argument.

Because inconsistent verdicts are not dispositive of a motion for new trial, the verdict here was not in fact inconsistent, and Mr. Ratcliffe raised no objection to charging the negligence and strict liability counts separately at the charging conference despite being expressly given an opportunity, and argued to the jury that it should treat the differing theories of liability independently, the Court dismisses Mr. Ratcliffe's assertion of an inconsistent verdict as a basis for granting him a new trial.

Secondly, the Court concludes that the jury's calculation of the damages figure, which Plaintiff found confusing, does not obfuscate the intent of the jury to find in favor of BRP on each count. The verdict form answers "no" to Question One, whether BRP's UTV had a design defect, and, as directed by the verdict form's instructions, skipped Question Two asking, if a design defect was found, if that defect caused Mr. Ratcliffe's injuries. *Jury Verdict Form* at 1. Similarly, the jury answered "no" to Question Three, whether BRP failed to adequately warn users, and did not answer Question Four, which asked, if the warnings were found to be inadequate, if that inadequacy caused Mr. Ratcliffe's injuries. *Id.*

Despite these findings, the jury proceeded to answer Question Seven regarding damages on the strict liability count, filling in only the past medical expenses line with a figure of $277,473.73, which was the amount of past medical expenses agreed to by the parties and shared with the jury during the Court's instructions. *Id.*; *see also 11/25/2024 Tr.* at 1448:13 ("In this case, the parties have agreed that past medical expenses amount to $277,473.73"). This figure was then carried forward to the total damages line in Question Seven, subpart C, and to Question Eight, the net total damages on the strict liability count. *Id.* at 3. On the strict liability count, the Court concludes that the addition of the damages figure for past medical expenses to Questions Seven and Eight does not detract from the jury's clear intent in Questions One and Three to find BRP not strictly liable for Mr. Ratcliffe's injuries.

Continuing to the negligence portion of the jury verdict form, the jury answered "yes" on Question Nine, whether BRP acted negligently and caused Mr. Ratcliffe's injuries. *Id.* However, the jury also answered "yes" to Questions Ten and Eleven, respectively, which asked if Mr. Ratcliffe was himself negligent and if his negligence exceeded that of BRP's. *Id.* Despite this conclusion, in answer to Question Twelve, which asked for the total damage figure on the strict liability count, the jury filled in the past medical expenses figure of $277,473.73 from Question Seven, subpart C. *Id.* However, on Question Thirteen, which asked it "[t]o what amount do you reduce Stephen J. Ratcliffe's damages having due regard to his comparative negligence?", the jury left the line for total net damages on the negligence count blank. *Id.* at 4. Based on the jury's clear finding that Mr. Ratcliffe's comparative negligence exceeded

35

the negligence of BRP, which aligns with a null net total damages amount on the negligence count, the Court concludes the jury verdict form does not present any inconsistencies, much less inconsistencies justifying a new trial.

### C.    Jury Verdict on Strict Liability

As a third asserted ground for a new trial, Plaintiff argues the jury verdict on strict liability goes against the weight of the evidence. *Pl.'s Mot.* at 14. BRP rejects this contention and maintains the jury's verdict on strict liability was supported by its case at trial. *Def.'s Opp'n* at 15-18. After a case admirably litigated and robustly argued by each party, the Court cannot conclude "there would be a miscarriage of justice" in permitting the jury's verdict to stand or that "the evidence preponderates heavily against the verdict" so as to grant the "sparingly used" remedy of awarding a new trial. *Sebastino*, 530 F. Supp. 3d at 86 (citing *Merlino*, 592 F.3d at 32).

In reaching this conclusion, the Court acknowledges that Mr. Ratcliffe presented significant evidence to support his argument that BRP had prior knowledge of the risk of vehicle rollovers, had economically feasible safety equipment, and did not take adequate steps to address the risk. *See Pl.'s Mot.* at 14. However, BRP responded with its own evidence that its vehicle was reasonably safe through expert testimony, videos of accidents, and preproduction field testing to support its position that the window nets were not necessary to make the vehicle reasonably safe. *Def.'s Opp'n* at 15-17.

The Court takes seriously its mandate from the First Circuit that a "'district judge cannot displace a jury's verdict merely because he disagrees with it' or because 'a contrary verdict may have been equally . . . supportable.'" *Jennings*, 587 F.3d at

36

436 (quoting *Ahern*, 85 F.3d at 780).  With this directive in mind, the Court cannot conclude the jury's verdict in favor of BRP was "against the demonstrable weight of the credible evidence or results in a blatant miscarriage of justice." *Sanchez*, 37 F.3d at 717.  The Court therefore denies Mr. Ratcliffe's request for a new trial on the basis that the jury's verdict goes against the weight of the evidence.

## V.    CONCLUSION

The Court DENIES Stephen J. Ratcliffe's Motion for New Trial (ECF No. 310).

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 27th day of June, 2025